ACCEPTED
03-14-00533-CV
3865258
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/22/2015 3:02:40 PM
JEFFREY D. KYLE
CLERK

CASE NO. 03-14-00533-CV

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/22/2015 3:02:40 PM
JEFFREY D. KYLE
Clerk

**ROSA ENA CANTU,** *Appellant*

**V.**

**SOUTHERN INSURANCE COMPANY,** *Appellee*

On appeal from the 335th Judicial District Court of
Bastrop County, Texas
Trial Court Cause Number 29,079

**APPELLEE'S BRIEF**

_____

Catherine L. Hanna
State Bar No. 08918280
Email: channa@hannaplaut.com
Eric S. Peabody
State Bar No. 00789539
Email: epeabody@hannaplaut.com
Laura D. Tubbs
State Bar No. 24052792
Email: ltubbs@hannaplaut.com
HANNA & PLAUT, L.L.P.
211 E. Seventh Street, Suite 600
Austin, Texas 78701
Telephone: (512) 472-7700
Facsimile: (512) 472-0205
*Counsel for Appellee*

**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT OF THE CASE............................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ............................................. 2

ISSUES PRESENTED.......................................................................................... 2

After Cantu sued Southern following the 2011 Bastrop wildfires for allegedly inadequate payment on her claim, the court ordered the parties to appraisal. Despite participating in the appraisal process, Cantu was dissatisfied with the award and nonsuited after Southern paid the award and moved for summary judgment. In Southern's subsequent declaratory action, Cantu challenged the appraisal award based on the original court's replacement of the first appraisal umpire.

1. Cantu did not seek appellate review of the original trial court's replacement of the appraisal umpire and cannot collaterally attack that court's orders in a court of concurrent jurisdiction.

2. The appraisal award signed by the umpire and Southern's appraiser was valid, binding, and in substantial compliance with the policy.

3. Cantu did not assert any extra-contractual claims regarding Southern's pre- or post-appraisal conduct and is not entitled to an advisory opinion on the effect of the appraisal award on hypothetical claims that are now barred.

STATEMENT OF FACTS ...................................................................................... 3

SUMMARY OF THE ARGUMENT ..................................................................... 6

ARGUMENT AND AUTHORITIES.................................................................6

    A.   Cantu cannot collaterally attack a different trial court's appraisal orders in this suit.......................................................... 6

    B.   The appraisal award was valid and binding. .......................................... 9

    C.   Cantu cannot complain about the effect of the trial court's declarations on extra-contractual causes of action she did not assert. ......................................................................................................11

CONCLUSION AND PRAYER ...........................................................................12

CERTIFICATE OF SERVICE .............................................................................14

CERTIFICATE OF COMPLIANCE.....................................................................15

APPENDIX...........................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page**

*Barnes v. Western Alliance Ins. Co.,*
 844 S.W.2d 264 (Tex. App.–Fort Worth 1992, writ dism'd by agr.) ...................11

*Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London,*
 459 Fed. Appx. 366 (5th Cir. 2012) ......................................................................12

*Franco v. Slavonic Mut. Fire Ins. Ass'n,*
 154 S.W.3d 777 (Tex. App.–Houston [14th Dist] 2004, no pet.) .........................11

*Harris County Appraisal Dist. v. Bradford Realty, Ltd.,*
 919 S.W.2d 131 (Tex. App.–Houston [14th Dist.] 1994, no writ).........................9

*In re Barrentine,*
 2013 WL 6466574 (Tex. App.–Austin Nov. 27, 2013, orig. proceeding).............8

*Michels v. Safeco Ins. Co.,*
 544 Fed. Appx. 535 (5th Cir. 2013) ....................................................................10

*Providence Lloyds Ins. Co. v. Crystal City Independent Sch. Dist.,*
 877 S.W.2d 872 (Tex. App.–San Antonio 1994, no writ)....................................10

*Richardson v. Allstate Texas Lloyds,*
 2007 WL 1990387 (Tex. App.–Dallas July 11, 2007, no pet.) ....................... 10, 11

*Safeco Lloyds Ins. Co. v. Barrentine,*
 2014 WL 7399307 (Tex. App.– Dallas Dec. 17, 2014, n.p.h.) .............................7

*TMM Investments, Ltd. v. Ohio Cas. Ins. Co.,*
 730 F.3d 466 (5th Cir. 2013) ...............................................................................10

*Wells v. American States Preferred Ins. Co.,*
 919 S.W.2d 679 (Tex. App.–Dallas 1996, writ denied)........................................9

*Wentworth v. Medellin,*
 529 S.W.2d 125 (Tex. Civ. App.–San Antonio 1975, no writ)..............................9

**Statutes**

TEX. INS. CODE § 541.061 ...................................................................................5

TEX. INS. CODE § 542.060...................................................................................5

**Rules**

TEX. R. APP. P. 38.2.............................................................................................1

To the Honorable Court of Appeals:

Appellee Southern Insurance Company submits this brief in response to the brief of Appellant Rosa Ena Cantu[1] pursuant to Rule 38.2 of the Texas Rules of Appellate Procedure. Southern agrees with Cantu's list of parties and counsel, but presents its own statement of the case, statement of the issues presented, and statement of facts.

### Statement of the Case

The lawsuit giving rise to this appeal involves Cantu's claims under her Southern homeowners' insurance policy for damage resulting from the 2011 Bastrop County wildfires.[2] Cantu filed suit in Bastrop district court,[3] and the court ordered the parties to appraisal. After paying the appraisal award, Southern moved for summary judgment.[4] Cantu nonsuited this Original Bastrop Suit.[5] Southern filed the declaratory action underlying this appeal, Cause Number 29,079, in the 335th Judicial District Court of Bastrop County ("Bastrop Dec Action"), the Honorable Reva Towslee Corbett, presiding, to determine its contractual and

---

[1] Cantu's first name is identified in the record as both "Rose" and "Rosa." Southern uses "Rosa" as directed in the Court's letter of August 27, 2014.

[2] R. 5-7. The record for this appeal consists solely of an original clerk's record [R.].

[3] Cause No. 28,370; *Rose Ena Cantu v. Southern Insurance Co., et al.*, in the 21st Judicial District Court, Bastrop County, Texas ("Original Bastrop Suit"); R. 255-64.

[4] R. 275-87.

[5] R. 288.

statutory duties in light of its payment of the appraisal award.[6] On July 23, 2014, Judge Corbett granted Southern's motion for summary judgment, declaring that: (1) the award signed by Southern's appraiser and the umpire was valid and binding; (2) Southern's payment of the appraisal award fulfilled Southern's duties under Cantu's insurance policy; and (3) Southern's liability was not reasonably clear until the appraisal award was issued.[7] Cantu filed her notice of appeal on August 22, 2014.[8]

## Statement Regarding Oral Argument

Although Southern believes that oral argument is unnecessary to resolve the issues in this appeal, Southern reserves its right to appear.

## Issues Presented

After Cantu sued Southern following the 2011 Bastrop wildfires for allegedly inadequate payment on her claim, the court ordered the parties to appraisal. Despite participating in the appraisal process, Cantu was dissatisfied with the award and nonsuited after Southern paid the award and moved for summary judgment. In Southern's subsequent declaratory action, Cantu challenged the appraisal award based on the original court's replacement of the first appraisal umpire.

1. Cantu did not seek appellate review of the original trial court's replacement of the appraisal umpire and cannot collaterally attack that court's orders in a court of concurrent jurisdiction.

---

[6] R. 6-10.

[7] R. 532-33.

[8] R. 534-35.

2. The appraisal award signed by the umpire and Southern's appraiser was valid, binding, and in substantial compliance with the policy.

3. Cantu did not assert any extra-contractual claims regarding Southern's pre- or post-appraisal conduct and is not entitled to an advisory opinion on the effect of the appraisal award on hypothetical claims that are now barred.

## Statement of Facts

Cantu owns a property in Paige, Texas, which Southern insured for the period August 14, 2011 to August 14, 2012.[9] Cantu reported her fire claim on or about September 4, 2011.[10] Southern hired an independent adjuster, Steven Dollery, to inspect the loss and issued payment to Cantu for damage to the contents, dwelling, and other structures.[11]

Cantu was dissatisfied with Southern's adjustment of her claim and hired counsel and a public adjuster, Stephen Hadhazi.[12] Southern contacted Dollery and instructed him to attempt to reach an agreement with Hadhazi on the amount of loss.[13] Dollery and Hadhazi briefly discussed the differences in their estimates by telephone, but Hadhazi failed to reply to Dollery's further communications.[14]

---

[9] R. 7.

[10] R. 158-59.

[11] *Id.*

[12] R. 159, 201-22.

[13] R. 159.

[14] R. 159, 223.

Cantu filed the Original Bastrop Suit in January 2012, and Southern answered, reserving its right to invoke appraisal.[15] In September 2012, the 21st District Court ordered the parties to appraisal and appointed Claude Ducloux as umpire.[16] On January 16, 2013, the court, after learning of inappropriate communications between Cantu's counsel and the umpire, dismissed Ducloux and appointed the Hon. Don Wittig as umpire.[17] Cantu continued to participate in the appraisal and did not ask the 21st District Court to reconsider its appointment of Judge Wittig or seek mandamus review of this order. In April 2013, Judge Wittig and Southern's appraiser signed an appraisal award.[18] After Cantu's counsel failed to respond to multiple requests for drafting instructions, Southern tendered a check for the full replacement cost value of the appraisal award less the deductible and prior payments.[19]

Following its payment of the appraisal award, Southern filed a motion for summary judgment, arguing that the payment of the award satisfied Southern's obligations under the policy and negated the only bases for Cantu's extra-contractual causes of action.[20] Shortly before her response was due, Cantu

---

[15] R. 255-68.

[16] R. 459.

[17] R. 273.

[18] R. 227.

[19] R. 228-36.

[20] R. 275-87.

nonsuited the Original Bastrop Suit.[21] Cantu did not cash the award check because she disputed the validity and binding effect of the appraisal award.[22]

Two days after Cantu's nonsuit, Southern filed the Bastrop Dec Action, requesting that the Court declare that:

(1) The appraisal award signed by Southern's appraiser and the umpire is valid and binding on the parties with regard to the amount of Cantu's loss;

(2) Southern's payment of the appraisal award fulfills its obligations under the insurance policy with regard to Cantu's claim; and

(3) Southern's liability to pay Cantu's claim was not reasonably clear until the appraisal award was issued and Southern's payment was therefore prompt for purposes of Texas Insurance Code sections 541.061 and 542.060 and tie-in provisions of the DTPA.[23]

After Southern filed the Bastrop Dec Action, Cantu filed suit in Dallas County, alleging the same claims and causes of action she had raised in the Original Bastrop Suit and disputing the validity of the appraisal award.[24] The Dallas court abated Cantu's suit against Southern in favor of the Bastrop court's dominant jurisdiction over the parties and subject matter.[25] Despite the dominant jurisdiction of the Bastrop court, Cantu did not assert any counterclaims in the Bastrop Dec

---

[21] R. 288.

[22] R. 295.

[23] R. 6-10.

[24] R. 290-315.

[25] R. 316-17.

Action.[26]  The Bastrop court rendered summary judgment in favor of Southern, and this appeal ensued.[27]

## Summary of the Argument

Appraisal awards are presumptively valid and binding. Cantu did not plead or adduce evidence of any basis to set aside the appraisal award.  She could not collaterally attack in this suit the former trial court's decision to appoint a new umpire after the appraisal was complete and she had nonsuited her claims. Because Southern promptly paid the appraisal award in full, the trial court correctly ruled that Southern satisfied its contractual and statutory obligations with respect to her loss.  Cantu is not entitled to an advisory opinion on the effect of an appraisal award on causes of action she never raised.

## Argument and Authorities

### A.   Cantu cannot collaterally attack a different trial court's appraisal orders in this suit.

Cantu's primary argument is that the court in which she originally filed suit – the Bastrop 21st District Court – had no authority to replace an appraisal umpire after finding Cantu's counsel had inappropriate communications with that umpire.[28]  In this case, Cantu complains that the 335th District Court should have

---

[26] R. 17-22.

[27] R. 532-33.

[28] Cantu's assertion that she was denied "due process" in the appointment of a new umpire is groundless. *See* Appt. Br. at 13. Judge Campbell appointed Judge Wittig as the replacement

invalidated the appraisal award based on the 21st District Court's alleged lack of jurisdiction to replace the umpire. A district court does not have the authority to review or invalidate the orders of a court of concurrent jurisdiction.

The Dallas Court of Appeals recently rejected the same argument by Cantu's counsel.[29] In *Barrentine*, the 423rd District Court of Bastrop County disqualified umpire Ducloux for the same inappropriate contact by plaintiff's counsel and appointed Judge Wittig as a replacement.[30] The homeowners in *Barrentine* nonsuited, refiled in Dallas County, and sought a temporary injunction to prevent the appraisal ordered by the Bastrop court from proceeding.[31] On appeal, the Dallas Court of Appeals dissolved the temporary injunction, holding that the injunction ignored and unwound the orders of the Bastrop court, which "'allow[ed] the Barrentines to collaterally attack those orders in a court of concurrent jurisdiction.'"[32] The Barrentines also sought a writ of mandamus in this Court,

---

umpire at a hearing on Southern's motion to compel completion of the appraisal process, which counsel for Cantu attended. A copy of the trial court's order setting the hearing in which Judge Campbell removed umpire Ducloux and appointed umpire Wittig is attached at Appendix A. Contrary to Cantu's assertion, the record in Cause No. 28,370 shows that Judge Campbell explicitly removed umpire Ducloux when he appointed Judge Wittig as umpire and then set the appraisal deadlines. *See* Order of January 28, 2013, attached at Appendix B. Southern agrees with Cantu that the Court should take judicial notice of these and other documents from Cause No. 28,370. *See* Appt. Br. at 14.

[29] *Safeco Lloyds Ins. Co. v. Barrentine*, No. 05-13-01011-CV, 2014 WL 7399307 (Tex. App.–Dallas Dec. 17, 2014, n.p.h.).

[30] *Id.* at *1; R. 493-500.

[31] *Barrentine*, 2014 WL 7399307 at *1.

[32] *Id.*

arguing that the Bastrop trial court abused its discretion by appointing Judge Wittig as replacement umpire. This Court summarily denied the petition and the Barrentines' motion for rehearing.[33]

After Judge Campbell replaced the umpire in the Original Bastrop Suit, Cantu did not ask for reconsideration of this decision or file a petition for writ of mandamus.[34] Instead, Cantu participated in the appraisal process and nonsuited when she was dissatisfied with the appraisal award. She then asked the trial court in this case to rule on its sister court's authority to replace the umpire. Judge Corbett had neither the obligation nor the authority to sit in appellate review of Judge Campbell's appraisal orders.[35]

Even if the 335th District Court could have reviewed the 21st District Court's order to replace the umpire, the 335th District Court did not err in confirming validity of the appraisal. Nothing in the insurance policy or Texas law limited the 21st District Court's authority to appoint, remove, or replace the appraisal umpire. Although appraisal is intended to take place before suit is filed, Cantu filed suit in the 21st District Court, which gave the court jurisdiction over all matters appurtenant to that suit, including the appraisal. Cantu has cited no authority

---

[33] *See* R. 501-31; *In re Barrentine*, No. 03-13-00752-CV, 2013 WL 6466574 (Tex. App.–Austin Nov. 27, 2013, orig. proceeding).

[34] See Docket Sheet for Cause No. 28,370, attached hereto as Appendix C.

[35] Because Cantu is actually attacking the actions of the 21st District Court in replacing the umpire, she confuses the suit on appeal. *See* Appt. Br. at 14 ("Entry of the order appointing a second Umpire was reversible error and an abuse of discretion by the District Court.").

limiting that jurisdiction or discretion, and this Court already rejected the same argument by Cantu's counsel when it denied the petition for writ of mandamus in *Barrentine*.

## B.      The appraisal award was valid and binding.

Cantu further argues that appraisal award was not in compliance with the policy because it was not "itemized."[36]   An appraisal award is binding and enforceable if it is in "substantial compliance" with the policy.[37]   "Substantial compliance" means fulfillment of the essential requirements of a contract or a statute.[38]   The Southern policy does not require a particular form for the appraisal award; appraisers and umpires use different templates for their awards.  The award in this case itemizes the amount of loss for all coverages provided under the policy.[39]  The award is in writing and includes the actual cash value, depreciation, and replacement cost of the damage to Cantu's property caused by the fires. The

---

[36] Appt. Br. at 14-16.

[37] *See Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.–Dallas 1996, writ denied) ("Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract.").  As discussed *supra*, Cantu's argument that umpire Wittig was without authority to act is really an attack on Judge Campbell's authority to appoint him.  Cantu does not argue that the award was the result of fraud, accident, or mistake.

[38] *Wentworth v. Medellin*, 529 S.W.2d 125, 128 (Tex. Civ. App.–San Antonio 1975, no writ); *see also Harris County Appraisal Dist. v. Bradford Realty, Ltd.*, 919 S.W.2d 131, 135 (Tex. App.–Houston [14th Dist.] 1994, no writ).

[39] R. 227.

award was signed by Southern's appraiser and the duly-appointed umpire, Judge Wittig.[40]

Cantu's counsel has raised and had the same arguments rejected in another Bastrop wildfire case.[41] In response to the carrier's motion for summary judgment in *Michels*, plaintiffs argued that the form of the award was not in substantial compliance with the policy because it was not itemized and provided only the replacement cost and actual cash value of the loss.[42] The district court disagreed and denied the Michelses' motion to set aside the award.[43] The appellate court affirmed, holding that the lump sum award substantially complied with the policy's requirements.[44]

Cantu's reliance on *Richardson v. Allstate Texas Lloyds*,[45] is misplaced. In *Richardson*, the court held that the entire appraisal process was not in substantial compliance with the policy because: (1) the appraisers did not prepare an itemized list of damages; (2) the appraisers did not meet to discuss their estimates; (3) the appraisers did not submit to the umpire the items upon which they did not agree;

---

[40] *Id.*

[41] *See Michels v. Safeco Ins. Co., 544 Fed. Appx. 535 (5th Cir. 2013).*

[42] *Id.* at 542.

[43] *Id.* at 537.

[44] *Id.* at 542; *see also TMM Investments, Ltd. v. Ohio Cas. Ins. Co., 730 F.3d 466, 472 (5th Cir. 2013)* ("minor mistakes that do not taint the entire award should not frustrate the parties' intent to be bound by the appraisal provision of their contract"); *Providence Lloyds Ins. Co. v. Crystal City Independent Sch. Dist., 877 S.W.2d 872, 875-78 (Tex. App.–San Antonio 1994, no writ).*

[45] No. 05-06-00100-CV, 2007 WL 1990387 (Tex. App.–Dallas July 11, 2007, no pet.).

(4) the umpire did not discuss the award with both appraisers before it was entered; and (5) the award was a lump-sum amount written next to the phrase "to be determined by hygienist."[46] The lack of an itemized decision was just one part of the wholly flawed process that was not in substantial compliance with the policy.[47]

Appraisal awards "are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award."[48] Because every reasonable presumption is indulged in favor of the award, the burden of proof is on the party seeking to avoid the award.[49] Cantu did not request clarification of the award and did not adduce any evidence that the appraisal process or award in this case was not in substantial compliance with the policy.

## C. Cantu cannot complain about the effect of the trial court's declarations on extra-contractual causes of action she did not assert.

Cantu's final argument is that the trial court erred in holding that Southern's payment of the appraisal award foreclosed her bad-faith claims.[50] This misstates the trial court's judgment. The trial court declared that Southern's liability under the policy was not reasonably clear until the appraisal award was issued and that Southern's timely payment of the award therefore satisfied the prompt-payment

---

[46] *Id.* at *2-3.

[47] *See id.* at *4.

[48] *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 786 (Tex. App.–Houston [14th Dist] 2004, no pet.).

[49] *Id.* (citing *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex. App.–Fort Worth 1992, writ dism'd by agr.)).

[50] Appt. Br. at 16-19.

requirements of the Texas Insurance Code and tie-in provisions of the DTPA – established holdings under Texas law.[51] The court did not opine on Southern's "pre-appraisal conduct" or alleged "extreme acts" in processing Cantu's claims because Cantu did not assert any counterclaims for this extra-contractual liability. Cantu did not assert any counterclaims at all. Her pleadings consisted solely of an answer with affirmative defenses to the validity of the appraisal award, a plea to the jurisdiction, and a motion to transfer venue to Dallas based on convenience.[52] Even if Cantu had bad-faith claims that were not extinguished by Southern's payment of the appraisal award, she did not raise them, providing no impediment to the trial court's final summary judgment and preserving nothing for this Court to review. Cantu is not entitled to an advisory opinion on the effect of an appraisal award on theoretical bad-faith claims.

## Conclusion and Prayer

Rather than challenge the appraisal process and award in the Original Bastrop Suit through proper appellate channels, Cantu abandoned her claims and sought a different district court to review the first court's appraisal orders. The trial court properly rejected this collateral attack. Cantu also failed to assert the

---

[51] R. 532; *see Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, 459 Fed. Appx. 366, 367 (5th Cir. 2012) (collecting and discussing cases).

[52] R. 17-22.

extra-contractual claims she contends are affected by the trial court's declarations, which leaves nothing for this Court to review.

WHEREFORE, PREMISES CONSIDERED, Appellee Southern Insurance Company respectfully requests that the Court affirm the trial court's judgment and grant Appellee such other relief to which it may be justly entitled.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
211 E. Seventh Street, Suite 600
Austin, Texas 78701
Telephone: (512) 472-7700
Facsimile: (512) 472-0205

By: */s/ Eric S. Peabody*
    Catherine L. Hanna
    State Bar No. 08918280
    Email: channa@hannaplaut.com
    Eric S. Peabody
    State Bar No. 00789539
    Email: epeabody@hannaplaut.com
    Laura D. Tubbs
    State Bar No. 24052792
    Email: ltubbs@hannaplaut.com

**ATTORNEYS FOR APPELLEE
SOUTHERN INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Appellant's Brief has been forwarded by e-service and/or facsimile on the 22nd day of January, 2015 to:

*<u>Via Facsimile:  (713) 583-8989</u>*
*<u>Email:  rraytex@aol.com</u>*
Robert E. Ray
1177 West Loop South, Suite 1180
Houston, Texas 77027

*<u>Via Facsimile:  (713) 467-8883</u>*
*<u>Email:  houstonlaw2@aol.com</u>*
Robert L. Collins
M. Chad Gerke
Audrey E. Guthrie
P.O. Box 7726
Houston, Texas 77270-7726

*<u>Via Facsimile:  (713) 467-8883</u>*
*<u>Email:  lewis@texlaw.info</u>*
Christopher D. Lewis
1721 West T.C. Jester Blvd.
Houston, Texas 77008

*Attorneys for Appellant*

/s/ Eric S. Peabody
Eric S. Peabody

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2010 and contains 3,757 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Eric S. Peabody*
Eric S. Peabody
Catherine L. Hanna
Laura D. Tubbs
Attorneys for Appellee Southern Insurance Company

Dated:  January 22, 2015

## <u>APPENDIX</u>

Tab A       Cause No. 28,370: Order setting hearing on Motion to Compel Completion of Appraisal

Tab B       Cause No. 28,370: Order Granting Motion to Compel Completion of Appraisal

Tab C       Cause No. 28,370: Docket Sheet

# Tab A



## 21ˢᵗ and 335ᵗʰ JUDICIAL DISTRICT COURTS

### BASTROP, BURLESON, LEE AND WASHINGTON COUNTIES

TERRY FLENNIKEN, JUDGE
21ˢᵗ Judicial District Court
100 East Main Street, Suite 305
Brenham, Texas 77833
(979) 277-6200

IAN LYNN
*Official Reporter*
(979) 542-2947

DEBORAH SHIROCKY
Court Coordinator
804 Pecan Street
Bastrop, Texas 78602
Phone (512) 581-4037
Fax (512) 581-4038
E-mail deborah.shirocky@co.bastrop.tx.us

REVA L. TOWSLEE CORBETT, JUDGE
335ᵗʰ Judicial District Court
100 W. Buck Street, Suite 307
Caldwell, Texas 77836
(979) 567-2335

CAROLEE MURRAY
*Official Reporter*
(512) 581-4236

# NOTICE OF HEARING

**DATE:**    December 11, 2012

**TO:**    Mr. Robert L. Collins, Attorney at Law, 713-467-8883
Mr. Daniel Kistler, Attorney at Law, 866-352-5124
Mr. Eric S. Peabody, Attorney at Law, 512-472-0205
Ms. Laura D. Tubbs, Attorney at Law, 512-472-0205
Ms. Sarah Loucks, District Clerk, Hand Delivered

**FROM:**    Deborah Shirocky, Civil Court Coordinator

**RE:**    Cause No. 28,370; **ROSE ENA CANTU vs. SOUTHERN INSURANCE COMPANY and STEVE A. DOLLERY;** In the 21st Judicial District Court of Bastrop County, Texas

Greetings:

PLEAE BE ADVISED that the court received the Plaintiff's Motion for Continuance of the Oral Hearing that was set on the docket for December 12, 2012. The court GRANTED that Motion and an Order is attached.

The court has rescheduled the above entitled and numbered case for **Wednesday, January 16, 2013 at 9:00 a.m.** At that time the court will address Southern Insurance Company's Motion To Compel Plaintiff To Complete Appraisal and To Continue Trial Setting.

FILED 8:30 A.M.
DATE 12-13-12
Sarah Loucks
District Clerk, Bastrop County

Page 2
December 11, 2012
Cause No. 28,370

This hearing will take place on the **First Floor** of the Bastrop County Courthouse Annex, located at 804 Pecan in Bastrop, Texas. **Please call the Court Coordinator, Deborah Shirocky, the day before this scheduled hearing to confirm the location!**

The Honorable Carson Campbell will be the new judge presiding over the entitled case. Please notify the court **by phone and in writing** at the above referenced numbers if this case reaches a settlement prior to the setting so that other matters may be scheduled.

Should you have any questions regarding the rescheduling of this hearing, please do not hesitate to contact this office at the above referenced number.

Respectfully,

Deborah Shirocky
Civil Court Coordinator

## CAUSE NO. 28,370

| | | |
|---|---|---|
| ROSE ENA CANTU | § | IN THE DISTRICT COURT OF |
|    Plaintiff, | § | |
| | § | |
| VS. | § | 21ST JUDICIAL DISTRICT |
| | § | |
| SOUTHERN INSURANCE | § | |
| COMPANY and STEVE A. | § | |
| DOLLERY | § | |
|    Defendants. | § | BASTROP COUNTY, T E X A S |

## ORDER GRANTING MOTION FOR CONTINUANCE OF ORAL HEARING

On this day the Court considered the Motion for Continuance of Oral Hearing requesting a continuance of the December 12, 2012 oral hearing. After reviewing the Motion for Continuance of Oral Hearing, the Court finds and concludes that the Motion should be GRANTED.

IT IS THEREFORE ORDERED that this matter be reset for hearing on the _16th_ day of _January_, 2013 at _9:00 am_

SIGNED this _16th_ day of _December_, 2012.

_____
JUDGE PRESIDING

Scanned

FILED 2:35 p.m.
DATE 12-11-12

4

# Tab B

## CAUSE NO. 28,370

| | | |
|---|---|---|
| ROSE ENA CANTU | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs | § | |
| | § | BASTROP, TEXAS |
| SOUTHERN INSURANCE COMPANY | § | |
| And STEVE A DOLLERY | § | |
| PARKER CLAIMS SERVICE | § | 21ST JUDICIAL DISTRICT |

## ORDER GRANTING MOTION TO COMPEL COMPLETION OF APPRAISAL

CAME ON FOR CONSIDERATION the Motion to Compel Completion of the Appraisal in the above-referenced action. The Court, having considered the motion, the Plaintiff's response, and arguments of counsel, removed the previously appointed umpire, Mr. Claude Ducloux, and appointed Hon. Don Wittig as umpire of the appraisal on January 16, 2013.

IT IS ORDERED that the following deadlines will govern the appraisal:

January 28, 2013    Appraisers shall confer regarding their estimates

January 29, 2013    Appraisers shall submit their differences to the umpire

February 8, 2013    Appraisal panel shall inspect the residence

February 15, 2013    Appraisal panel shall meet to discuss estimates and award

February 22, 2013    Appraisal shall be completed

SIGNED this 28TH day of January 2013.

JUDGE PRESIDING



## 21ˢᵗ and 335ᵗʰ JUDICIAL DISTRICT COURTS
### BASTROP, BURLESON, LEE, AND WASHINGTON COUNTIES

CARSON CAMPBELL, JUDGE
21ˢᵗ Judicial District Court
100 East Main Street, Suite 305
Brenham, Texas 77833
(979) 277-6200

JAN LYNN
Official Reporter
(979) 542-2947

LYNN MITCHELL
Court Coordinator
100 E. Main Street, Suite 305
Brenham, Texas 77833
(979) 277-6200, ext. 156
(979) 277-6235 fax
Email: lmitchell@wacounty.com

REVA L. TOWSLEE CORBETT, JUDGE
335ᵗʰ Judicial District Court
100 W. Buck Street, Suite 4
Caldwell, Texas 77836
(979) 567-2345

HOLLY SCHULZ
Official Reporter

## FACSIMILE

DATE:          January 28, 2013

TO:            Eric Peabody, Attorney at Law          FAX #: (512) 472-0205
               Robert Collins, Attorney at Law               (713) 467-8883
               Daniel Kistler, Attorney at Law              (866) 352-5124

FROM:          Lynn Mitchell

RE:            No. 28,370; *Rose Ena Cantu v. Southern Insurance Company, et al.*;
               In the 21ˢᵗ Judicial District Court at Law of Bastrop County, Texas

PAGES:         2

---

MESSAGE:

Attached, please find the Order Granting Motion to Compel Completion of Appraisal on the above-referenced case signed by Judge Campbell today.

cc:     Ms. Deborah Shirocky,
        Court Coordinator

# Tab C

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back        Location : All Courts  Help

# REGISTER OF ACTIONS
## CASE NO. 28,370

| | | |
|---|---|---|
| ROSE ENA CANTU vs.SOUTHERN INSURANCE COMPANY and STEVE A. DOLLERY | §<br>§<br>§<br>§<br>§ | Case Type: **Contract - Other**<br>Date Filed: **01/11/2012**<br>Location: **21st District Court** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **DOLLERY, STEVE A.** | |
| **Defendant** | **SOUTHERN INSURANCE COMPANY** | **ERIC S PEABODY**<br>*Retained*<br>512-472-7700(W) |
| | | **LAURA D TUBBS**<br>*Retained*<br>512-472-7700(W) |
| **Plaintiff** | **CANTU, ROSE ENA** | **ROBERT L. COLLINS**<br>*Retained*<br>713-467-8884(W) |
| | | **DANIEL KISTLER**<br>*Retained*<br>713-855-0827(W) |

---

### EVENTS & ORDERS OF THE COURT

**DISPOSITIONS**

07/08/2013 | **Non Suit** (Judicial Officer: Flenniken, Terry)

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 01/11/2012 | **Original Petition (OCA)** |
| 01/11/2012 | **Case Information Sheet** |
| 01/11/2012 | **COVER LETTER** |
| 01/18/2012 | **Citation by Certified Mail** |
| 01/18/2012 | **Citation** |

         DOLLERY, STEVE A.       Returned Unserved 01/24/2012
                                Returned              01/24/2012

| | |
|---|---|
| 01/18/2012 | **Citation by Certified Mail** |
| 01/18/2012 | **Citation** |

         SOUTHERN INSURANCE COMPANY     Served             01/25/2012

| | |
|---|---|
| 01/25/2012 | **Green Card Received** |
| 02/10/2012 | **Answer** |
| 02/10/2012 | **COVER LETTER** |
| 04/09/2012 | **Notice** |
| 04/09/2012 | **Notice** |
| 04/19/2012 | **COVER LETTER** |
| 04/19/2012 | **Motion** |
| 05/07/2012 | **COVER LETTER** |
| 05/07/2012 | **Motion** |
| 05/09/2012 | **Notice** |
| 05/30/2012 | **Motion** |
| 06/05/2012 | **Notice of Hearing** |
| 06/05/2012 | **COVER LETTER** |
| 06/07/2012 | **COVER LETTER** |
| 06/07/2012 | **Motion** |
| 06/07/2012 | **Notice** |
| 06/13/2012 | **Hearing** (9:00 AM) (Judicial Officer Flenniken, Terry) |
| 06/18/2012 | **Order of Mediation** |
| 08/02/2012 | **Order** |
| 08/06/2012 | **Report of Mediation (ACTIVE)** |
| 08/07/2012 | **Notice of Hearing** |
| 08/07/2012 | **Notice of Hearing** |
| 09/04/2012 | **COVER LETTER** |
| 09/04/2012 | **Response** |
| 09/05/2012 | **STATUS HEARING** (9:00 AM) (Judicial Officer Flenniken, Terry) |
| 09/05/2012 | **Order** |

| | |
|---|---|
| 09/06/2012 | **Notice of Hearing** |
| 11/30/2012 | **Motion** |
| 11/30/2012 | **COVER LETTER** |
| 12/05/2012 | **COVER LETTER** |
| 12/05/2012 | **Notice of Hearing** |
| 12/11/2012 | **COVER LETTER** |
| 12/11/2012 | **Motion** |
| 12/11/2012 | **Other/Misc** |
| 12/11/2012 | **Order** |
| 12/11/2012 | **Notice of Hearing** |
| 12/12/2012 | *CANCELED* **Hearing** (9:00 AM) (Judicial Officer Flenniken, Terry) |
| | *Other* |
| 12/13/2012 | **COVER LETTER** |
| 12/13/2012 | **Motion** |
| 01/15/2013 | **COVER LETTER** |
| 01/15/2013 | **Response** |
| 01/16/2013 | **Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |
| 01/16/2013 | **Order** |
| 01/23/2013 | **COVER LETTER** |
| 01/23/2013 | **Notice** |
| 01/29/2013 | **Order** |
| 01/30/2013 | **COVER LETTER** |
| 02/25/2013 | **Report** |
| 02/25/2013 | **COVER LETTER** |
| 02/26/2013 | **COVER LETTER** |
| 02/27/2013 | **Pre-Trial Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |
| 02/27/2013 | **Agreed Order** |
| 03/07/2013 | **Notice** |
| 03/18/2013 | *CANCELED* **Jury Trial** (9:00 AM) (Judicial Officer Campbell, Carson) |
| | *Per Judge* |
| 04/10/2013 | **STATUS HEARING** (9:00 AM) (Judicial Officer Campbell, Carson) |
| 05/01/2013 | **Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |
| 06/10/2013 | **COVER LETTER** |
| 06/10/2013 | **Motion** |
| 06/18/2013 | **Notice of Hearing** |
| 06/18/2013 | **COVER LETTER** |
| 07/08/2013 | **Notice of Nonsuit** |
| 07/17/2013 | *CANCELED* **Summary Judgment Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |
| | *Case Disposed* |
| 09/18/2013 | *CANCELED* **Pre-Trial Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |
| | *Case Disposed* |
| 09/23/2013 | *CANCELED* **Jury Trial** (9:00 AM) (Judicial Officer Campbell, Carson) |
| | *Case Disposed* |
| 10/31/2013 | **Motion** |
| 11/12/2013 | **COVER LETTER** |
| 11/12/2013 | **Response** |
| 11/12/2013 | **Notice of Hearing** |
| 12/04/2013 | **Motions Hearing** (9:00 AM) (Judicial Officer Campbell, Carson) |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** CANTU, ROSE ENA | | | |
| | Total Financial Assessment | | | 418.00 |
| | Total Payments and Credits | | | 418.00 |
| | **Balance Due as of 01/20/2015** | | | **0.00** |
| 01/17/2012 | Transaction Assessment | | | 252.00 |
| 01/18/2012 | Transaction Assessment | | | 166.00 |
| 01/18/2012 | Payment | Receipt # 2012-07272 | COLLINS, ROBERT L. | (418.00) |

844 S.W.2d 264
Court of Appeals of Texas,
Fort Worth.

W. Ray BARNES, Barnes Maintenance Co., Inc.,
W.R.B. Properties, and Softline Services,
Intervenor, Appellants,
v.
WESTERN ALLIANCE INSURANCE COMPANY,
Appellee.

No. 2–92–034–CV. | Dec. 16, 1992. | Rehearing
Denied Jan. 26, 1993.

Insured brought action against insurer to enforce appraisal award and entity, which had contracted with insured to investigate and document insured's claims and to receive 20% of gross damages recovered from insurer, intervened. The 89th District Court, Wichita County, Temple Driver, J., set aside appraisal award, rendered judgment for insured for actual and treble damages, attorney fees, and prejudgment and postjudgment interest, and awarded entity 20% of insured's actual damages and prejudgment interest. Insured and entity appealed. The Court of Appeals, Day, J., held that: (1) evidence was sufficient to support finding that appraisal award was result of fraud, accident, or mistake; (2) jury question asking whether appraisal award should be set aside because of fraud, accident, or mistake was not impermissibly multifarious; and (3) entity was entitled to 20% of overall, total amount insured was awarded in action.

Affirmed in part and reversed and rendered in part.

**Attorneys and Law Firms**

**\*266** Schell, Nicholas, Thompson, Beene & Vaughan, L.L.P., and Russell W. Schell, Gregory Alan Scott, Baltasar D. Cruz, Dallas, for appellants.

Pohl, Bennett & Mathews, and Michael A. Pohl, Daniel L. Ellwood, James A. Dunn, Houston, for appellant Softline Services.

Oldham & Barnard, and Charles M. Barnard, Charles W. Oldham, Wichita Falls, for appellee.

Before MEYERS, DAY and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

**OPINION**

DAY, Justice.

W. Ray Barnes, Barnes Maintenance Company, and W.R.B. Properties (Barnes) brought this action against Western Alliance Insurance Company (Western) to enforce an insurance appraisal award. Softline Services (Softline) intervened in the suit, asserting its right to 20% of the gross damages Barnes recovered from Western, pursuant to a contract between Barnes and Softline that antedated this proceeding. Barnes claimed that the roofs of two of his buildings were hail-damaged on March 1, 1988. Barnes filed a claim for this alleged loss with Western. Barnes and Western could not agree on the amount of the loss, so Barnes, through Softline,[1] demanded that an appraisal be made and an award given based on that appraisal, pursuant to **\*267** a provision in the insurance contract between Barnes and Western. The insurance contract provided as follows:

Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this Company, shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

When Loss Payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an [appraisal] award as herein provided.

Barnes appointed Gene E. Thayer, Sr. (Thayer) as his appraiser, and Western selected Dennis Olsovsky (Olsovsky). Thayer and Olsovsky were unable to agree on an umpire, so Judge Brotherton, of the 30th District Court of Wichita County, appointed Joseph E. Ashmore, Jr. (Ashmore) as umpire. Thayer and Olsovsky submitted their differences as to the actual cash value of the loss in writing to Ashmore. Ashmore and Thayer signed an appraisal award for $402,978.08 on June 6, 1990. Olsovsky did not sign the award. Western failed to challenge or pay the award sixty days after it was rendered, whereupon Barnes instituted this suit. Softline intervened in the suit on July 29, 1991.

Following a trial on the merits, the jury found that Barnes had suffered hail damage in the amount of $67,834.89 and that the appraisal award should be set aside because of fraud, accident, or mistake. The jury also found that Western had knowingly violated the Texas Insurance Code and the Deceptive Trade Practices–Consumer Protection Act.

The trial court denied Barnes' and Softline's motions for judgment non obstante veredicto to disregard the jury's finding on the damages issue and rendered judgment for Barnes for actual and treble damages, attorneys' fees, and pre- and postjudgment interest. The judgment also provided for Softline to recover 20% of Barnes' actual damages and prejudgment interest.

We affirm in part and reverse and render in part.

[1] [2] [3] Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *Standard Fire Ins. Co. v. Fraiman,* 514 S.W.2d 343, 344–45 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award. *Continental Ins. Co. v. Guerson,* 93 S.W.2d 591, 594 (Tex.Civ.App.—San Antonio 1936, writ dism'd). An award entered by appraisers and an umpire can be disregarded in only two instances: (1) if the award was made without authority; or (2) if the award was made as the result of fraud, accident, or mistake. *See Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 190 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.); *Guerson,* 93 S.W.2d at 594.

Western contended at trial that the appraisal award was the result of fraud, accident, or mistake. The trial court allowed Western to submit that issue to the jury in the form of Jury Question 14.

Jury Question No. 14 asked:

**\*268** Do you find from a preponderance of the evidence that the [appraisal] award should be set aside because of fraud, accident, or mistake?

Answer "Yes" or "No."

ANSWER: Yes

Jury Instruction No. 14–A:

You are instructed that "fraud" means:

(1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; *and* (6) that he thereby suffered injury.

Jury Instruction No. 14–B:

You are instructed that "accident" means an unexpected, unforseen [sic] or undesigned happening or consequence from either a known or unknown cause.

Jury Instruction No. 14–C:

You are hereby instructed that "mistake" means a situation where the appraisers and umpire were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers and umpire, or where the error resulting in the award is so great as to be indicative of gross partiality, undue influence, or corruption.

Jury Question No. 10 asked:

[F]rom a preponderance of the evidence[, w]hat sum of money, if paid now in cash, would fairly and reasonably compensate W. Ray Barnes for his damages, if any, for the storm, hail, and resulting damage to the insured buildings from the occurrence in question?

....

Answer in dollars and cents for damages, if any.

ANSWER: $67,834.89

Because the jury answered Question 14 in the affirmative, the trial court based Barnes' damages on the jury's answer to Question 10 rather than on the appraisal award.

[4] [5] [6] [7] In their first two points of error, Barnes and Softline each complain that the jury's affirmative finding in response to Question 14 was supported by no evidence or insufficient evidence.[2] In point of error three, Barnes contends that he was entitled to specific performance of the appraisal award as a matter of law, and Softline asserts that the trial court should have based damages on the appraisal award as a matter of law, rather than on the jury's answer to Question 10.

[8] [9] In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985) (per curiam); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

The record reveals numerous instances in which Barnes admitted in open court that he had previously lied about the hail damage **\*269** to the roof and about the repair costs. Barnes testified at trial as follows:

Q: Now, in your deposition you told us that the work that was done on Winn's[3] was done after the hail and because of the hail and you had to get that roof because of the hail; didn't you?

A: Yes, sir, I did.

Q: That's not true; is it?

A: That is not true.

....

Q: Have you ever at any point prior to the last five minutes ever told the defendants in this case ... that you were no longer claiming that that was part of the hail damage?

A: No, sir, I have not done that.

....

Q: ... You never told the umpire or Thayer that that new roof was not from the hail?

A: No, sir.

....

Q: And you know that you ordered a new roof on the Winn's portion before the hail?

A: Yes, sir.

Q: And although you told us in your prior testimony that the entire roof was fine before the hail, you now know that it was so bad that one section of it you had completely ordered a re-roofing job?

A: Yes, sir.

....

Q: So whatever work you were having done, not only to that roof but to the inside of the Winn's building, obviously was not work caused by that particular hail?

A: That's true.

....

Q: Back in October of 1990. And you told the court reporter that at that time you believe[d] the Winn's roof damage was from the hail, and that's a lie?

A: That's right.

....

Q: And before the deposition she had you raise your right hand and swear that everything you stated before her was true and correct?

A: That's true.

Q: Do you have anything in writing that you can show this jury that from March 1, 1988 up to December 28th, 1990 that you ever told the insurance company that you were not claiming damage to the Winn's portion of the roof?

A: No, sir.

Judge Ashmore, the umpire, testified as follows:

Q: ... If this roof [over Winn's] was under repair at the time of the hail, that repair was finished after the hail without any additional charges other than what was already going to be charged, and it was a permanent roof, and they gave a roofing guarantee, then you wouldn't expect there to be any award if you had known those facts, for that section of the roof that that roofer had done the work on?

....

A: If I had had that information, I would have factored it in. Unfortunately, I didn't have that information.

This testimony is some evidence from which the jury could reasonably have concluded, based on the definition given in Jury Instruction 14–A, that Barnes had committed fraud, thus causing the appraisal award to be based on fraud. This testimony also provides some evidence from which the jury could have concluded that the appraisal award was the result of accident or mistake, as those terms were defined in Jury Instructions 14–B and 14–C.

Because we find some evidence that supports the jury's affirmative finding to Question 14, we overrule Barnes' and Softline's first points of error.

[10] We will now consider Barnes' and Softline's challenge to the factual sufficiency of the evidence.

**\*270** [11] [12] [13] [14] An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.* Findings of fact are the exclusive province of the jury and/or the trial court. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744–45 (Tex.1986). A court of appeals cannot make findings of fact; it can only "unfind" facts. *Id.*

Based on our review of the entire record on this issue, we find that there is sufficient evidence to support the jury's affirmative answer to Question 14. In addition to Barnes' admissions that he had lied about the March 1988 hail damage and correspondent repair costs, evidence was presented of the following:

(1) When questioned about whether Winn's store needed considerable work before the hail (inside and out) and whether the price changed after the hail, Barnes would not give a direct answer but could produce no evidence that his roofing contractor, Armored Roofing (Armored), changed its contract price after the hail.

(2) Armored completed its roofing job a few days after the March 1988 hailstorm, and Barnes knew of no damage to the roof after that time. Barnes refused to assume that any leakage damage to the Winn's store was not from the hail but admitted that Armored had

guaranteed its work and that Barnes had never asked Armored to make good on its guarantee.

(3) Ashmore testified that he was shocked by Olsovsky's letter sent after the award was made because of the difference between Ashmore's and Olsovsky's findings and because Olsovsky was so upset about the award. Ashmore asked Judge Brotherton what he should do about the situation. Ashmore testified that Olsovsky's letter did not contain anything that would have made a difference in the award, but he also admitted that he got his figures solely from Thayer.

(4) Ashmore testified that he could not tell which part of the Thaten property roof was over Winn's store and that he did not know whether the roof he had inspected was permanent or temporary or whether his appraisal figures were for the whole roof, including the part that was roofed after the hail by Armored.

(5) Ashmore admitted that he had received two different letters from Armored that predated the appraisal award, showing that Armored had performed two repair jobs on Winn's store: one in process before and completed after the hail and one several months later. Ashmore further testified that he knew this information when he made his appraisal award.

(6) Ashmore testified that Olsovsky complained of the Winn's roof being repaired before the appraisers and umpire could inspect it so that it was difficult to tell whether there had been hail damage to the roof in 1988.

(7) Olsovsky's estimate for roof repairs was $135.00 per square. Olsovsky provided Ashmore this information, substantiated by estimates from Lydick Roofing and Weatherford Roofing, at $142.00 per square and $135.00 per square, respectively. Thayer's per-square estimate was $325.00, and Ashmore could provide no information from Thayer that backed this estimate. Ashmore testified that he had access to this information and considered it in making his award, but that he could not tell if it was for the same type of roof as the roof for which he made the award. Ashmore relied on Thayer's figures when making the award because he thought they were correct.

Barnes' testimony shows that he did not tell the truth about the 1988 hail damage to the Thaten property. Barnes' and Ashmore's testimony reveals that there was a great deal of confusion about which part of the roof on the Thaten property was actually damaged during the 1988 hailstorm, so **\*271** much so that the appraisers and umpire

could not tell which part needed to be replaced because of the storm.

This evidence is sufficient for the jury to have reasonably concluded that the appraisal award was based on fraud. The jury could have found that: (1) Barnes made a material representation as to which part of the roof was actually damaged by the March 1988 hailstorm; (2) this representation was false; (3) Barnes knew it was false when he made it; (4) Barnes intended that Western, Thayer, Olsovsky, and Ashmore should act upon it; (5) Ashmore[4] did act in reliance upon it pursuant to the insurance contract between Western and Barnes; and (6) Western thereby suffered injury. Additionally, the evidence of Barnes' dishonesty and the resultant confusion as to which portion of the roof actually required replacing was sufficient for the jury to have reasonably concluded that the appraisal award was the result of accident or mistake, based on Jury Instructions 14–B and 14–C.

Because we find sufficient evidence from which the jury could have concluded that the appraisal award was the result of fraud, accident, or mistake, we overrule Barnes' and Softline's second points of error. In view of our finding with respect to Barnes' and Softline's first and second points of error, we deem it unnecessary to address their third points of error.

[15] By his fourth point of error, Barnes complains that Jury Question No. 14 was impermissibly multifarious because fraud, accident, and mistake are distinct affirmative defenses that should have been submitted separately to the jury. Barnes contends that the question was improper because there is no way of knowing which of these defenses the jury intended from its affirmative finding.

We have found that evidence sufficient to prove each of these theories was presented to the jury at trial. Nonetheless, we must consider whether it is necessary that we be able to determine which of the defenses the jury intended from its affirmative finding.

Barnes primarily relies on *European Import Co. v. Lone Star Co.,* 596 S.W.2d 287, 290 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) and *Parker v. Keyser,* 540 S.W.2d 827, 830–31 (Tex.Civ.App.—Corpus Christi 1976, no writ). The *European* court ruled that a special issue inquiring whether the execution of a guaranty agreement was obtained by fraud or duress was "multifarious and would cause the court to speculate concerning what the jury intended from an affirmative

finding and as such would be improper." *Id.,* 596 S.W.2d at 290.

[16] Both of these cases were decided before the 1988 amendment to TEX.R.CIV.P. 277. Rule 277 provides, in pertinent part:

> In all jury cases the court *shall, whenever feasible,* submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict.

*Id.* (emphasis supplied). In *Texas Dep't of Human Resources v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990), the supreme court stated that "whenever feasible" means "in any or every instance in which it is capable of being accomplished." Thus, unless "extraordinary circumstances" exist, a trial court must submit broad-form questions. *Id.*

The "controlling question" in *E.B.* was whether the parent-child relationship between the mother and her children should be terminated, and not what specific ground or grounds the jury relied on to affirmatively answer the question posed. *Id.* The *E.B.* court also rejected arguments that the jury was required to agree on the specific grounds for termination. Rather, it was enough that the jurors agreed that the mother had endangered her children by doing one or more of the things listed in the jury instruction. *Id.*

**\*272** In the case before us, the controlling question was whether the appraisal award was the result of fraud, accident, or mistake and not which of these specific grounds the jury relied upon to answer Question 14. Under *E.B.,* the jury was not required to agree on the specific ground that resulted in the improper appraisal award. *See also* TEX.R.CIV.P. 277 (court may submit a question disjunctively when it is apparent from the evidence that one or the other of the conditions or facts inquired about necessarily exists). Moreover, the trial judge complied with Rule 277 by submitting the instructions necessary to enable the jury to render a verdict on the appraisal award issue.

Because we find that Jury Question 14 was proper in light of the current version of Rule 277 and the supreme court's interpretation of that rule, we overrule Barnes' fourth point of error.

[17] In its fourth point of error, Softline complains the trial court improperly limited Softline's recovery to 20% of Barnes' *actual* damages and prejudgment interest because

the contract between Softline and Barnes and the jury's answer to Question 13 entitled Softline to 20% of Barnes' *gross* recovery from Western.

Jury Question No. 13 asked:

> Do you find from a preponderance of the evidence that Softline Services and Plaintiffs agreed that Softline was to be paid by the Plaintiffs an amount equal to 20% of the *gross* amount recovered prior to any alterations and/or depreciation with no limitations or restrictions on the method of recovery, or for time and expenses, whichever is greater, and directed all interested parties to honor Softline Services' interest and lien in the agreement? [Emphasis supplied.]

> Answer "Yes" or "No."

> ANSWER: <u>Yes</u>

Similarly, the contract between Barnes and Softline provided that Barnes was to pay Softline "an amount equal to 20% of the gross amount recovered prior to any deductions for deductibles and/or depreciation with no limitations or restrictions on the method of recovery" for Softline's services in collecting insurance proceeds for the hail-damaged roof from Western.

Relying on *Unauthorized Practice of Law Committee v. Jansen,* 816 S.W.2d 813, 814 (Tex.App.—Houston [14th Dist.] 1991, writ denied), Barnes asserts that Softline is precluded from any recovery. In the judgment that formed the basis of the *Jansen* appeal, the trial court permanently enjoined a public insurance adjusting firm (Jansen) from asserting a contingent fee claim against a client who has contracted with an attorney on a contingent fee basis in the same matter. *Id.* at 814. The trial court's ruling on that issue was undisputed on appeal. *Id.* Without the benefit of knowledge of the facts in that case, we cannot determine whether Jansen was in the practice of contracting with his clients on a contingency fee basis *before or after* those clients entered into contingency fee contracts with attorneys on the same matters.

In the case before us, however, Barnes contracted with Softline on February 8, 1989, *over a year-and-a-half before* Barnes filed suit against Western. We find it inconceivable that the *Jansen* trial court intended to enable insureds to avoid contingency fee contracts already in existence with insurance adjustors by subsequently contracting on a contingency fee basis with an attorney about the same matter. Moreover, we are not bound by the decisions of our sister appellate courts, much less those of the trial courts.

Barnes does not assert that Softline was engaged in the unauthorized practice of law. He does not dispute the existence of the contract with Softline or any of its terms, nor does he contend that the contract was unconscionable or the result of unequal bargaining power. Based on the evidence presented at trial, the jury concluded that Softline was entitled to recover 20% of the gross amount Barnes recovered from Western, pursuant to that contract. Aside from his mistaken reliance upon *Jansen,* Barnes has presented no evidence or authority on appeal, and we are aware of none, why he should not be required to abide by the terms of his contract with **\*273** Softline. Thus, Barnes' argument must fail.

[18] Words used in a contract are to be given their plain, ordinary, and generally accepted meanings unless the instrument itself shows them to have been used in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied,* 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). The term "gross" means "an overall total exclusive of deductions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1002 (1981). Thus, the "gross amount" is the overall, total amount Barnes was awarded. That amount includes: (1) actual damages of $67,834.89, trebled to $203,504.67, (2) attorneys' fees of $13,500.00, (3) prejudgment interest of $16,325.99, and (4) postjudgment interest at 10% per annum from and after the date of the judgment until fully paid. Accordingly, Softline is entitled to 20% of each of these amounts.

We sustain Softline's fourth point of error.

[19] In two cross-points Western complains that the trial court erred in awarding Barnes treble damages and attorneys' fees. Western directs us to TEX.BUS. & COM.CODE ANN. § 17.50(b) (Vernon Supp.1993), which provides that only consumers who prevail in a trial on the merits are entitled to recover treble damages. Western contends that Barnes did not prevail at trial because of the jury's affirmative finding in response to Question 14. This argument is without merit.

In his original petition Barnes sought to recover damages from Western for breach of contract, insurance code violations, breach of duty of good faith and fair dealing, DTPA violations, and negligence and gross negligence. The jury found that Western breached its duty of good faith, engaged in unfair or deceptive practices, in violation of the Texas Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act, and was grossly negligent in its handling of Barnes' claim. Thus,

Barnes prevailed on all of his causes of action. Moreover, Western does not dispute any of these findings.

The jury also found that Barnes had suffered damages in the amount of $67,834.89 as a result of the March 1988 hailstorm and that he was entitled to attorneys' fees in the amount of $13,566.98. Barnes did not recover the amount of damages requested in his petition, but many litigants do not recover the entire amount they seek at trial.

Western's complaint that the trial court improperly awarded Barnes attorneys' fees is without support in the record or the case law. Accordingly, this point is waived on appeal. *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied); TEX.R.APP.P. 74(f).

We overrule both of Western's cross-points.

We affirm the trial court's judgment, except as it relates to Softline's fourth point of error. With respect to that point, we reverse the trial court's judgment and render judgment for Softline of 20% of Barnes' gross damages recovered, including actual and trebled damages, pre- and postjudgment interest, and attorneys' fees.

The parties shall share equally the costs of this appeal.

## Footnotes

[1]    On February 8, 1989, Barnes and Softline entered into an agreement under which Softline agreed to investigate and document Barnes' claims for presentation to Western. A Softline representative initiated the appraisal process provided for in the insurance contract between Barnes and Western.

[2]    Barnes contends that the jury's factual finding was against the great weight and preponderance of the evidence. When a party without the burden of proof on a special issue complains of the jury's adverse fact finding, that party should phrase his point of error as "insufficient evidence" to support the jury's findings. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Since fraud, accident, and mistake are affirmative defenses, Western, and not Barnes, had the burden of proof on Jury Question 14.

The supreme court has adopted a liberal rule of reference to the construction of points of error contained in appellate briefs, however, (*see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 630 (Tex.1986) (opinion on reh'g), *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 114 (Tex.1976), and TEX.R.APP.P. 74(p)), and so we will construe an inappropriately phrased point of error as raising a challenge to the factual sufficiency of the evidence. *See Muhlbauer v. Muhlbauer,* 686 S.W.2d 366, 368 (Tex.App.—Fort Worth 1985, no writ).

[3]    Barnes claimed that the March 1988 hailstorm damaged two of his properties: the Lamar property, where Barnes maintained offices, and the Thaten property, which was a strip shopping center. Winn's Variety Stores was one of two tenants located at the Thaten property.

[4]    We cannot determine the basis of Thayer's and Olsovsky's award because their testimony is not before us.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

459 Fed.Appx. 366
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

BLUM'S FURNITURE COMPANY, INC., Plaintiff–Appellant,
v.
CERTAIN UNDERWRITERS AT LLOYDS LONDON, Defendant–Appellee.

No. 11–20221 | Summary Calendar. | Jan. 24, 2012.

**Synopsis**
**Background:** Insured company brought Texas state-court action against insurer, alleging breach of contract, fraud, conspiracy, and common-law and statutory bad faith claims in relation to insurance claim, under business property policy, stemming from hurricane damage. Insurer removed action and asserted defense of estoppel based on ongoing appraisal procedure provided for by policy. The United States District Court for the Southern District of Texas, Nancy F. Atlas, J., 2011 WL 819491, granted insurer's summary judgment motion. Company appealed.

**Holdings:** The Court of Appeals held that:

[1] insurer did not breach its contract with company, and

[2] insurer did not act in bad faith in processing company's claim.

Affirmed.

**Attorneys and Law Firms**

**\*366** Peter M. Kelly, Attorney, Law Office of Peter M. Kelly, P.C., Robert Chamless Lane, Middagh & Lane, P.L.L.C., Houston, TX, for Plaintiff–Appellant.

Thomas Clark Wright, Wright & Close, L.L.P., Frank Anthony Piccolo, I, Esq., Preis & Roy, A.P.L.C., Henry Sim Platts, Jr., Esq., Wright & Close, L.L.P., Houston, TX, for Defendant–Appellee.

Appeal from the United States District Court for the Southern District of Texas, 4:09–CV–3479.

Before KING, JOLLY, and GRAVES, Circuit Judges.

**\*367** PER CURIAM:[*]

## FACTS AND PROCEDURAL BACKGROUND

Certain Underwriters at Lloyds London ("Lloyds") issued to Blum's Furniture Company ("Blum's") an insurance policy, number PUC 102524 ("policy"), covering its business property. During Hurricane Ike in 2008, the insured's building and contents (collectively "the property") sustained extensive damage. On September 17, 2008, Blum's submitted its claim under the policy to Lloyds.

On September 26, 2008, T.M. Mayfield & Company, an independent insurance claims adjuster hired by Lloyds, inspected the property. After conducting its inspection, T.M. Mayfield & Co. forwarded to Lloyds a detailed report containing an estimate for payment of Blum's claim. On October 28, 2008, Lloyds requested a proof of loss in exchange for payment of $50,000.00. Less than a year after Hurricane Ike, Lloyds obtained a second estimate from Belfor USA. Upon receiving Belfor USA's report, Lloyds adjusted the claim and paid Plaintiff approximately $300,000.00. Plaintiff accepted this payment, but invoked the appraisal provision under the policy on August 10, 2009.

According to the appraisal provision, if the parties to the policy disagreed on the value of the property loss, either party may make written demand for an appraisal of the loss. In the event that a party demands appraisal, each party will select its own impartial appraiser. If the selected appraisers cannot agree on the value of the loss, the two appraisers will select an umpire to whom the differences will be submitted. Once an umpire has been selected, an agreement on the amount of loss by the umpire and either appraiser will be binding. However, Lloyds still retained its right to deny the claim.

Less than one month later, Blum's filed this lawsuit in Texas state court asserting causes of action for breach of contract, fraud, conspiracy, and common law and statutory bad faith claims. Lloyds then removed the lawsuit to federal court and asserted the defense of estoppel based on the appraisal procedure.

Meanwhile, the appraisal process continued. Each party selected an appraiser who inspected the property and issued estimates of damage. When the appraisers could not agree on the proper value of the damage, they selected an umpire as required under the policy. After more than one year spent in the appraisal process, the umpire ultimately issued an award for damage to the property exceeding $1,000,000.

Thereafter, Lloyds issued two checks to Blum's for the appraisal amount, less amounts already paid and other deductions provided for by the policy. Blum's accepted Lloyds's payment of the appraisal amount, but continued to pursue the breach of contract and extra-contractual claims.

Following the close of discovery, Lloyds filed its motion for summary judgment. The district court granted Lloyds' motion for summary judgment, finding that "when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts that payment, the insured is 'estopped by the appraisal award from pursuing a breach of contract claim the insure[r] [sic].' " *Blum's Furniture Co. v. Certain Underwriters at Lloyds* **\*368** *London,* 2011 WL 819491, \*1, \*3 (S.D.Tex.2011) (citing *Franco v. Slavonic Mut. Fire Ins. Ass'n.,* 154 S.W.3d 777, 787 (Tex.App.2004)). Based on this holding, the district court found that an insured cannot maintain a common law and/or statutory bad faith claim where the breach of contract claim fails, unless the insurer's actions fall within one of the recognized exceptions, to which Blum's has failed to present any evidence. *Id.* at \*3–\*5.

Aggrieved by the district court's grant of summary judgment, Blum's appealed.

### STANDARD OF REVIEW

This court reviews a district court's grant or denial of summary judgment *de novo. Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,* 630 F.3d 431, 435 (5th Cir.2011). Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See*

Fed.R.Civ.P. 56(c). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is appropriate, the evidence and factual inferences drawn therefrom are to be viewed in a light most favorable to the non-movant, and all reasonable doubts about the facts should be resolved in favor of the non-movant. *Boston Old Colony Ins. v. Tiner Associates Inc.,* 288 F.3d 222, 227 (5th Cir.2002).

Where, as here, jurisdiction is based upon diversity, this court applies the law of the forum state. *Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.2010). Accordingly, Texas substantive law controls. In the absence of a final decision by the Texas Supreme Court addressing the issue at hand, this court must determine, in its best judgment, how the state's highest court would resolve the issue if presented with it. *Id.* Because the Texas Supreme Court has not addressed the issue at hand, we must make an "Erie guess." *Id.* at 191–192.

### DISCUSSION

In this case, Blum's raises two issues challenging the district court's grant of summary judgment in favor of Lloyds. These issues, however, hinge upon the same argument—that Lloyds breached its duty of good faith and fair dealings with Blum's by failing to promptly pay the full policy claim.

In *Liberty Nat'l Fire Ins. Co. v. Akin,* the Texas Supreme Court recognized that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." 927 S.W.2d 627, 629 (Tex.1996). The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995).

Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is "estopped by the appraisal award from maintaining a breach of contract claim against [the insurer]." *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 787 (Tex.App.2004).

According to Blum's, because the appraisal award was greater than the initial payment made by Lloyds

(approximately \$300,000), Lloyds' final payment of the claim was untimely and constituted a breach of contract. Lloyds argues that Blum's cannot use the difference in the appraisal award and initial payment as evidence of a breach of contract. *See* **\*369** *Breshears v. State Farm Lloyds,* 155 S.W.3d 340, 343 (Tex.App.2004) ("The Breshears may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal.").

[1] Here, it seems clear that Lloyds did not breach its contract with Blum's. Blum's made a claim, Lloyds inspected the property, obtained estimates on the amount of damage, and made an initial payment to Blum's. When Blum's disputed the amount paid, it invoked the appraisal process to have independent appraisers determine the amount of covered loss. Upon the conclusion of the appraisal process, Lloyds paid the difference between the appraisal award and the initial payment. Furthermore, the district court found that "it is undisputed that Lloyds paid the appraisal amount in a timely manner after the award was issued," and that "Blum's accepted that payment." *Blum's Furniture Co.,* 2011 WL 819491, at \*3. Therefore, we find that Blum's has failed to present any evidence which would establish a genuine issue of material fact regarding its breach of contract claim against Lloyds.

As stated above, "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *Akin,* 927 S.W.2d at 629. The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995).

[2] Here, Blum's argues that because the initial payment made by Lloyds was less than the appraisal award, Lloyds' failure to pay the full amount of the claim constituted an act, so extreme, that caused injury independent of the policy claim. Lloyds contends that,

based on the general rule, Blum's cannot maintain an action for bad faith where the breach of contract claim fails, *Akin,* 927 S.W.2d at 629, and neither exception applies. *Stoker,* 903 S.W.2d at 341.

Blum's, however, would have this court believe that it suffered additional damages because Lloyds initially paid only a portion of the entire claim thereby forcing Blum's to invoke the appraisal process. To the contrary, Lloyds began investigating Blum's claim nine days after Blum's submitted its claim. Lloyds inspected the property damage and obtained estimates from two adjusters. Based on these estimates, Lloyds adjusted the claim and paid Blum's approximately \$300,000.00. Because Blum's disagreed with the amount of payment, it invoked the appraisal provision.

It is undisputed that the appraisal process can only determine the value of damages, while liability is left for the courts to decide. *See, e.g., In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 407 (Tex. May 6, 2011). However, at no time during the claims process did Lloyds dispute the issue of coverage. Once the appraisal process concluded with an award to Blum's, Lloyds made payment of that amount and Blum's accepted. Based on the evidence presented, Blum's has failed to establish a genuine issue of material fact regarding its bad faith claims against Lloyds.

### CONCLUSION

Based on the foregoing analysis, the judgment of the district court is AFFIRMED.

**Parallel Citations**

2012 WL 181413 (C.A.5 (Tex.))

Footnotes

\*      Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

154 S.W.3d 777
Court of Appeals of Texas,
Houston (14th Dist.).

Patsy FRANCO, Individually and as Next Friend of
Jesse Ryan Villanueva, Alyssa Villanueva, Victoria
Villanueva, and Pete Villanueva, Minors, and
Jesse Villanueva, Appellants,
v.
SLAVONIC MUTUAL FIRE INSURANCE
ASSOCIATION, Jed Walzel, Southland Services,
Inc., Carl King, and Ernie Afflitto, Appellees.

No. 14−03−01433−CV. | Dec. 16, 2004.

**Synopsis**
**Background:** Insureds brought action against
homeowners' insurer, its employee, and adjusters to
recover for breach of contract and based on extra-
contractual causes of action stemming from alleged
misrepresentations concerning the policy and the handling
of the claim for damage from plumbing leak. The 149th
District Court, Brazoria County, Robert E. May, J.,
entered summary judgments in favor of defendants.
Insureds appealed.

**Holdings:** The Court of Appeals, John S. Anderson, J.,
held that:

[1] insurer's appraiser was not shown to be biased against
insureds;

[2] insureds failed to present evidence creating factual
issue precluding summary judgment on extra-contractual
claims; and

[3] statutes of limitations applicable to extra-contractual
claims began to run at time of insurer's alleged
misrepresentations in connection with sale of policy more
than five years before suit was commenced.

Affirmed.

**Attorneys and Law Firms**

**\*779** John Steven Mostyn, Eric Vincent Blanchard,
Houston, for appellants.

H. Dwayne Newton, Houston, Jeffrey Lee Hoffman,
Richmond, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and
FROST.

**OPINION**

JOHN S. ANDERSON, Justice.

Appellants, Patsy Franco, individually and as next friend
of her four children Jesse Ryan, Alyssa, Victoria, and Pete
Villanueva, and Jesse Villanueva, her husband, appeal
summary judgments granted **\*780** in favor of appellees.
This suit arises from a claim filed by Patsy Franco, the
insured, with her insurer seeking coverage under a fire
and extended coverage insurance policy for damage
caused by a plumbing leak in her home. Appellants, Patsy
Franco and her family, filed suit against appellees, the
insurer, adjuster, and individuals who handled the
insurance claim, alleging breach of contract and extra-
contractual causes of action stemming from alleged
misrepresentations made concerning the policy and the
handling of the claim. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 18, 2000, Patsy Franco noticed water on her
porch. It was discovered that the water was the result of a
plumbing leak in her home. She notified her insurer,
Slavonic Mutual Fire Insurance Association, of the
plumbing leak and sought coverage for the cost of
repairing the damage caused by the plumbing leak under a
fire and extended coverage insurance policy issued by
Slavonic insuring her home from certain losses.[1]

Jed Walzel, secretary of Slavonic, acknowledged Franco's
claim and hired Southland Services, Inc. to inspect the
premises at Franco's residence and adjust the claim.
Southland assigned the claim to individual adjustors Ernie
Afflitto and Carl King. King contacted Franco about her
claim and instructed her to contact a plumber. The section
of the pipe that was leaking was located within the wall
cavity, and King authorized the kitchen wall to be opened
for plumbing repairs. It was discovered that the leak was
caused by a hole in a drain pipe connected to the kitchen

sink that leaked only when the sink was used. Franco did not know how long the pipe had been leaking.

After the plumbing repairs were made, King returned to Franco's home, inspected the damage, and prepared an estimate of the repairs. On July 7, 2000, King sent his estimate of the cash value of the repairs to Slavonic. King estimated the amount of the actual cash value of the repairs as $3,930.55, less a $250 deductible, for a total cash value of $3,680.55. On July 18, 2000, Slavonic tendered a check in that amount to Franco. Slavonic also paid an invoice in the amount of $285 for emergency services at the Franco residence related to the plumbing leak. Franco did not cash the check for $3,680.55.

On July 21, 2000, Southland was notified by John Kubala, Franco's designated appraiser, that Franco was invoking the appraisal provision of the Slavonic policy. On July 31, Walzel received a fax from Southland transmitting Franco's demand for appraisal. The appraisal provision in the policy provides the following:

> **Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, **\*781** of any two when filed with this Company, shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

On August 14, 2000, Afflitto notified Kubala that Slavonic designated Sergio Garibay as its appointed appraiser.

In mid-July 2000, prior to Garibay's appointment as Slavonic's appraiser, Southland had contacted Garibay to examine the premises of the Franco home and determine the cause of the damage, and Garibay issued a report regarding his examination of the Franco residence and his findings. Franco protested Garibay's appointment as Slavonic's appraiser because of his previous investigation of the leak. However, on October 4, 2000, Kubala and

Garibay agreed on the appointment of Lynn Taylor as the umpire, and the appraisal process moved forward.

Franco and Kubala claimed mold in Franco's home was caused by water from the plumbing leak and needed to be tested. Kubala estimated the cost of repair as $12,397.72. Garibay disagreed with Kubala's estimate and, instead, agreed with an estimate prepared by Southland estimating the cost of repair as $4,002.[2]

On December 28, 2000, Taylor sent a proposed appraisal award to Kubala and Garibay proposing $8,273.53 as the cost of repair and $6,863.03 as the amount of the loss with depreciation deducted. Taylor's proposed award included an allowance for "mold treatment" but not for any special remediation effort because Taylor had "not been presented with any information that the mold condition that presently exists is one that warrants special environmental remediation."

On January 13, 2001, Taylor submitted a revised, proposed award to Kubala and Garibay. Taylor and Kubala both agreed to the revised proposed award of $8,350.51 for the cost of repair and $6,902.03 for the actual amount of loss, and Slavonic paid Franco $6,652.03 on January 22, which represented the actual value of the loss as determined by the revised, proposed award agreed to by Kubala and Taylor, less the $250 deductible specified in the policy. Franco accepted payment and deposited the check.

In June 2001, appellants filed suit against Slavonic, Walzel, Southland, Afflitto, and King, alleging violations of Texas Insurance Code articles 21.21 and 21.55 and the Texas Deceptive Trade Practices Act ("DTPA") and claims of negligent misrepresentation, fraud, breach of contract, breach of the duty of good faith and fair dealing, breaches of warranty, unconscionable conduct, gross negligence, and malice. All of appellants' claims stem from alleged misrepresentations made by appellees concerning the policy and its coverage and the appellees' alleged mishandling of Franco's claim.[3] Appellants sought economic and mental anguish damages, treble damages under the DTPA, exemplary damages, and attorney's fees.

In April 2003, Slavonic and Walzel filed a joint motion for summary judgment ("Slavonic's motion") asserting traditional and no-evidence grounds as follows:

> 1. The Plaintiffs submitted their contractual claim to binding appraisal under the policy [and the appraisal award] was paid by Defendant Slavonic;
>
> **\*782** 2. The Plaintiffs are estopped to claim additional damages under the policy of insurance

since they have retained the benefit of the appraisal award paid by Slavonic;

3. The Plaintiffs' contractual claims are not covered under the policy because the plumbing leak was not sudden but was a repeated leak over at least a period of weeks;[4]

4. The summary judgment evidence establishes that no misrepresentation/fraud took place, the claims are barred by the applicable statute of limitations, or, in the alternative there is no evidence to support Plaintiffs' misrepresentation/fraud claims;

5. The summary judgment evidence establishes compliance with the provisions of Art. 21.55 of the Texas Insurance Code as a matter of law;

6. There is no evidence to support Plaintiffs' claims of violations of Art. 21.21 of the Texas Insurance Code or the Texas DTPA or that Plaintiffs were damaged thereby;

7. There is no evidence to support Plaintiffs' Art. 21.21, DTPA and misrepresentation/fraud claims against Jed Walzel; and

8. There is no evidence that Slavonic or Walzel prevented Plaintiffs from remediating their premises or intentionally, knowingly, recklessly or negligently caused the minor Plaintiffs any bodily injury.

Appellants filed a response and specially excepted to Slavonic's motion, contending it is unclear what type of summary judgment motion, traditional or no-evidence, Slavonic filed. The trial court specifically denied Slavonic's motion for summary judgment with respect to the lack of coverage ground, but granted the motion in all other respects, ordering that appellants take nothing as to Slavonic and Walzel. In June 2003, Southland, Afflitto, and King jointly moved for summary judgment ("Southland's motion") on both traditional and no-evidence grounds. Southland's motion alleged summary judgment was proper based on the following: (1) because appellants' claims against Slavonic failed, their claims against Slavonic's agents, Southland, King, and Afflitto, also must fail; (2) appellants' acceptance of the appraisal award waives appellants' claim for insurance benefits; (3) the summary judgment evidence shows Slavonic paid Franco's plumbing-leak claim in its entirety as determined by appraisal, thus Southland, King, and Afflitto are entitled to summary judgment on appellants' DTPA and insurance code claims premised upon the contention that the claim was denied;

and (4) appellants have no evidence to support certain elements of their article 21.21, DTPA, and negligence/gross negligence claims. In August 2003, the trial court signed a "Final Judgment of Dismissal" granting Southland's summary judgment motion.

## DISCUSSION

Appellants challenge the summary judgments rendered in favor of appellees Slavonic, *783 Walzel, Southland, King, and Afflitto in five issues, arguing: (1) the trial court abused its discretion in overruling their special exception to Slavonic's motion; (2) Slavonic's payment of the appraisal award does not dispose of appellants' breach of contract claim; (3) Slavonic's motion fails to show there are no fact issues as to any elements of appellants' extra-contractual causes of action; (4) Southland's motion does not establish that there are no fact issues as to any elements of appellants' extra-contractual causes of action; and (5) fact issues preclude no-evidence summary judgment in favor of Southland, Afflitto, and King.

## STANDARD OF REVIEW

The movant for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). We review the summary judgment evidence using familiar standards of review. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 916–17 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

A defendant moving for traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against him. *Levesque v. Wilkens,* 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Traditional summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). A defendant may file a "no evidence" motion for summary judgment, after sufficient time for discovery has passed, if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* TEX.R. CIV. P. 166a(i).

As with the traditional summary judgment, in reviewing a "no evidence" summary judgment, we review the evidence in the light most favorable to the non-movant and disregard all evidence and inferences to the contrary. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

[1] [2] [3] Because the propriety of summary judgment is a question of law, we review the trial court's decision de novo. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In an appeal from a summary judgment, issues an appellate court may review are those the movant actually presented to the trial court. *Travis v. City of Mesquite,* 830 S.W.2d 94, 100 (Tex.1992). When the trial court grants summary judgment specifically on fewer than all grounds asserted, Rule 166a does not prevent an appellate court from affirming the judgment on other grounds the parties properly raised before the trial court. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). If the trial court grants a motion for summary judgment without stating the grounds on which it relied, we must affirm the summary judgment if any ground argued in the motion was sufficient. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Blan v. Ali,* 7 S.W.3d 741, 747–48 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

## I. Slavonic's Motion for Summary Judgment

### A. The Special Exception to Slavonic's Motion for Summary Judgment

In issue one, appellants challenge the trial court's denial of their special exception to Slavonic's motion. In their response to Slavonic's motion, appellants **\*784** complained by special exception that Slavonic's motion was vague and unclear in that they were unable to tell whether the motion was a traditional, no-evidence, or a hybrid motion for summary judgment.[5] Appellants requested that Slavonic be required to replead the motion for summary judgment with more specificity "so as to identify what type of motion it is and clearly distinguish between traditional grounds and any no-evidence grounds asserted."

[4] [5] [6] When a summary judgment is attacked on specificity grounds, a special exception is required. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous."). The excepting party must obtain a ruling on the special exception to preserve the issue for appeal. *McConnell,*

858 S.W.2d 337, 343 n. 7; *Dolcefino,* 19 S.W.3d at 925–26; *see also Rosas v. Hatz,* 147 S.W.3d 560, 562 (Tex.App.-Waco, 2004, no pet. h.) (refusing to infer a ruling on a special exception based only upon the trial court's disposition of the summary judgment motion standing alone); *Well Solutions, Inc., v. Stafford,* 32 S.W.3d 313, 316–17 (Tex.App.-San Antonio 2000, no pet.) (holding "a trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on the objection is simply not 'capable of being understood' from the ruling on the motion for summary judgment"). As a general rule, a complaint is preserved for appellate review only if the record establishes the complaint was made known to the trial court in a timely manner, and the trial court ruled on the complaint. *See* TEX.R.APP. P. 33.1(a).

Appellants concede that the trial court did not explicitly rule on their special exception. Instead, appellants contend that the trial court *implicitly* overruled their special exception pursuant to Rule 33.1 by (1) granting Slavonic's motion and not requiring Slavonic to replead its summary judgment grounds, and (2) refusing to sign an order setting forth its denial of the special exception or the bases for granting Slavonic's motion for summary judgment when appellants reurged the special exception in their motion for reconsideration. *See* TEX.R.APP. P. 33.1(a)(2)(A). Slavonic and Walzel contend that appellants have waived appellate review of this issue by not obtaining a ruling on their special exception in the court below.

[7] We examine the record to determine whether or not appellants obtained a ruling on the special exception. First, with regard to appellants' arguments pertaining to their motion for reconsideration, despite their assertions to the contrary, *nowhere* in the motion for reconsideration do appellants request the trial court to reconsider or rule on the special exception. Thus, the trial court's denial of the motion for reconsideration is not an implicit ruling on their special exception. *See Alejandro v. Bell,* 84 S.W.3d 383, 388 (Tex.App.Corpus Christi 2002, no pet.) (holding trial court implicitly ruled on objections to summary judgment evidence where the appellant complained in his motion for new trial of the trial court's refusal to rule on his objections).

[8] Second, we address appellants' contention that the trial court's order granting summary judgment in favor of Slavonic constitutes an implicit denial of appellants' special exception. Appellants contend a denial is implied because the trial court did **\*785** not order Slavonic to replead its motion for summary judgment. Slavonic and

Walzel counter that the entry of summary judgment could just as easily evidence an abandonment of the issue in the trial court by appellants and, in addition, holding the entry of a summary judgment constitutes an implicit denial of a special exception would render the refusal to rule provision of Rule 33.1(a) meaningless.

In light of the relevant rules and caselaw, we simply are unable to infer from the record in this case that the trial court implicitly overruled or implicitly made any ruling regarding appellants' special exception. *See Dolcefino,* 19 S.W.3d at 926–27. The summary judgment order does not mention the special exception, and a ruling on the special exception cannot be inferred based solely upon the disposition of Slavonic's summary judgment motion. Appellants were required to obtain a ruling, and they failed to do so.[6] Having failed to preserve the issue for review, we overrule appellants' first issue.

### B. The Appraisal Award

[9] In issue two, appellants assert (1) the appraisal award should be set aside because the appraisal was not conducted in substantial compliance with the insurance policy, and (2) even if the appraisal award is valid, Slavonic's payment of the appraisal award is not dispositive of the breach of contract action alleged against Slavonic and Walzel.[7]

[10] Appellants contend the appraisal award should be set aside because Garibay was an interested, prejudiced, and biased appraiser, due to his status as an investigating engineer for Southland and the fact that he already had issued a report containing his opinions regarding the scope of appellants' damages and coverage prior to his appointment as appraiser. Additionally, for the first time on appeal, appellants contend that the award should be set aside because Garibay did not follow the procedure for the appraisal process because he did not submit an appraisal for consideration by Kubala or Taylor in accordance with the appraisal provision of the policy.

Because appellants did not raise the second asserted basis for setting aside the **\*786** appraisal award in their response to Slavonic's motion in the trial court, we may only examine whether the summary judgment evidence raised a fact issue as to whether Garibay was biased and, if so, whether evidence of such bias raises a fact issue as to the appraisal award's validity.[8] *See* TEX.R.APP. P. 33.1(a); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

[11] [12] [13] [14] Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance

contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875 (Tex.App.-San Antonio 1994, no writ). The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Wells v. American States Preferred Ins. Co.,* 919 S.W.2d 679, 683–85 (Tex.App.-Dallas 1996, writ denied) (analyzing similar appraisal provision and concluding authority of appraisal panel limited to determining only the amount of loss). Because every reasonable presumption will be indulged to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award. *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.-Fort Worth 1992, writ dism'd by agr.). Texas courts recognize three situations in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy. *Wells,* 919 S.W.2d at 683; *Providence Lloyds Ins. Co.,* 877 S.W.2d at 875.

[15] Appellants argue that exception (1) applies; specifically, that "Garibay had a predetermined opinion as to what the scope of his appraisal would be and was, therefore, bias[ed] against the Franco family." We are required to view the summary judgment proof in the light most favorable to appellants and to resolve against Slavonic any doubt as to the existence of a genuine issue of material fact. The evidence relied upon by appellants to support their claim of bias consists of (1) Franco's statement in a deposition excerpt that Garibay was an engineer hired by Southland to inspect their home and that he was appointed as an appraiser, and (2) Garibay's affidavit in which he acknowledges being hired by Southland in mid-July 2002 to conduct an examination of appellants' house in order to determine the cause of the damage from a plumbing leak and discusses his observations and conclusions concerning the leak.

[16] Upon reviewing the record before us, we find appellants have not presented summary judgment proof of Garibay's bias against the Franco family, thus no fact issue was presented. The showing of a pre-existing relationship, without more, does not support a finding of bias. *See* **\*787** *Allison v. Fire Ins. Exchange,* 98 S.W.3d 227, 255 (Tex.App.-Austin 2002, pet. granted, judgm't vacated w.r.m.); *Gardner v. State Farm Lloyds,* 76 S.W.3d 140, 143–44 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Here, the summary judgment evidence shows that Garibay was hired by Southland "to examine the

premises" and "determine the cause of the damage, possibly from a reported sink drain line leak." Garibay was not an employee of Slavonic, and Garibay's report and conclusions regarding the cause of the plumbing leak were his own. There is no evidence suggesting that Slavonic influenced or exercised control over Garibay, that Garibay had a financial interest in Franco's claim, or that Garibay's previous inspection of the premises somehow factored into his damages valuation. Moreover, the final appraisal award was entered into by Kubala, Franco's appraiser, and the umpire. Viewing the evidence in the light most favorable to appellants, the evidence does not raise a fact issue as to Garibay being biased against appellants.

[17] Appellants further allege that "payment of an appraisal award is not dispositive of the Franco Family's entire breach of contract cause of action against Slavonic Mutual." Slavonic counters that the appraisal award is binding and enforceable. The summary judgment record reveals that Slavonic did not deny Franco's claim. Rather, Slavonic paid the full amount of the appraisal award to Franco, and Franco accepted payment of the award. The award is binding and enforceable. Under these circumstances, appellants are estopped by the appraisal award from maintaining a breach of contract claim against Slavonic. *See Gardner,* 76 S.W.3d at 143–44 (affirming summary judgment where there was no evidence raising a fact issue about whether the insurer's appraiser lacked independence). We hold summary judgment was proper in favor of Slavonic on appellants' breach of contract claim.

We overrule appellants' second issue.

### C. Appellants' Extra–Contractual Claims Against Slavonic and Walzel

In issue three, appellants contend Slavonic's motion for summary judgment did not conclusively establish that there are no genuine issues of material fact as to any element of appellants' extra-contractual causes of action. Specifically, appellants argue that Franco and Villanueva's lack of knowledge regarding the breaches and/or violations is not dispositive of the merits of their extra-contractual causes of action.

With regard to appellants' extra-contractual claims, Slavonic and Walzel moved for summary judgment based on the following grounds: (1) there is no evidence that Slavonic or Walzel misrepresented the terms of the policy or made any false representations, statements, or advertisements concerning coverage afforded by the policy; (2) the summary judgment evidence shows there was no false advertisement or misleading or false statement or representation made to Franco in the sale of the insurance policy; (3) any misrepresentations or fraud regarding the policy's coverage when it was purchased would have occurred, if at all, in February 1996 and are barred by limitations; (4) any misrepresentations made concerning the policy or appellants' claim were not the producing cause of any damages to appellants because Slavonic paid the amount of the loss as determined by the appraisal; (5) even if Slavonic denied appellants' claim, the damage resulting from the plumbing leak was not a covered loss or was specifically excluded from coverage by the policy; (6) there is no evidence Slavonic failed to meet the time deadlines imposed by article 21.55, or, alternatively, the summary judgment evidence conclusively established Slavonic met the time deadlines of article 21.55; and (7) there is no evidence that appellants sustained bodily **\*788** injury or that Slavonic or Walzel acted criminally, negligently, recklessly, intentionally, or knowingly to cause any bodily injury.

In response, appellants cite to the following evidence as raising a fact issue with regard to Slavonic's alleged violations of article 21.21 of the Texas Insurance Code and the DTPA in the sale of the policy: (1) Villanueva's deposition testimony that he was told the policy "was a standard policy that homeowners have" and that he was led to believe that they "had the max[imum]" coverage; and (2) Franco's deposition testimony that she thought the Slavonic policy was the same as any other insurance policy, and that this evidences an omission of fact regarding the policy by Slavonic's representative. Appellants further contend the following evidence shows Slavonic and Walzel violated the Insurance Code and the DTPA during the claim-handling process: (1) Franco's deposition testimony that King told her that the policy covers damage from plumbing leaks so long as the plumbing leak is above the foundation slab; and (2) Villanueva's testimony, in response to being asked what was the first conversation he recalled having with Walzel, that "I don't recall the first one. I know a conversation was related to the—where we weren't happy about what was going to be done to the house and we had—God, I can't recall, but I know his response was, 'Well, you hired an appraiser. He needs to represent ya'll now.' " Additionally, appellants cite the following evidence as proof showing they were met with resistance and delay: (1) Franco's testimony that Slavonic "took forever" to name their appraiser, and that when she disputed Garibay as the appraiser, that it took another 20 to 30 days, "somewhere around there," to rename Garibay; and (2) Villanueva's testimony that he felt "nothing was getting resolved." Finally, appellants cite to Walzel's deposition testimony in which he states that he does not know the

provisions of article 21.21 "off the top of [his] head" as evidence that Walzel "has a complete lack of understanding with regard to the provisions and requirements of [the] Texas Insurance Code."

### 1. Walzel's No–Evidence Motion for Summary Judgment

[18] The only evidence appellants cite in support of their extra-contractual claims asserted against Walzel are (1) Walzel's statement that he did not know the specific provisions of article 21.21 of the Texas Insurance Code off the top of his head, and (2) Villanueva's statement that Walzel told them to contact their appraiser during the appraisal process. Appellants do not explain how these statements raise a fact issue on their article 21.21, DTPA, and negligence claims alleged against Walzel. We conclude the two cited statements do not raise a fact issue on appellants' extra-contractual claims alleged against Walzel. Additionally, the record shows appellants did not present any evidence of bodily injury or any evidence that Walzel acted criminally, negligently, intentionally, or knowingly to cause any bodily injury. Accordingly, we overrule appellants' issue three as to Walzel.

### 2. Article 21.55 Violations

We next address appellants' article 21.55 claims against Slavonic. Appellants do not complain on appeal of the summary judgment in favor of Slavonic on their article 21.55 claims. Furthermore, viewing the evidence in the light most favorable to appellants, there is no evidence raising a fact issue about Slavonic's compliance with the time deadlines imposed by article 21.55. Accordingly, summary judgment in favor of Slavonic was proper on appellants' article 21.55 claims.

### 3. Statutes of Limitations

Slavonic asserted in its motion for summary judgment that appellants' misrepresentation, **789** fraud, DTPA, and article 21.21 claims stemming from alleged misrepresentations made by Slavonic in the sale of the policy are barred by statutes of limitations.

[19] [20] [21] A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense and must conclusively prove when the cause of action accrued. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Additionally, a defendant must negate the discovery rule, if it applies and has been

pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

[22] [23] Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). We note that appellants did not respond to Slavonic's statute of limitations summary judgment ground in the trial court or on appeal. Because appellants did not raise the discovery rule, Slavonic is not required to negate the applicability of the discovery rule by proving as a matter of law that there is no genuine issue of fact concerning the date when the Franco's discovered or should have discovered the injury. Here, the summary judgment evidence shows that Slavonic sold Franco the policy in February 1996, and that this suit was filed June 14, 2001, over five years later.

We conclude Slavonic proved as a matter of law that the statutes of limitations bar appellants' fraud, negligent misrepresentation, DTPA, and article 21.21 claims stemming from alleged misrepresentations Slavonic made when the policy was purchased in 1996. *See* TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 2002) (providing two-year statute of limitations for claims filed under the DTPA); TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.003, 16.004 (Vernon 2002) (providing two and four-year statute of limitations, respectively, applicable to causes of action for negligent misrepresentation and fraud); TEX. INS.CODE ANN. art. 21.21, § 16(d) (Vernon Supp.2004) (providing two-year statute of limitations applicable to actions brought under article 21.21). We affirm the summary judgment in favor of Slavonic on appellants' extra-contractual claims stemming from the sale of the policy.

### 4. Article 21.21 and DTPA Violations

Slavonic moved for summary judgment on the ground that there is no evidence that appellants suffered any damages from the alleged violations of article 21.21 and the DTPA. Appellants did not produce any summary judgment evidence of damages in their response. Accordingly, we conclude that summary judgment in favor of Slavonic on these claims was proper.

**5. Other Claims**

Slavonic also moved for summary judgment on the ground that there is no evidence that it prevented Franco from remediating the damage to her home or caused the minor appellants any injury. Appellants did not introduce any evidence in response to these grounds, nor do appellants contest these grounds on appeal. Accordingly, we affirm the summary judgment on these grounds.

We overrule appellants' third issue.

**II. Southland's Motion for Summary Judgment**

In issues four and five, appellants argue summary judgment was improper for **\*790** Southland[9] because (1) Southland did not conclusively disprove appellants' "extra-contractual" causes of action; (2) Southlands' no-evidence motion was legally insufficient; and (3) fact issues precluded no-evidence summary judgment in favor of Southland. We first address appellants' complaints regarding Southland's no-evidence motion.

Appellants argue that the no-evidence motion is legally insufficient because it does not identify the elements that are being challenged. However, contrary to appellants' assertions, Southland's no-evidence motion adequately sets forth the elements as to which there is no evidence, and we overrule this subissue.

In fact, Southland's no-evidence summary judgment motion specifically alleges that there is no evidence of damages with regard to appellants' claims that Southland violated article 21.21 by: wrongfully denying Franco's claim; falsely stating the policy does not cover the claim; not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the claim; not promptly providing Franco a reasonable explanation of the basis for denial of the claim; not affirming or denying coverage or submitting a reservation of rights; refusing to pay the claim; and making untrue statements of material fact concerning the policy's coverage. Southland's motion further alleges that there is no evidence of a knowing violation of article 21.21.

With regard to appellants' DTPA claims, Southland's motion alleges there is no evidence of damages or of unconscionable conduct. As pertaining to appellants' negligence and gross negligence claims, Southland's motion argues there is no evidence of bodily injury, no evidence of the breach of any legal duty, no evidence that Southland's conduct was the proximate cause of bodily injury to appellants, no evidence that Southland refused to allow appellants to repair their home, and no evidence of exemplary damages. The motion further asserts there is

no evidence Southland committed a felony under Texas Penal Code section 22.04 in the work on Franco's home.

[24] Appellants, as the non-movants, had the burden to raise a genuine issue of material fact as to the elements challenged in Southland's motion. *See* TEX.R. CIV. P. 166a(i). In their response to Southland's motion, appellants only addressed the no-evidence grounds pertaining to their alleged article 21.21 violations. Because appellants did not present any evidence in response to Southland's no-evidence grounds pertaining to appellants' DTPA, negligence, and gross negligence claims, we affirm the summary judgment in favor of Southland, King, and Afflitto on these claims. *See Dolcefino,* 19 S.W.3d 906, 917.

We are left to examine whether summary judgment was proper on appellants' article 21.21 claims. The evidence appellants cite in support of their claims under article 21.21 consists of the following: (1) Franco's deposition testimony that King told her the policy covers damage from plumbing leaks so long as the plumbing leak is above the foundation slab; (2) Franco's testimony that she took out a loan with her attorney and hired a company to come out and prepare a scope of remediation with regard to mold in her home; (3) a letter dated October 26, 2000, from Afflitto to Kubala discussing the relevant policy provisions and notifying appellants that Slavonic's offer of $4,002.42 would be left on the table for an additional thirty days; and (4) a fax cover sheet dated October 24, 2000, from Afflitto to Walzel, concerning records from Garibay.

**\*791** [25] One of the grounds in Southland's motion is that there is no evidence of damages caused by the alleged article 21.21 violations. Section 16(a) of article 21.21 provides:

> Any person who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 of this Article to be ... unfair or deceptive acts or practices in the business of insurance ... may maintain an action against the person or persons engaging in such acts or practices.

TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.2004). Here, appellants offer Franco's statement that she obtained a loan from her attorney for scope of remediation work conducted at her home as evidence of damages. However, this evidence is not connected to the article 21.21 claims (or any other claim for that matter) and, therefore, does not raise a fact issue as to whether

appellants sustained damages attributable to their alleged article 21.21 claims. Because appellants did not present evidence raising a genuine issue of material fact as to damages, we conclude summary judgment in favor of Southland, King, and Afflitto was proper on appellants' article 21.21 claims.

Because we conclude that no-evidence summary judgment was proper in favor Southland, King, and Afflitto on all of appellants' causes of action, we do not address the remaining summary judgment grounds. Accordingly, we overrule appellants' fourth and fifth issues and affirm the summary judgment in favor of Southland, King, and Afflitto.

We affirm the judgment of the trial court.

Footnotes

1    In 1996, Franco purchased a fire and extended coverage insurance policy from Slavonic to insure her home, and this same policy had been renewed each year and was in effect in June 2000.

2    During the appraisal process, Slavonic offered Franco $4,002.52 to compromise the claim, but this offer was not accepted.

3    Appellants did not seek in their petition to set aside the appraisal award.

4    Slavonic asserted the plumbing leak claim was not covered by the policy because of a specific provision in the policy governing coverage for accidental water damage:
     ACCIDENTAL WATER DAMAGE—Water damage is limited to a loss of a sudden nature or circumstance....
     Water damage covers loss above foundation from accidental discharge, leakage, or overflow of water or steam from within a plumbing, heating or air-conditioning system or domestic appliance....
     This Association shall not be liable for loss caused directly or indirectly by ... (4) by continuous or repeated seepage or leakage over a period of weeks, months, years[.]

5    Slavonic's motion raises both traditional and no-evidence grounds, and appellants concede the rules do not prohibit a hybrid summary judgment motion such as Slavonic's.

6    Appellants did not identify in their special exception (or on appeal) the particular grounds in Slavonic's motion that lack specificity. We recognize that Slavonic's motion is not a model of clarity—the motion does not set forth the applicable standards of review under Rule 166a(c) and (i) and does not segregate the traditional from the no-evidence grounds; however, the motion does comply with Rule 166a in stating the grounds and sufficiently puts appellants on notice of the claims and causes of action being challenged by appellees. The better practice is to file two separate motions or to file one document containing both motions but with the arguments and authorities for each clearly delineated and separated from one another. For example, Southland's motion also was a hybrid, but it clearly segregated the traditional from the no-evidence grounds.

7    Notably, appellants do not allege a cause of action to set aside the appraisal award in their petition. The claims and facts alleged in appellants' live petition focus on alleged misrepresentations made by appellees concerning the policy and the alleged mishandling of Franco's claim. However, despite not having alleged a cause of action to set aside the award, appellants are not barred from raising the issue of the appraisal award's validity for the first time in their summary judgment response, and this issue was properly before the trial court and is subject to review by this court. *See Womack v. Allstate Ins. Co.,* 156 Tex. 467, 473, 296 S.W.2d 233, 237 (1956) (holding when summary judgment proof discloses facts rendering summary judgment untenable for the moving party, summary judgment should be denied regardless of defects in the pleading of the non-movant); *Patterson v. First Nat. Bank of Lake Jackson,* 921 S.W.2d 240, 244 (Tex.App.-Houston [14th Dist.] 1996, no writ) (holding same).

8    In the last section of their summary judgment response entitled, "Jed Walzel's deposition reveals a total lack of adherence to the Insurance Code," appellants allege that Slavonic allowed Garibay "to avoid actually participating in the process and to completely neglect even submitting an appraisal for either Plaintiffs' appraiser's consideration or the umpire's consideration" and that this "reveals a total lack of adherence to the Insurance Code, as well as a lack of adherence to the insurance contract at issue." Appellants do not allege anywhere in their response to Slavonic's motion that the appraisal award should be set aside because Garibay allegedly did not substantially comply with the procedure for the appraisal process.

9    References in this section to "Southland" also include King and Afflitto.

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

919 S.W.2d 131
Court of Appeals of Texas,
Houston (14th Dist.).

HARRIS COUNTY APPRAISAL DISTRICT and
Harris County Appraisal Review Board,
Appellants,
v.
BRADFORD REALTY, LTD., Appellee.

No. 14–93–01152–CV. | Dec. 15, 1994.

Taxpayer challenged real property tax appraisals for three years. The 165th District Court, Harris County, Elizabeth Ray, J., entered judgment for taxpayer. Taxing authorities appealed. The Court of Appeals, Lee, J., held that: (1) having exhausted administrative remedies for first year, taxpayer was not required to exhaust administrative remedies for succeeding years before amending petition to add them to case; (2) reduction of appraisal as to one taxing authority but not as to two others was unconstitutional; (3) taxpayer forfeited its right to appeal as to one tax year by its complete failure to pay undisputed tax; and (4) taxpayer's timely payment to one taxing authority but not to two others for another tax year would not bar its appeal if it is was in substantial compliance with statutory payment requirements.

Reversed and remanded.

**Attorneys and Law Firms**

**\*132** Robert P. McConnell, Houston, for appellants.

Irving C. Stern and Randall P. Crump, Houston, for appellees.

Before ROBERTSON, CANNON and LEE, JJ.

**OPINION**

LEE, Justice.

This is a property tax case. Appellants, Harris County Appraisal District and Harris County Appraisal Review Board, appeal a judgment in favor of Bradford Realty, Ltd. (Bradford). Appellants bring two points of error asserting Bradford's 1988 property appraisal was improperly reduced. Bradford brings five cross points

contending the property was incorrectly appraised for 1988 and 1989. We reverse and remand.

On December 31, 1986, Bradford purchased an industrial facility for $2.2 million. The appraisal district valued the property for tax year 1987 at approximately $7.2 million. Bradford protested the appraisal to the review board, which reduced the appraisal to approximately $4.5 million. Bradford timely filed notice of appeal with the review board and filed suit in district court. While the 1987 suit was pending, appellants appraised the property for tax years 1988 and 1989. For 1988, the property was again appraised at approximately $4.5 million. For 1989, the appraisal was reduced to approximately $3.5 million. Bradford amended its lawsuit to include the 1988 and 1989 valuations to its appeal. Prior to trial, the parties agreed to a $2.5 million appraisal for the 1987 tax year.

Appellants filed a plea to the jurisdiction contending that Bradford had not exhausted its administrative remedies for tax years **\*133** 1988 and 1989. Appellants also filed a motion to dismiss, contending Bradford had forfeited its right to appeal because it had not paid the undisputed portion of its 1988 and 1989 taxes to the three affected taxing units: Spring Independent School District (Spring ISD), Harris County Municipal Utility District # 36 (MUD # 36) and Harris County. *See* TEX. TAX CODE ANN. § 42.08 (Vernon 1992). After a trial to the court on stipulated facts, the court overruled appellants' plea to the jurisdiction and partially granted the motion to dismiss. The court dismissed the 1989 appeal because Bradford had not substantially complied with § 42.08. The court also precipitously dismissed Spring ISD and MUD # 36 from the 1988 appeal and reduced the Harris County 1988 appraised value to $2.4 million.

[1] In their first point of error, appellants contend that Bradford failed to exhaust its administrative remedies for tax years 1988 and 1989. Bradford counters that amending its preexisting suit gave appellants sufficient notice of its intent to protest the 1988 and 1989 valuations. The parties stipulated Bradford had complied with the administrative prerequisites for tax year 1987.

Property is generally appraised for tax purposes by the appraisal district as of January 1. TEX. TAX CODE ANN. § 23.01 (Vernon 1992); *Beck & Masten Pontiac–GMC v. Harris County Appraisal Dist.,* 830 S.W.2d 291, 292 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Once the appraisal is complete, the appraisal district delivers to the taxpayer notice of the property's appraised value. A taxpayer must file a notice of protest of the appraisal with the appraisal review board within thirty

(30) days after receiving the appraisal district's notice. TEX. TAX CODE ANN. § 41.44(a) (Vernon 1992). If a notice of protest is timely filed, the appraisal review board must schedule a hearing on the protest. The property owner is entitled to an opportunity to appear and offer evidence or the property owner may offer evidence by affidavit. TEX. TAX CODE ANN. § 41.45 (Vernon 1992). A property owner may appeal the appraisal review board's determination by filing a petition for review with a district court within forty-five (45) days of receiving notice that a final order has been entered. TEX. TAX CODE ANN. § 42.21 (Vernon 1992). A notice of protest is sufficient if it identifies the property, identifies the property owner who is protesting, and indicates that the property owner is dissatisfied with the appraisal district's determination. TEX. TAX CODE ANN. § 41.44(d) (Vernon 1992); *Estepp v. Miller,* 731 S.W.2d 677, 680 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

Appellants cite *Atascosa County Appraisal District v. Tymrak,* 858 S.W.2d 335 (Tex.1993), as authority that Bradford was required to complete these administrative procedures for tax years 1988 and 1989. In *Tymrak,* the taxpayer appealed the appraisal review board's property valuation for four tax years. Before trial, the parties settled on a valuation of the property, but they did not settle the amount of attorney's fees the taxpayer was entitled to recover under § 42.29 of the Tax Code. When the case went to trial, § 42.29¹ authorized the trial court to award a prevailing taxpayer up to $5,000 in attorney's fees per "appeal." The trial court determined that each tax year constituted a separate "appeal" and awarded the taxpayer $20,000 in attorney's fees. On appeal, the only question before the supreme court was whether "appeal" limited the taxpayer's recovery to $5,000 for all the tax years. The supreme court reviewed the various steps required to bring an appeal to the district court and held that an "appeal," for purposes of § 42.29 of the Tax Code, concerns only one tax year. Thus, the supreme court affirmed the district court's holding that the taxpayer should be allowed to recover $20,000. *Atascosa County Appraisal District v. Tymrak,* 858 S.W.2d 335, 337 (Tex.1993); *see also* TEX. TAX CODE ANN. § 42.29 (Vernon 1992).

**\*134** Appellants, in the instant case, argue that the steps reviewed by the court in *Tymrak* were required to be followed before Bradford could bring its appeal.² To the contrary, Bradford cites *Estepp v. Miller,* 731 S.W.2d 677 (Tex.App.—Austin 1987, writ ref'd n.r.e.), in which the taxpayer, Miller, completed all the administrative procedures and filed suit in district court for the 1984 appraisal of his property. In 1985, while his appeal was pending, Miller received his tax bill which reflected the

same value as the 1984 appraisal. He simply amended his 1984 suit to include the 1985 appraisal. The court of appeals held that the suit challenging the initial appraisal put the appraisal board and appraisal district on notice that Miller also disputed the application of that appraisal to subsequent years.

The facts in the instant case are nearly identical to the facts in *Estepp.* Bradford's suit was pending when the 1988 and 1989 appraisals were issued. Appellants appraised the property for 1988 at the same value as 1987. For 1989, appellants reduced the appraisal by approximately $1 million. Appellants were clearly aware that Bradford was dissatisfied with the appraisals. Because the amended petition sufficiently identifies the property, the property owner, and the owner's dissatisfaction, we, like the Austin Court of Appeals in *Estepp,* hold that appellants had the required notice of Bradford's protest. TEX. TAX CODE ANN. § 41.44 (Vernon 1992). The supreme court was dealing with a different question in *Tymrak.* Appellants' reliance on that case is misplaced, and their first point of error is overruled.

[2] In their second point of error, appellants argue that the 1988 appraised value was incorrectly reduced as to Harris County. The trial court found that the 1988 undisputed taxes were timely paid to Harris County while Spring ISD and MUD # 36 were not timely paid. The trial court also determined the 1988 appraised value as to only Harris County would be $2.4 million. Appellants contend that the trial court's determination violates the Texas constitution because the property is appraised with two different values.

The constitution requires the legislature to provide for a single tax appraisal of property. TEX. CONST. Art. VIII, § 18(b). By enacting the Property Tax Code,³ the legislature has fulfilled this constitutional mandate. *Wilson v. Galveston County Cent. Appraisal Dist.,* 713 S.W.2d 98, 101 (Tex.1986). The Property Tax Code established appraisal districts in each county and charged these districts with the responsibility for appraising property within the district. The purpose of each district is to place a single value on each piece of taxed property located within the district. *See* TEX. TAX CODE ANN. § 6.01 (Vernon 1992). It is this appraisal that may be appealed by the property owner to the district court. TEX. TAX CODE ANN. § 42.01 (Vernon 1992). The taxing units are bound by the appraisal determined at the conclusion of the appellate process. TEX. TAX CODE ANN. §§ 42.25, 42.26 (Vernon 1992). In the instant case, the trial court's judgment resulted in an appraisal for the 1988 tax year of approximately $4.5 million being used

by Spring ISD and MUD # 36 while an appraisal of $2.5 million was used by Harris County. The trial court erroneously assessed the property with two different appraisals. Appellants first contention in their second point of error is sustained.

**\*135** [3] Appellants further contend that Bradford has forfeited its right to appeal because it did not comply with Tax Code § 42.08. Section 42.08 requires a property owner who appeals an appraisal to pay the greater of the undisputed tax amount or the tax imposed in the preceding year. TEX. TAX CODE ANN. § 42.08(b) (Vernon 1992). Bradford admits that it paid all 1989 taxes after their due dates. A complete failure to timely pay any tax unit as is required under Tax Code § 42.08 results in forfeiture of the right to appeal. Because Bradford did not comply with § 42.08, it is bound by the appraisal district and appraisal review board's 1989 valuation of the property. *Harris County Appraisal Dist. v. Dipaola Realty Assoc.,* 841 S.W.2d 487, 490 (Tex.App.—Houston [1st Dist.] 1992, writ denied). *See also* TEX. TAX CODE ANN. § 42.08(b) (Vernon 1992).

[4] [5] The trial court found that Harris County was timely paid for the 1988 tax year while Spring ISD and MUD # 36 were not. Taxpayers must "substantially comply" with the requirement to pay undisputed taxes or forfeit their right to appeal. TEX. TAX CODE ANN. § 42.08(d) (Vernon 1992); *Lawler v. Tarrant Appraisal Dist.,* 855 S.W.2d 269, 271 (Tex.App.—Fort Worth 1993, no writ). "Substantial compliance" has been defined to mean performance of the essential requirements of a statute. A deviation from the requirements of the statute which does not seriously hinder the legislature's purpose in imposing the requirement is "substantial compliance." *Harris County Appraisal Dist. v. Krupp Realty Ltd. Partnership,* 787 S.W.2d 513, 515 (Tex.App.—Houston [1st Dist.] 1990, no writ). In *Krupp,* the court indicated there were two purposes behind § 42.08:

1. to insure that taxpayers would not use the right of judicial review as a subterfuge for delaying or avoiding the payment of at least some tax, and

2. to assure that the activities of the local governments which relied on ad valorem taxes would not be unduly impeded by granting the property owner the right of judicial review.

*Krupp,* 787 S.W.2d at 515 (quoting *Missouri Pac. R.R. v. Dallas County Appraisal Dist.,* 732 S.W.2d 717, 721 (Tex.App.—Dallas 1987, no writ)). Each case is to be determined on a case by case basis. Whether the taxpayer substantially complied will depend on various factors such the amount paid timely, the amount left unpaid by the delinquency date, and the promptness of the late payment. *Dipaola,* 841 S.W.2d at 490.

By timely paying Harris County, Bradford at least partially complied. Other courts of appeals have held that an appealing taxpayer substantially complied even though the taxpayer paid some of the affected taxing units after the undisputed taxes became delinquent. *See Harris County Appraisal Dist. v. Krupp Realty Ltd. Partnership,* 787 S.W.2d 513, 515 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Missouri Pac. R.R. v. Dallas County Appraisal Dist.,* 732 S.W.2d 717, 721 (Tex.App.—Dallas 1987, no writ). In order for "substantial compliance" to have any meaning, we must reject appellants' contention that Bradford has forfeited its right to appeal because it did not timely pay Spring ISD and MUD # 36. *See Dipaola,* 841 S.W.2d at 490. Appellants' second contention in their second point of error is overruled.

Whether Bradford substantially complied with the Tax Code requirement or forfeited its right to appeal because it was delinquent in paying the undisputed taxes is a factual matter to be determined by the court. TEX. TAX CODE ANN. § 42.08(d) (Vernon 1992). The district court below did not determine whether Bradford substantially complied with the requirements of § 42.08 for the 1988 tax year. Therefore, we must reverse for that express purpose. We do not need to address Bradford's five cross points.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

Footnotes

1   *Amended by* Acts 1991, 72nd Leg., ch. 836, § 4.1 (effective September 1, 1991). Section 42.29 now allows the trial court to award in reasonable attorney's fees the greater of $15,000 or 20 percent of the total amount by which the property owner's tax liability is reduced. The award of attorney's fees may not exceed the total amount that the taxpayer tax liability is reduced. TEX. TAX CODE ANN. § 42.29 (Vernon 1992).

2   In their brief, appellants quote *Tymrak* at length. The following most clearly supports their contention that Bradford did not exhaust its administrative remedies:

The taxpayer must complete these steps for each year that it desires to challenge the valuation because the completion of all the administrative requirements, the filing of a timely petition in the trial court, and the prosecution of the lawsuit to its final disposition affects only the appraised value of the property for that one tax year. Unless a property owner repeats this almost yearlong administrative process and files another petition in a separate lawsuit or *files an amended petition in a pending lawsuit filed appealing from an appraisal review board order issued in a previous year,* the taxpayer loses its right to litigate the appraised value for the subsequent year.

*Tymrak,* 858 S.W.2d at 337 (emphasis added).

[3]    The Property Tax Code is chapters 1 through 43 of the Texas Tax Code. *See* TEX. TAX CODE ANN. § 1.01 (Vernon 1992).

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 6466574
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

***MEMORANDUM OPINION***
Court of Appeals of Texas,
Austin.

In re James BARRENTINE and Patricia
Barrentine.

No. 03–13–00752–CV. | Nov. 27, 2013.

Original Proceeding from Bastrop County.

**Attorneys and Law Firms**

Robert L. Collins, Robert E. Ray, Houston, TX, for relator.

Catherine L. Hanna, Laura D. Tubbs, Hanna & Plaut, L.L.P., Austin, TX, for real party in interest.

Before Justices PURYEAR, ROSE and GOODWIN.

***MEMORANDUM OPINION***

MELISSA GOODWIN, Justice.

**\*1** The petition for writ of mandamus is denied. *See* Tex.R.App. P. 52.8(a).

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

544 Fed.Appx. 535
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals, Fifth Circuit.

Wayne MICHELS; Marie Michels, Plaintiffs–Appellants,
v.
SAFECO INSURANCE COMPANY OF INDIANA; Jason Christopher Womack, Defendants–Appellees.
Safeco Insurance Company Of Indiana, Plaintiff–Appellee,
v.
Wayne Michels; Marie Michels, Defendants–Appellants.

No. 13–50321 | Summary Calendar. | Nov. 6, 2013.

**Synopsis**
**Background:** Insureds brought action against insurer its investigator relating to smoke damage to their home. The United States District Court for the Western District of Texas dismissed investigator, a nondiverse defendant, as being improperly joined, granted insurer's motion to compel appraisal, denied insureds' motion to vacate the appraisal award, and granted summary judgment in favor of insurer. Insureds appealed.

**Holdings:** The Court of Appeals held that:

[1] insureds did not have a "reasonable basis of recovery" against investigator;

[2] District Court did not abuse its discretion by granting insurer's motion to compel appraisal; and

[3] District Court did not abuse its discretion in denying insureds' motion to vacate umpire's appraisal award.

Affirmed.

**Attorneys and Law Firms**

**\*536** Robert Edwin Ray, Robert L. Collins Houston, TX, for Plaintiffs–Appellants.

Catherine L. Hanna, Esq., Eric Scott Peabody, Hanna & Plaut, L.L.P., Austin, TX, David A. Ward, Jr., The Ward Law Firm, Woodlands, TX, for Defendants–Appellants.

Appeals from the United States District Court for the Western District of Texas, USDC No. 1:12–CV–511.

Before REAVLEY, JONES, and PRADO, Circuit Judges.

**Opinion**

PER CURIAM:[*]

This case arises out of an insurance coverage dispute relating to smoke damage to the plaintiffs' home. The plaintiffs appeal the district court's dismissal of a nondiverse defendant as being improperly joined, the grant of the remaining defendant's motion to compel appraisal, the denial of their motion to vacate the appraisal award, and the grant of summary judgment in favor of defendants. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The home of Plaintiffs–Appellants Wayne and Marie Michels (collectively "the Michelses") was damaged by smoke from the September 2011 Bastrop, Texas wildfires. The Michelses filed a claim with their homeowner's insurance carrier, Safeco Insurance Company of Indiana ("Safeco"). Safeco assigned an adjuster, Daniel Etzel, to investigate the damage to the house and report his findings back to Safeco. After Etzel's inspection found no visible damage, Safeco hired ServPro to clean the Michelses' home. In total, before suit or appraisal, Safeco paid $12,005.19 to the Michelses for general cleaning and attic insulation replacement.

Safeco adjuster Kevin Glassel was assigned to coordinate the continuing investigation and adjustment of the Michelses' claim. Glassel notified the Michelses via **\*537** mail that Safeco was having a man named Jason Womack come to their home to complete an inspection. After receiving Womack's report, Safeco informed the Michelses that no additional payments would be made.

The Micheleses sought an appraisal, and the two appraisers selected an umpire, as outlined by the policy. Later, the Micheleses rescinded their appraisal demand, and Safeco then made its own demand for appraisal. When the parties' designated appraisers were unable to agree on an umpire, Safeco filed suit in the district court, asking the court to appoint an umpire in accordance with the policy. Shortly after Safeco filed its federal suit, the Micheleses filed suit in state court against Safeco and Womack for damages exceeding $72,700. Safeco and Womack removed the Micheleses' state court suit to the federal district court, which consolidated the two suits after dismissing Womack and denying the Micheleses' motion to remand. The Micheleses and Jason Womack are citizens of Texas. Safeco is a citizen of Indiana.

The district court appointed an umpire, who issued an award that was agreed to by Safeco's appraiser. The award set the replacement cost value of the loss at $17,600, the recoverable depreciation at $100, and the actual cash value of the loss at $17,500. Safeco issued payment to the Micheleses in the amount of $3,928.41— the difference between the replacement cost value and Safeco's prior payments and the policy deductible.

After paying the appraisal award, Safeco filed a motion for summary judgment as to all the Micheleses' remaining claims. The Micheleses filed a response and a motion to set aside the award. The district court denied the Micheleses' motion to set aside the appraisal award, granted Safeco's motion for summary judgment, and signed a final, take-nothing judgment in favor of Safeco.

On appeal, the Michels raise four points of error. Specifically, they argue the district court erred in: (1) finding that Womack was improperly joined and in dismissing him; (2) granting Safeco's Motion to Compel Appraisal; (3) denying the Micheleses' Motion to Set Aside or Vacate Umpire Award; and (4) granting summary judgment in favor of Safeco. We address each in turn.

## II. JURISDICTION

The Micheleses seek review of a final judgment of the district court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court's jurisdiction under 28 U.S.C. § 1332 is discussed below.

## III. STANDARDS OF REVIEW

This Court reviews de novo a district court's denial of a motion to remand. *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir.2005). The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002). A trial court's decision to "pierce the pleadings" to determine whether a plaintiff has a reasonable basis of recovery against a particular nondiverse defendant under state law is reviewed for an abuse of discretion. *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.2004) (en banc). The district court's dismissal is subject to de novo review. *Causey v. Sewell Cadillac–Chevrolet, Inc.* 394 F.3d 285, 288 (5th Cir.2004).

The district court's grant of a motion for summary judgment and denial of a motion to set aside or vacate an appraisal award as a defense to the motion for summary **\*538** judgment are subject to de novo review. *See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720, 723 (5th Cir.2000).

## IV. DISCUSSION

The Micheleses contend the district court made four errors. We address each in turn, affirming the district court on each one.

### 1) Improper Joinder and Dismissal of Womack

As discussed above, the district court dismissed Womack as having been improperly joined.[1] The district court found that there was no reasonable basis of recovery against Womack because he was not a "person" engaged in the business of insurance as defined by the Texas Insurance Code. "Because all the claims the Michels bring against Womack are predicated on their belief he was (1) somehow acting within the auspices of the Insurance Code, or (2) in privity with them, when, in fact, he was neither, there is no possibility they could recover from him under their Original Petition." Thus, the district court found that Womack was improperly joined and that therefore his citizenship status would be disregarded for jurisdiction purposes. Once Womack was dismissed from the action, complete diversity existed between the parties.

As the Micheleses concede, the district court correctly stated that it first had to examine whether the Micheleses

sufficiently pleaded a cause of action under the Texas fair notice pleading standard. *See Smallwood,* 385 F.3d at 573. Then, the district court erred, the Micheleses contend, by viewing and considering evidence beyond the Micheleses' state court pre-removal pleading. The Micheleses submit that a motion to remand is analyzed with reference to only the complaint. According to the Micheleses, the district court erred by looking beyond the pleadings to determine whether Womack met the definition of a "person" engaged in the business of insurance as defined by the Texas Insurance Code.

A district court's improper joinder decision is subject to de novo review. *McDonal v. Abbott Labs.,* 408 F.3d 177, 182 (5th Cir.2005) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 311 (5th Cir.2002)). "[Improper] joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 333 (5th Cir.2004) (quoting *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003)). This Court has stated that the second way of establishing improper joinder "stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood,* 385 F.3d at 573.

This Court's en banc opinion in *Smallwood* sets out a procedure for determining whether a nondiverse defendant was improperly joined. First, the court should focus on the complaint: "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573. However, where a complaint states a claim that satisfies 12(b)(6), but **\*539** has "misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (citing *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 389 n. 10 (5th Cir.2000)). If a district court pierces the pleadings, and the defendant has produced evidence supporting improper joinder, the plaintiff must produce at least some controverting evidence. *Badon,* 224 F.3d at 393 ("We agree with the district court that, considering defendants' affidavits 'in light of the plaintiffs' lack of evidence,' there is no reasonable basis for predicting that plaintiffs might establish liability in their conspiracy claim against the in-state defendants."). There must be a "*reasonable* possibility of recovery" against the nondiverse defendant, "not merely a *theoretical* one." *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir.2003).

The district court did not abuse its discretion in looking beyond the Micheleses' pleadings.[2] In assessing whether

joinder was improper, the district court acted within its discretion to "pierce the pleadings" and conduct a brief inquiry. The district entered its order that Womack was improperly joined only thirty-two days after the Micheleses moved to remand. No depositions were taken, and Womack did not propound any new discovery.

After conducting its summary inquiry, the district court correctly determined that the Micheleses has no "reasonable basis of recovery against" Womack. *See Guillory,* 434 F.3d at 311. Because, as the district court correctly noted, the claims the Micheleses brought against Womack were based on the idea that he was acting under the Insurance Code or in privity with them, it was critical to determine whether Womack was a "person" under the Insurance Code such that he could be held liable. According to the Code, " 'Person' means an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance." Tex. Ins.Code Ann. § 541.002(2).

The Micheleses seem to concede that Womack's role as an appraiser after they made their appraisal demand does not subject Womack to any liability. Rather, the Micheleses argue that the district court failed to acknowledge their argument that Womack was an *adjuster* before he was an appraiser, and that his role as an adjuster gives the Micheleses a "reasonable basis of recovery" against him.

[1] The summary inquiry confirms that Womack was improperly joined. Womack's undisputed affidavit testimony was that he (1) was hired only to determine the cause and extent of damages to the Micheleses' home; (2) was a registered professional engineer in Texas at all times during the Michels assignment; (3) did not know what coverage the policy provided and never spoke to the Micheleses about policy coverage; and (4) made no decisions with respect to insurance coverage and at all times was acting pursuant to a contract for professional services with Safeco. The district court also knew that Womack was employed by Rimkus Consulting, not Safeco, and that a Safeco adjuster, Gressel, **\*540** handled the adjustment of the Micheleses' loss. Moreover, the Safeco insurance policy specifies that the results of the appraisal process are not an adjustment. The Micheleses did not object to Womack's affidavit or submit controverting evidence. The Micheleses relied exclusively on the allegations within their petition.

On appeal, the Micheleses state that Womack provided an adjustment of their claim. However, the document they cite from the record is not an adjustment. Instead, it is a letter from Safeco's adjuster, Kevin Glassel, stating that

based on Womack's report from his inspection of the house, Safeco had determined that no additional payments would be made. Beyond the Michelses' assertion that Womack was an adjuster or de facto adjuster, there is no evidence that he was, and substantial evidence that was not. Womack is an engineer employed by a third-party company to inspect damaged properties. He is not a licensed adjuster and does not provide insurance or adjusting services. In sum, Womack was not an adjuster.

Although adjusters can be liable under Texas law, Texas courts have held that engineers who investigate and consult with insurance companies in the adjustment of a claim are not "persons" engaged in the business of insurance. An independent engineering firm hired by an insurer to investigate a claim is not "engaged in the business of insurance" under the Insurance Code. *Dagley v. Haag Eng'g Co.,* 18 S.W.3d 787, 793 (Tex App.–Hous. [14th Dist.] 2000, no pet.); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.,* 2010 WL 1996596, at *3, *4 (S.D.Tex. May 17, 2010); *see also Castillo v. Prof'l Serv. Indus. Inc.,* 1999 WL 155833, at *1–2 (Tex.App.–San Antonio March 24, 1999, no pet.). In fact, the Insurance Code explicitly exempts engineers from getting licensed as adjusters, despite the technical assistance they provide to adjusters. *See* Tex. Ins.Code § 4101.002(3)(B).

Because the district court correctly dismissed Womack as improperly joined, complete diversity existed between the proper parties—the Michelses and Safeco.

### 2) District Court Granted Safeco's Motion to Compel Appraisal

The district court denied the Michelses' opposition to the Motion to Compel Appraisal. The Michelses argue on appeal that the district court abused its discretion by ordering the parties to appraisal. Specifically, the Michelses contend that because Safeco breached its contract with the Michelses with respect to adjusting the property damage claim, Safeco should not have been permitted to invoke the benefits of the contract. The Michelses insist that they were not seeking an order denying the appraisal process, but instead a remedy that would "prevent[ ] Safeco from essentially picking and choosing which provisions of the contract it would honor."

[2] Under Texas law, appraisal is an enforceable, contractually agreed upon method of determining the amount of loss. *In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 407 (Tex.2011); *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 888–89 (Tex.2009). The

district court did not order the appraisal until after it had denied the Michelses' motion to remand and dismissed Womack. Every Texas court to consider the "anticipatory breach" argument the Michelses raise has rejected it as being incompatible with the mandatory contractual remedy and the strong public policy favoring appraisal clauses. *See, e.g., In re State Farm Lloyds, Inc.,* 170 S.W.3d 629, 634–35 (Tex.App.–El Paso 2005, no pet.); *see also Johnson,* 290 S.W.3d at 894 (holding that appraisals should go forward as a preliminary matter **\*541** because "[a]llowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change in Texas insurance practice, and surely encourage much more of the same"). Thus, the district court did not abuse its discretion by denying the Michelses' request to delay the appraisal.

### 3) District Court Denied Michelses' Motion to Set Aside or Vacate Umpire Award

The umpire issued what he called an "Umpire Appraisal Award" of the total lump sum of $17,500.[3] The district court, finding that the award substantially complied with the terms of the policy, held that there was no basis for vacating or setting aside the umpire's appraisal award, and thus denied the Michelses' motion to vacate the award.

The Michelses argue that the process by which the Umpire Appraisal Award was reached was flawed, and that the appraisal award does not comply with the requirements of the insurance policy.[4] As such, the Michelses assert that the district court should have vacated the appraisal award. The "Appraisal" section of the insurance policy reads, in full:

> 8. Appraisal. If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of

these three, when filed with the company shall determine the amount of loss.
Each party will:

a. pay its own appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

As both the Michelses and Safeco point out, in Texas, appraisal awards "are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 786 (Tex.App.–Hous. [14th Dist.] 2004, no pet.). "Because every reasonable presumption is indulged in favor of the award, the burden of proof is on the party seeking to avoid the award." *Id.* (citing *Barnes v. W. Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.– Fort Worth, 1992, writ dism'd by agr.)). An award made in substantial compliance with the policy is presumptively valid; minor discrepancies in the appraisal process or award do not invalidate the award. *See* **\*542** *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875 (Tex.App.–San Antonio 1994, no writ). The results of an otherwise binding appraisal may be disregarded when the appraisal award is not in compliance with the requirements of the policy. *Franco,* 154 S.W.3d at 786.

[3] The Michelses mainly complain that the appraisal award was not in compliance because the umpire's award was not fully itemized, as the insurance policy required. This argument is estopped, as the district court pointed out, because the appraiser the Michelses appointed requested that the umpire use a non-itemized, lump sum form.

Even assuming that the Michelses' contention about the non-compliance of the appraisal award could be brought, the Michelses offer no citation in support of their position that even small variances from the appraisal process as outlined by the insurance policy require setting aside the appraisal award.

The appraisal award substantially complied with the policy. It identified the Actual Cash Value and Replacement Cost Value of the loss, as the policy required. The appraisers prepared itemized estimates, met to discuss them, and then submitted the disputes to the umpire. Further, the record before the district court demonstrates that the umpire performed his own inspection of the property in addition to considering the evidence and arguments of the appraisers.[5] Because the award indicates the umpire considered the evidence from both sides to arrive at an award and substantially

complied with the procedures outlined by the insurance policy, the district court is entitled to uphold that award, notwithstanding the non-itemized award form.

### 4) District Court Granted Safeco's Motion for Summary Judgment

After Safeco tendered the appraisal award amount to the Michelses, the trial court granted summary judgment in favor of Safeco and entered a take nothing judgment based on Safeco's tender of the appraisal award amount to the Michelses. The Michelses contend that Safeco was not entitled to summary judgment as a matter of law. The Michelses' claim that summary judgment was not appropriate hangs, for the most part, on their earlier arguments, namely that the district lacked jurisdiction because the parties were not diverse, that the appraisal process should have been stayed pending resolution of other contract issues, and that the appraisal award did not comply with the insurance policy. We have affirmed, above, the district court's disposition of those issues.

On appeal, a district court's grant or denial of summary judgment is reviewed de novo. *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,* 630 F.3d 431, 435 (5th Cir.2011). Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. **\*543** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The district court did not err in granting Safeco summary judgment. The Michelses' argument on the issue of summary judgment is that "once the district court erred in finding improper joinder and overruled the Michels' motion to remand, all subsequent rulings, including the summary judgment, were tainted by the initial error." The Michelses insist that, assuming arguendo that the case was not remanded and that the breach of contract claims were negated once Safeco paid the Michelses the balance on the appraisal award, they should nonetheless have been entitled to continue their state court claims. Despite this

assertion, the Michelses' brief goes on to only restate their concern about the joinder and remand issue tainting the rest of the court's determination. Above, we affirmed the district court's resolution of those issues.

**V. CONCLUSION**

For the foregoing reasons, we AFFIRM the district court.

Footnotes

\*     Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]    The Fifth Circuit adopted the terminology "improper joinder," *Smallwood,* 385 F.3d at 571 n. 1, instead of the terminology "fraudulent joinder," which is "a term of art" used in other circuits to describe the doctrine that ignores a lack of complete diversity where the plaintiff joins a nondiverse defendant to avoid federal jurisdiction. *E.g., Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001).

[2]    The Michelses' brief does not address the district court's actions as "piercing the pleadings." But because the district court, in conducting a summary inquiry, looked at evidence beyond the pleadings, we consider the court to have pierced the pleadings. The Michelses did not reply to Safeco's briefed argument that the district court's consideration of evidence beyond the pleadings was permitted because of the allowance for "piercing the pleadings."

[3]    The Michelses state "the umpire issued what he called a 'Final Ruling' on [sic] in the total lump sum of $17,500.00 (R. 592)." However, page 592 of the record is titled "Umpire Appraisal Award." A search of the record does not reveal a "Final Ruling" from the umpire.

[4]    Specifically, the Michelses contend that the umpire failed to consider all available information, to require the appraisers to submit their "differences only" as required by the policy, and to assess actual costs related to the claims.

[5]    The Umpire asserted the following in his signed award: "I have held a total 6 hours of hearings on October 12, 2012, and November 19, 2012, read numerous exhibits and reports, and inspected the property on November 2, 2012. I have twice allowed each side to supplement the record based on my questions and requests for further information."

877 S.W.2d 872
Court of Appeals of Texas,
San Antonio.

PROVIDENCE LLOYDS INSURANCE COMPANY
v.
CRYSTAL CITY INDEPENDENT SCHOOL
DISTRICT.

No. 04–93–00483–CV. | June 8, 1994.

Insured sued insurer for breach of contract. The 293rd District Court, Zavala County, Rey Perez, J., entered judgment on jury verdict for insured. Insurer appealed. The Court of Appeals, Butts, J., held that appraisal award precluded recovery on breach of contract claim.

Reversed and rendered.

**Attorneys and Law Firms**

**\*873** Patricia Montgomery, Austin, Julie Kraatz, Law Office of Louis J. Sandbote, Dallas, for appellant.

Jesse M. Gamez, Sherry A. Muller, Law Offices of Jesse Gamez, Inc., Preston H. Dial, Jr., San Antonio, for appellee.
Before BUTTS, PEEPLES and GARCIA, JJ.[1]

**Opinion**

BUTTS, Justice.

Providence Lloyds Insurance Company (Providence), insurer, appeals a judgment granted in favor of Crystal City Independent School District (the District), insured, following a jury trial regarding the disputed cash values and loss after a fire. The trial court awarded the District $222,199 which is the difference between the $1,237,000 jury verdict and a $1,014,801 sum previously paid by Providence.

In eight points of error, Providence argues that (1) the trial court erred by not enforcing the appraisal process and by permitting this case to be tried, and (2) various errors occurred during the trial regarding pleading and evidence, as well as the jury charge. By cross point, the District argues that it is entitled to attorney fees. We reverse and render.

The essential facts surrounding this controversy are undisputed. Following a February 9, 1992 fire at the Benito Juarez Elementary School, Providence and the District disagreed as to cash values of the loss. The District filed a lawsuit in March 1992, alleging both (1) bad faith by Providence regarding handling of the claim and (2) breach of the insurance contract and the resulting claim for damages. The trial court severed the bad faith cause of action. This appeal is from the judgment on the breach of contract cause of action.

By agreement of the parties, the trial court abated the suit for the parties to participate in the insurance policy appraisal process. Providence and the District had failed to agree on the cash values of the loss. After abatement, they engaged in the required appraisal **\*874** process with an umpire pursuant to the following insurance policy clause:

> Appraisal. In case the Insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the Insured or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. *An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.* Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties.

(emphasis added).

The District selected Joe Lopez as its appraiser; Providence selected Preston Harvey. The trial court appointed George Ozuna as the umpire, after the parties disagreed about the umpire choice.

Harvey (for Providence) initially determined the school could be restored for $851,149.98; Lopez (for the District) estimated repairs at $1,747,640.00. The record shows that

of the forty-eight items in dispute, Harvey and Lopez then resolved their differences and agreed on the following twenty-six items:

| | | |
|---|---|---|
| 1. | supervision | $24,000.00 |
| 2. | project manager & travel | 20,000.00 |
| 3. | portable commode | 600.00 |
| 4. | office trailer | 2,000.00 |
| 5. | dumpster rental & debris removal | 10,000.00 |
| 6. | crane rental | 2,000.00 |
| 7. | clean & seal for smoke odor | 21,202.04 |
| 8. | clean & treat concrete slab for odor | 1,500.00 |
| 9. | glass, windows & doors | 4,500.00 |
| 10. | suspended ceiling with insulation | 35,250.00 |
| 11. | laminated cabinets | 23,397.75 |
| 12. | remove & replace bath accessories & toilet partitions | 20,247.01 |
| 13. | chalk & tack boards | 9,100.00 |

| | | |
|---|---|---:|
| 14. | structural steel | 37,175.00 |
| 15. | clock system | 2,995.00 |
| 16. | a/c heat energy control (Honeywell) | 2,990.00 |
| 17. | remove & replace wall a/c & heating unit in Room 17 | 966.00 |
| 18. | general cleaning during and after construction | 6,133.00 |
| 19. | remove & replace wood window frames | 0.00 |
| 20. | plywood walls | 1,191.80 |
| 21. | marlyte wall in bath | 268.00 |
| 22. | repair concrete columns | 150.00 |
| 23. | remove & reset metal stairway and gate and burglar bars | 1,540.00 |
| 24. | remove & replace molding and trim | 4,493.50 |
| 25. | 6″ construction fence and gate | 2,475.00 |
| 26. | permits | 2,500.00 |

$236,674.10

———————

Ozuna then reviewed the twenty-two[2] remaining items, those upon which the appraisers were unable to agree, and assigned values to them, as follows:

**\*875**

| | | |
|---|---|---:|
| 1. | builders risk | $ 0.00 |
| 2. | power & telephone | 0.00 |
| 3. | project secretary | 0.00 |
| 4. | demolition of acoustic tile, ceiling, metal grid, insulation, walls, roof and carpet | 47,500.00 |
| 5. | masonry | 28,000.00 |
| 6. | metal stud walls, sheetrock, wall insulation, int. & ext. gyp board | 39,901.00 |
| 7. | doors & frames | 16,620.00 |
| 8. | hardware | 5,965.41 |
| 9. | plaster exterior | 16,950.00 |
| 10. | carpet, vinyl & base | 60,000.00 |
| 11. | painting & vinyl walls | 41,783.00 |
| 12. | remove & replace 4–ply built-up roof, roof insulation & sheetmetal | 111,000.00 |
| 13. | lockers | 0.00 |

| | | |
|---|---|---:|
| 14. | plumbing | 40,000.00 |
| 15. | fire alarm system | 14,405.00 |
| 16. | intercom | 7,560.00 |
| 17. | electric with switch gear and light fixtures | 93,380.00 |
| 18. | HVAC | 100,164.00 |
| 19. | clean metal ducts | 0.00 |
| 20. | performance bond | 21,278.75 |
| 21. | labor | 0.00 |
| 22. | labor (subs) | 0.00 |
| | | $644,507.16 |

Ozuna then added $132,365.38 as one lump sum which included overhead, insurance and profit, previously separated items. Additionally, Ozuna awarded $1,254.72 for "remove & replace wood window frames," one item upon which Harvey and Lopez had previously agreed (item 19, $0.00).[3] Thus, Ozuna awarded $778,127.26 for the disputed items as follows:

Ozuna added his value for the disputed items ($778,127.26) to the total sum upon which the appraisers previously agreed ($236,674.10), resulting in $1,014,801.36 as the total appraisal sum pursuant to the appraisal clause. It is significant that both Harvey and Lopez signed the umpire's determination, concurring with the cash value amounts, on the attached "Certificate of Concurrence." Providence immediately paid the District $1,014,801.30, and the District accepted payment and deposited the check.[4]

We note that the District did not amend its original petition with pleadings to set aside the award. The District's own appraiser, together with Providence's appraiser, concurred in the final amount as submitted by the umpire, thereby signifying their approval of the cost values of the items. The District amended its petition, alleging that Providence had made a "partial payment" ($1,014,801.30) for the loss, but that the District was entitled to recover an additional sum, $735,198.70, for repairs or replacement.

Subsequently, after a hearing, the trial court permitted the District to proceed with this lawsuit despite the appraisal process. In so doing, the court ruled, as a matter of law, that the umpire's final sum, which included the agreed amounts of the two appraisers and the umpire's own cost values, was not in substantial compliance with the contractual appraisal mandates. The court based this on the final appraisal document which denominated the twenty-six items agreed to by both parties' appraisers as *"court award"* rather than *"agreed award."* Other than calling the appraisers' agreed cost values *"court award"*, the umpire set out the accurate agreed amounts. At trial the court excluded the evidence of the appraisal and the testimony of the umpire.

In its first point of error, Providence argues that the trial court erred by not enforcing its appraisal award and, thus, by permitting this breach of contract case to be tried. We agree.

[1] [2] [3] In deciding Providence's point of error, we are guided by several well-settled principles. Appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *Scottish Union and Nat'l Ins. Co. v. Clancy,* 8 S.W. 630, 71 Tex. 5 (1888); *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.—Fort Worth 1992, writ dism'd by agr.). Every reasonable presumption will be indulged to sustain an appraisal award. *Continental Ins. Co. v. Guerson,* 93 S.W.2d 591, 594 (Tex.Civ.App.—San Antonio 1936, writ dism'd). An award entered by appraisers and an umpire can be disregarded if: (1) the award was made without authority; (2) the award was made as a result of fraud, accident or mistake; or (3) the award was not made substantially **\*876** in compliance with the requirements of the policy. *Scottish Union,* 8 S.W. at 631; *Barnes,* 844 S.W.2d at 267. *See also Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 190 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.).

[4] In addition, well-settled contract principles apply. We seek to implement the intention of the parties as expressed in the language of the contract. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–28 (Tex.1981); *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). The parties usually intend for each clause to have meaning and effect. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

[5] Further, whether a disputed provision is unambiguous or whether it can have more than one meaning is a question of law. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). We ascertain the subject appraisal clause is unambiguous, and neither party claims otherwise. Pursuant to the appraisal clause, Harvey and Lopez were charged to agree on all possible items, and then submit both disputed estimates to Ozuna. Ozuna, in turn, as the independent umpire, was to be the "tie-breaker."

Finally, we agree with the *Fisch* court which quoted a statement from 6 APPLEMAN ON INSURANCE LAW & PRACTICE, p. 368 (now § 3933, pp. 586–87):

> Where the policy provided that the appraisers should submit their differences to an umpire, it was held that the signature of the umpire was without validity unless and until the two appraisers failed to agree. * * * An umpire may act to settle differences between appraisers respecting the amount of a loss, when such differences become known to him. But an umpire, appointed to decide on matters of difference only, has no authority to pass on matters concerning which there was no difference between the appraisers. The function of an umpire who is to act in matters of difference only is not to coincide with one or the other of the appraisers, but he is to make his award independently of such estimates.

*Fisch,* 356 S.W.2d at 190.

[6] Applying these principles here, we must decide whether there was substantial compliance with the appraisal mandates. *See Fisch,* 356 S.W.2d at 190; *see also Barnes,* 844 S.W.2d at 267. The District does not allege lack of authority or fraud, mistake or accident regarding the appraisal award. *Id.*[5]

The District complains of two "flaws" in the umpire award and argues that they demonstrate the appraisal award was not made in substantial compliance with the appraisal provisions: (1) Ozuna exercised independent judgment with five items, instead of agreeing with one appraiser or the other; and (2) the **\*877** agreed awards were included in Ozuna's award summary and were labeled "court award."

Regarding the five items which Ozuna, the umpire, calculated without agreeing with either appraiser, the record reveals that the District failed to object to the cost value appraisal on that ground or specify that particular basis for the trial court's ruling that Ozuna failed to substantially comply with the insurance policy terms. In line with the District's argument of non-compliance, the trial court did state its specific basis for its ruling: "[T]hat this Court ordered certain awards, was used as his foundation and he built on that foundation. And it must fail, it must fall. This Court never awarded any amount ... [E]ven if the language ["court" instead of "agreed"] were to be taken out ... still, it is not in substantial compliance even with the appraisal clause provisions as mandated by law. Motion to strike is granted."

The record contains no mention of the five items not being correctly determined, which the District now maintains demonstrates failure to substantially comply with the terms of the appraisal clause. The matter was raised for the first time on appeal. Since the District did not submit to the court that same objection to the appraisal award it now raises on appeal, the trial court did not rule upon it. We will address this argument, however, for the purpose of clarification.

In all but the following five items, Ozuna agreed with either Harvey's or Lopez's estimate: (1) builders risk, (2) doors & frames, (3) plumbing, (4) fire alarm system, and (5) HVAC.

The duty of the umpire under the terms of the insurance policy was to ascertain and determine, in the exercise of his own best judgment, the cash value of the items of property about which the appraisers had disagreed, independent of the findings of the appraisers, or either of them. This is what the umpire did, according to the record, and both appraisers agreed with his findings and signed the award, which included their agreed findings. *See Orient Ins. Co. v. Harmon,* 177 S.W. 192 (Tex.Civ.App.—Dallas 1915, writ ref'd).

[7] The umpire is required to act with the appraisers in matters of difference. He is a third appraiser. If the three are of one mind, or if any two of them are in accord as to value and loss, the appraisal award is a finality. *See Dennis v. Standard Fire Ins. Co.,* 90 N.J.Eq. 419, 107 A. 161 (1919). In expounding on the duties of an umpire acting pursuant to a similar contractual provision, the court wrote:

> It was hardly to be expected that the appraisers would agree in all matters. They were partisans, within bounds, but were nevertheless unbiased and

unprejudiced and disinterested within the meaning of the contract of insurance.

\* \* \* \* \* \*

> The question still is, Was the umpire guilty of misconduct in appraising the loss on the 17 items at figures beyond the limits fixed by the appraisers and in discarding the estimates of the appraisers as to the sound value of one of the articles? ... Where an umpire ... exceeds his authority, the effect of his act is the same whether it was done consciously or by mistake, as in either case his award was void....

The position taken by the complainants is, and they contend, that, as the umpire was to act "in matters of difference only," his function was to coincide with one or the other of the appraisers or to somehow warp his judgment between the high and low figures that marked their differences. The position is not sound.

\* \* \* \* \* \*

> [I]f the three are of one mind, or if any two of them are in accord as to sound value and loss, the award is a finality. Manifestly, it would have been an abuse of authority had the umpire arbitrarily confined himself within the limits of the appraisers' estimates.

*Dennis,* 107 A. at 162–63. *Accord Atlas Constr. Co. v. Indiana Ins. Co.,* 160 Ind.App. 33, 309 N.E.2d 810 (1974).

Concerning the same contention made in the present case by the District, we find that in acting independently as to the disputed values, the umpire did not exceed the authority **\*878** conferred upon him. On the contrary, it was the duty of the umpire under the terms of the contract of insurance to ascertain and determine, in the exercise of his own judgment and as the result of his own investigation, the cost values of the disputed items, independent of the findings of the appraisers, or either of them.

Finally, regarding this contention, the parties concurred in the result. Not one, but both the appraisers agreed with the final appraisal award, making it a binding one. Following this, the District accepted the payment of the award. As noted previously, the District did not file suit to set aside the award.

**[8]** Regarding the District's complaint about the column labeling on Ozuna's report, the record shows that Ozuna labeled the column listing these twenty-six sums, upon which the appraisers had agreed, as "court award." The record supports the argument that this list should have been appropriately titled "agreed award." However, though arguably confusing, this labeling does not render the appraisal award not in substantial compliance.[6] Here the record is clear that Harvey and Lopez agreed on these twenty-six items and that Ozuna examined *only* the disputed twenty-two items. We hold the appraisal award was the intended result.

**[9] [10]** The District argues that we cannot respond to point of error one without Ozuna's entire deposition, which the trial court considered at the pre-trial hearing at which it excluded from evidence the appraisal award. We disagree. Providence brought forth relevant portions of Ozuna's deposition with its bill of exception at trial when it argued that the appraisal award should be enforced. The record is clear that Harvey and Lopez agreed on twenty-six items and that Ozuna was authorized to and did examine only the disputed twenty-two items. Also, we need not go behind Ozuna's award and analyze his mental processes. *See Continental,* 93 S.W.2d at 594.

**[11]** We believe the entire record before us demonstrates the appraisal was conducted in a fair and proper manner, and the award was determined, after full investigation by both appraisers and the umpire. There was no partiality or collusion shown; the appraisers and umpire acted in an honest and conscientious manner. Under these circumstances the trial court was not warranted, in effect, in setting aside the appraisal award.

Providence filed its motion to enforce the appraisal award after trial began. It stressed that the parties entered into the appraisal process, a condition precedent to recovery under the terms of the policy. The District participated, accepted the appraisal award, and received the proceeds. Providence cited the "loss payable clause" of the policy which required the insurer to pay the appraisal award within 60 days after it was filed, and it complied. It asserted the District failed to timely contest the appraisal award by a suit to set aside and had waived that right. In its motion for judgment n.o.v., Providence again argued that the appraisal award should have been enforced by the court. Also it argued that there was no evidence of breach of contract. Our previous discussions and rulings demonstrate that we agree with the first argument. Therefore point of error one is sustained. We have no need to address the remaining points of error.

**\*879** By cross point the District argues that it was entitled to $123,700 in attorney fees, despite the jury's "0.00" answer as to a reasonable fee for necessary service by the District's attorneys. Because of our disposition of the first point of error, we need not address this point.

The judgment is reversed and judgment is rendered that the appraisal award made pursuant to the provisions of the insurance contract is binding on the District and that the District take nothing in this suit.

**Parallel Citations**

92 Ed. Law Rep. 719

Footnotes

1    Justice Orlando Garcia not participating.

2    We note that appellant states in its brief that *eighteen* items were disputed. However, the record reflects the twenty-two listed items.

3    The District does not complain of this $1,254.72 sum in their favor. Neither party having complained, we need not address it.

| | |
|---|---|
| twenty-two itemized items | $644,507.16 |
| overhead, insurance and profit | 132,365.38 |
| window frames | 1,254.72 |
| | $778,127.26 |

4    As previously noted, the trial court deducted this sum from the jury verdict, in its judgment.

[5]     In *Barnes,* which was a suit by the insured to enforce an insurance appraisal award after the insurance company refused to pay the appraisal award, definitions of fraud, accident and mistake were submitted to the jury. The jury was asked whether it found from a preponderance of the evidence that the [appraisal] award should be set aside because of fraud, accident or mistake. The jury answered that *it should be set aside.* Another question asked the jury:

> [F]rom a preponderance of the evidence, [w]hat sum of money, if paid now in cash, would fairly and reasonably compensate [the insured] for his damages, if any, for the storm, hail, and resulting damage to the insured from the occurrence in question?

> 844 S.W.2d at 268.

> The jury awarded a much lesser amount than the original appraisal award.

> In the present case the jury answered three questions. The first question asked:

> Did [Providence] fail to fairly and reasonably compensate [the District] for the cost to repair or replace the [school] and thereby fail to comply with the insurance contract?

> ANSWER: <u>Yes</u>

> Conditioned upon an affirmative response to number one, the second question was:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the District] for the cost to repair or replace [the school]?

> "Cost to repair or replace" is the amount to repair or replace [the school] with material of like kind or quality, without deduction for depreciation and intended for the same occupancy and use.

> ANSWER: <u>1,237,000</u>

> The third question regarding the amount of attorney fees to award the District's attorneys was answered ——0.00——.

[6]     Nor do we believe that the mere column labeling gives rise to a "mistake." This is illustrated by prior case law. *See Providence Wash. Ins. Co. v. Farmers Elevator Co.,* 141 S.W.2d 1024, 1026–27 (Tex.Civ.App.—Amarillo 1940, no writ) (trial court judgment setting aside an award by two appraisers and an umpire reversed and rendered in part because there was no mistake— award was intended result); *Continental,* 93 S.W.2d at 594 (court cannot concern itself where the award embodies the appraisers real judgment); *Camden Fire Ins. Ass'n v. McCain,* 85 S.W.2d 270, 271 (Tex.Civ.App.—San Antonio 1935, writ dism'd) (award not set aside where no evidence of interest, bias or prejudice); *Gulf Ins. Co. of Dallas v. Pappas,* 73 S.W.2d 145, 146–47 (Tex.Civ.App.—San Antonio 1934, writ ref'd) (court will not substitute its own award for that of the appraisers unless the mistake is one by which the award fails to operate in a way the appraisers intended); *Home Ins. Co. v. Walter,* 230 S.W. 723, 724 (Tex.Civ.App.—Dallas 1921, no writ) (an award which is the result of fraud, mistake or accident means one which was made by appraisers who were incompetent, interested or partial).

---

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1990387
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
Court of Appeals of Texas,
Dallas.

Linda RICHARDSON, Appellant
v.
ALLSTATE TEXAS LLOYD'S, Appellee.

No. 05-06-00100-CV. | July 11, 2007. | Rehearing
Overruled Sept. 26, 2007.

On Appeal from the 160th Judicial District Court, Dallas
County, Texas, Trial Court Cause No. 02-01779-H, Joe
Cox, J.

**Attorneys and Law Firms**

Charles Raymond Nichols, Chet Dingler, John H. Carney,
John H. Carney & Associates, Dallas, for Appellant.

Roger D. Higgins, Jacquelyn Chandler, Thompson, Coe,
Cousins & Irons, L.L.P., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and LAGARDE.

**MEMORANDUM OPINION**

Opinion by Justice LAGARDE.[1]

**\*1** Appellant Linda Richardson sued Allstate Texas
Lloyd's (Allstate), seeking to overturn an appraisal award
entered on her insurance claim for sewer damage to her
home. After originally denying Allstate's successive
motions for summary judgment, upon reconsideration, the
trial court granted Allstate's second motion and dismissed
Richardson's claims with prejudice.

Richardson appeals the summary judgment order and the
trial court's denial of her motion to designate experts. For
reasons that follow, we conclude the summary judgment
was improperly granted and we remand this case to the
trial court for further proceedings. Because all dispositive
issues are settled in law, we issue this memorandum
opinion. TEX.R.APP. P. 47.2(a), 47.4.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2001, "a catastrophic pressurized infusion of
raw sewage spewed through every plumbing opening" in
Richardson's home in Lancaster, Texas. Richardson's
home was insured by Allstate. Immediately after her
home was flooded with sewage, Richardson contacted
Allstate to make a claim under her insurance policy.
Shortly thereafter, a dispute arose between Richardson
and Allstate concerning the amount of Richardson's
insured loss. Accordingly, Allstate sent Richardson a
written notice informing her that Allstate was invoking
the appraisal provision of her insurance policy. The terms
of that provision read, in pertinent part, as follows:

> **Appraisal.** If you and we fail to agree on the actual
> cash value, amount of loss, or cost of repair or
> replacement, either can make a written demand for
> appraisal. Each will then select a competent,
> independent appraiser and notify the other of the
> appraiser's identity within 20 days of receipt of the
> written demand. The two appraisers will choose an
> umpire. If they cannot agree upon an umpire within 15
> days, you or we may request that the choice be made by
> a judge of a district court of a judicial district where the
> loss occurred. The two appraisers will than [sic] set the
> amount of loss, stating separately the actual cash value
> and loss to each item.

> ...

> If the appraisers fail to agree, they will submit their
> differences to the umpire. An itemized decision agreed
> to by any two of these three and filed with us will set
> the amount of such loss. Such award shall be binding
> on you and us.

Allstate selected Jim Greenhaw as its independent
appraiser. Richardson selected C.R. Johnson as her
independent appraiser. The parties then agreed to use
Sally Montgomery as the umpire, and she was appointed
by the trial court in March 2002. On March 25, 2002,
Johnson and Greenhaw signed their names on a blank
form "Appraisal Award." The top of that one-page form
contains general information about the claim, including
the names of the parties, the appraisers, and the umpire.
The appraiser's signatures are in the middle of the page
beneath that general information. Directly underneath the

appraisers' signatures on the form award is a chart with three columns. The first column is titled "ITEM," and the phrase "to be determined by hygienist" is hand-written beneath that title on the first numbered line. The next two columns, titled "LOSS REPLACEMENT COST" and "LOSS ACTUAL CASH VALUE," are blank.

**\*2** According to the record, after they signed the blank form, Greenhaw and Johnson each conferred separately with the umpire during the next few months. It appears, however, that neither appraiser prepared an itemized list of the cash value and loss to each item in Richardson's house. According to Richardson, sometime prior to June 21, 2002, Johnson sent Montgomery a written estimate totaling approximately $141,000. The written estimate itself is not in the record. On June 21, 2002, Montgomery met with Greenhaw at Greenhaw's office. During that meeting, Montgomery or Greenhaw wrote "$39,650.75" on the form appraisal award under the column "LOSS REPLACEMENT COST," next to the phrase "to be determined by hygienist" previously written on the form award. Montgomery and Greenhaw then dated the award June 21, 2002 and both signed it. There is no evidence in the record that Montgomery or Greenhaw discussed this award with Johnson either before or after it was entered.

On July 16, 2002, Allstate sent Richardson a check for $27,813.95, the net amount of the award after deducting the amounts already paid to Richardson and half of the umpire's fee. The next day, Johnson and Richardson wrote to the trial court complaining about the impropriety of the appraisal award and requested a meeting with the trial judge. There is no evidence in the record about whether such meeting occurred. On October 2, 2002, Richardson cashed Allstate's check.

Thereafter, Richardson filed a petition seeking to set aside the appraisal award. In her suit against Allstate, Richardson asserted claims against Allstate for breach of contract, breach of the duty of good faith and fair dealing, negligence, negligence per se, and violation of articles 21.21 and 21.55 of the Texas Insurance Code.

Allstate moved for summary judgment twice. In its second motion for summary judgment, Allstate asserted it was entitled to summary judgment because (i) Richardson could not establish any grounds for setting aside the appraisal award, (ii) Richardson's claims were barred by the affirmative defense of accord and satisfaction, (iii) Richardson was estopped to assert a breach-of-contract claim, and (iv) Richardson's extra-contractual claims were "unsupportable, as a matter of law." The trial court denied Allstate's first and second motions; but upon Allstate's one-page motion to reconsider, the trial court

granted Allstate's second motion and dismissed Richardson's claims with prejudice.

In this appeal, Richardson asserts five main points of error, each with multiple subpoints. In her first point, Richardson argues the summary judgment order is improper because the appraisal award is "void as a matter of law," based, *inter alia,* on her contention that the appraisal procedure was not followed. In her second point, Richardson argues she is entitled to summary judgment on Allstate's affirmative defense of accord and satisfaction. In her third issue, Richardson argues she is not estopped to assert her breach of contract claim. In her fourth issue, Richardson argues genuine issues of material fact preclude summary judgment dismissing her extra-contractual claims. Finally, in her fifth point, Richardson argues the trial erred in denying her motion to designate experts.

## THE APPRAISAL PROCEDURE

### A. Applicable Law

**\*3** Because courts "seek to implement the intention of the parties as expressed in the language of a contract," it has long been the rule in Texas that "[a]ppraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable." *Providence Lloyds Ins. Co. v. Crystal City Ind. Sch. Dist.,* 877 S.W.2d 872, 875 (Tex.App.-San Antonio 1994, no writ) (citing *Scottish Union and Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630 (Tex.1888)). "Although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary judgment proceeding, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of the nonmovant." *Wells v. Am. States Preferred Ins. Co.,* 919 S.W.2d 679, 683 (Tex.App.-Dallas 1996, writ denied) (citing *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 797-98 (Tex.App.-Amarillo 1995, writ denied)). There are three circumstances in which an appraisal award may be set aside on appeal: (1) the award was made without authority, (2) the award was made as a result of fraud or accident, or (3) the award was not make in substantial compliance with the terms of the insurance policy. *Crystal City,* 877 S.W.2d at 875-76.

### B. Analysis

In her first issue, Richardson argues the award in this case should be set aside because it was not made in substantial compliance with the policy. We agree. The policy expressly requires that the appraisers each make an itemized list, "stating separately the actual cash value and loss to each item." It also requires the appraisers to submit to the umpire *only the items on which the two appraisers fail to agree.* The policy then requires at least two of these individuals must agree on the final appraisal award, and the final award must be "itemized."

The record in this case does not reflect substantial compliance with this required procedure. There is no evidence in the record the appraisers made the requisite itemized lists or that they submitted *only disputed items* to the umpire for a decision. Instead, the record contains testimony that, prior to Montgomery and Greenhaw signing the award, Johnson never saw any written estimate from Greenhaw and did not meet with Greenhaw or Montgomery to discuss the appraisers' disputed items. The record contains no itemized list prepared by either appraiser. There is testimony in the record that Johnson prepared a written estimate and forwarded it to the umpire, but that estimate is not in the record. There is no evidence that Johnson ever met with Greenhaw to discuss their itemized estimates so the appraisers could determine their differences. Moreover, the appraisal award signed by Montgomery and Greenhaw is not an "itemized decision" as required by the terms of the insurance policy. Instead, it merely reflects a lump-sum award written next to the phrase "to be determined by hygienist."

Allstate argues that a document prepared by Greenhaw several days after Greenhaw and Montgomery signed the award "comprises the itemized decision upon which the appraisal award was based." We reject this argument. A document prepared after the appraisal award was issued cannot, as a matter of common sense and law, constitute the itemized list Greenhaw was supposed to prepare

before any award was issued. Allstate also argues the award is proper because "nothing in the policy requires that the two individuals agreeing on the award delineate every item to be replaced." We agree that in a situation like this, in which raw sewage may have contaminated the entire contents of a home, it would not be necessary to list and separately appraise, for example, every item of clothing and kitchen utensil in the home. Nevertheless, we reject Allstate's contention that the appraisers were entirely relieved of their obligation to make an itemized list that at least categorized the contents of the home in a manner customary in the insurance industry.

**\*4** Under these facts, we conclude the appraisal award should be set aside because the award was not made in substantial compliance with the terms of the insurance policy. *E.g., Fisch v. Transcon. Ins. Co.,* 356 S.W.2d 186, 189-90 (Tex.Civ.App.-Houston 1962, writ ref'd n.r.e.) (setting aside appraisal award because record contained no evidence appraisers failed to agree and only submitted disagreements to umpire, as required by policy).

### CONCLUSION

We reverse the trial court's summary judgment and remand this case for further proceedings consistent with this opinion. TEX.R.APP. P. 43.2(d). The ultimate disposition of this case, including Richardson's extra-contractual claims and Allstate's affirmative defenses, will depend on the facts developed and decisions made during the further proceedings in the trial court. Accordingly, we need not address Richardson's remaining issues at this time. TEX.R.APP. P. 47.1.

Footnotes

1    The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

---

    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 7399307
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
Court of Appeals of Texas,
Dallas.

**Safeco Lloyds Insurance Company**, Appellant
v.
James & Patricia Barrentine, Appellees

No. 05–13–01011–CV | Opinion Filed December 17,
2014

On Appeal from the 193rd Judicial District Court, Dallas
County, Texas, Trial Court Cause No. DC–13–04453.
Carl Ginsberg, Judge.

**Attorneys and Law Firms**

Catherine L. Hanna, Laura Tubbs, Eric S. Peabody,
Austin, TX, for Appellant.

Robert L. Collins, Robert Edwin Ray, Houston, TX,
Kathleen Kearney, Michael Nathaniel Barbera, Paul
Wesley Black, Dallas, TX, for Appellees.
Before Justices Bridges, Lang, and Evans

**MEMORANDUM OPINION**

Opinion by Justice Bridges

**\*1** Safeco Lloyds Insurance Company appeals the trial
court's order temporarily enjoining a re-appraisal of the
Barrentines' residence in Bastrop, Texas. In three issues,
Safeco argues the trial court's injunction was an improper
collateral attack on the orders and jurisdiction of the
Bastrop court, the trial court abused its discretion by
finding the Barrentines had a probable right to recovery
under the invalidated appraisal, and the trial court erred
by refusing to dissolve the injunction. We reverse the trial
court's order granting temporary injunctive relief,
dissolve the temporary injunction, and remand for further
proceedings.

In March 2011, the Barrentines purchased a homeowner's
insurance policy from Safeco for their home in Bastrop,

Texas. In September 2011, wildfires damaged the
Barrentines' home, and they filed a claim under the
insurance policy. In May 2012, pursuant to the provisions
of the policy, Safeco demanded an appraisal of the
amount of loss suffered by the Barrentines and designated
its appraiser. The policy provided the Barrentines were
entitled to appoint their own appraiser, and the two
appraisers would agree on an umpire. If the appraisers
were unable to agree on an umpire, the policy permitted
either party to request that the choice of an umpire be
made by a judge of a district court of a judicial district
where the loss occurred.

In August 2012, Safeco filed a motion in Bastrop County
district court seeking the appointment of an umpire
because the parties' appointed appraisers were unable to
agree on an umpire. In September 2012, the Bastrop
County court appointed an umpire. On January 25, 2013,
the umpire issued a proposed appraisal award, allegedly
without considering the estimate or opinions of Safeco's
appraiser. On January 31, following a hearing, the
Bastrop County court appointed a different umpire. On
April 13, the Barrentines nonsuited the suit in Bastrop
County and re-filed suit in Dallas County district court.
Among other things, the Barrentines sought a temporary
restraining order barring the Bastrop County court from
conducting a re-appraisal of the Barrentines' property in
Bastrop. On July 3, 2013, the Dallas County district court
entered an order temporarily enjoining the re-appraisal of
the Bastrop property, and this interlocutory appeal
followed.

In its first issue, Safeco argues the Dallas County district
court erred in entering a temporary injunction.
Specifically, Safeco argues the temporary injunction
impermissibly disrupted the status quo of the underlying
case by ignoring and unwinding the orders of the Bastrop
County court, "allowing the Barrentines to collaterally
attack those orders in a court of concurrent jurisdiction."
We agree.

The purpose of a temporary injunction is to preserve the
status quo of the subject matter of a suit pending a trial on
the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198,
204 (Tex.2002); *El Tacaso, Inc. v. Jireh Star, Inc.,* 356
S.W.3d 740, 743 (Tex.App.–Dallas 2011, no pet.). A
party asking for a temporary injunction seeks
extraordinary equitable relief. *El Tacaso,* 356 S.W.3d at
743; *Wilson N. Jones Mem'l Hosp. v. Huff,* 188 S.W.3d
215, 218 (Tex.App.–Dallas 2003, pet. denied). The
extraordinary equitable remedy of an injunction must be
carefully regulated and confined to proper cases. *El
Tacaso,* 356 S.W.3d at 743. The decision to grant or deny

a temporary injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of discretion. *Butnaru,* 84 S.W.3d at 204.

**\*2** To be entitled to a temporary injunction, an applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* "Probable injury" includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *El Tacaso,* 356 S.W.3d at 743. For purposes of a temporary injunction, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.* The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law. *Butnaru,* 84 S.W.3d at 210. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *El Tacaso,* 356 S.W.3d at 744.

As a general rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other case should be abated. *Ashton Grove, L.C. v. Jackson Walker L.L.P.,* 366 S.W.3d 790, 794 (Tex.App.–Dallas, 2012, no pet.); *see In re Sims,* 88 S.W.3d 297, 302 (Tex.App.–San Antonio 2002, orig. proceeding) (citing *Wyatt v. Shaw,* 760 S.W.2d 245, 248 (Tex.1988); *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974)). In *Curtis,* the Texas Supreme Court stated:

> Any subsequent suit involving the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement. If the second court refuses to sustain a proper plea in abatement or attempts to interfere with the prior action, this court has the power to act by mandamus or other appropriate writ to settle the conflict of jurisdiction.

*Curtis,* 511 S.W.2d at 267.

Where two actions involving the same subject matter are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction should retain jurisdiction, undisturbed by the interference of another court and dispose of the controversy. *In re Sims,* 88 S.W.3d at 303. It is not required that the exact issues and all the parties be included in the first action before the second action is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues. *Id.* The test is whether there is an inherent interrelation of the subject matter in the two suits. *Id.* As long as the forum of the first action is proper, the plaintiff's choice of forum must be respected, and a defendant is "simply not at liberty to decline to do battle in the forum chosen by the plaintiff." *Id.* (quoting *Wyatt,* 760 S.W.2d at 248).

Here, the record shows that the Dallas County district court's temporary injunction, rather than preserving the status quo of the underlying suit pending a trial on the merits, usurped the role of the Bastrop County court as the court granted authority to conduct an appraisal under the terms of the parties' contract. *See Butnaru,* 84 S.W.3d at 204. The temporary injunction states the Dallas County district court's finding that "re-appraisal and its attendant delay poses a risk of irreparable harm to the Barrentines' health and to their rights in their unique real property." As a result, the temporary injunction was granted "barring a second or subsequent appraisal of the insured risk at issue in the above-captioned litigation pending [the Dallas County district court's] ruling on the summary judgment now pending in connection with the completed appraisal." Thus, rather than preserving the status quo, the temporary injunction purportedly cut off the Bastrop County court from taking further action to effectuate the appraisal the contract between the parties mandated. *See id.* The Bastrop County court, as the court with dominant jurisdiction, should have been left undisturbed to dispose of the underlying controversy. *See In re Sims,* 88 S.W.3d at 302–03. We conclude the trial court erred in entering its temporary injunction in this case. We sustain Safeco's first issue. Because of our disposition of Safeco's first issue, we need not address Safeco's remaining issues.

**\*3** We reverse the trial court's order granting temporary injunctive relief, dissolve the temporary injunction, and remand this case to the trial court for further proceedings.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**730 F.3d 466**
United States Court of Appeals,
Fifth Circuit.

TMM INVESTMENTS, LIMITED., Plaintiff–
Appellee–Cross Appellant
v.
OHIO CASUALTY INSURANCE COMPANY,
Defendant–Appellant–Cross Appellee.

No. 12–40635. | Sept. 17, 2013.

**Synopsis**
**Background:** Insured, the owner of a shopping center, brought action in state court against insurer seeking to have an appraisal award regarding hailstorm damage declared invalid. Following removal, the United States District Court for the Eastern District of Texas entered partial summary judgment for insured, set aside the appraisal award, found that insured was entitled to damages and attorney fees, and denied insurer's motion for new trial. Both parties appealed.

**Holdings:** The Court of Appeals, Prado, Circuit Judge, held that:

[1] umpire lacked authority to exclude heating, ventilation, and air-conditioning (HVAC) damages estimate from appraisal award;

[2] umpire's error in excluding HVAC damages estimate from appraisal award did not justify throwing out the entire appraisal award;

[3] appraisal panel did not exceed its authority in considering causation; and

[4] insurer fulfilled the terms of the insurance contract when it tendered the amount articulated in the appraisal award.

Reversed.

**Attorneys and Law Firms**

**\*468** Andy Tindel, Andy Tindel, Attorney & Counselor at Law, P.C., Tyler, TX, Frank M. Mason, Law Office of Frank M. Mason, Longview, TX, for Plaintiff–Appellee–Cross Appellant.

Richard Brent Cooper, Esq., Diana L. Faust, Michelle Elaine Robberson, Cooper & Scully, P.C., Dallas, TX, for Defendant–Appellant–Cross Appellee.

Appeals from the United States District Court for the Eastern District of Texas.

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

**Opinion**

EDWARD C. PRADO, Circuit Judge:

This appeal arises out of an insurance dispute between TMM Investments, Ltd. ("TMM"), which owned a shopping center, and Ohio Casualty Insurance Co. ("OCIC"), which insured the property. The property was damaged in a hailstorm, but the parties disagreed about the extent of the damage. An appraisal was conducted according to the terms of the insurance contract, but TMM was not pleased with the appraisal award and sued to have the award declared invalid. The district court set aside the appraisal award and had the case proceed to trial for liability and coverage determinations. An advisory jury assessed a damage award, and after a bench trial on the remaining issues, the district court delivered a number of findings of fact and conclusions of law, including that OCIC had breached the insurance contract and that TMM was entitled to damages, attorney's fees, and prejudgment interest. OCIC appeals the district court's order setting aside the appraisal award and the district court's findings of fact and conclusions of law. TMM appeals the district court's determination that TMM was entitled to only the actual cash value of the damage, rather than the replacement cost, and the district court's failure to award appellate attorney's fees. Because we find that the original appraisal award should not have been set aside, we reverse.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

TMM owns a shopping center ("Liberty Square") in Texarkana, Texas, which was insured by OCIC under a policy that was **\*469** in force from June 1, 2005 to June 1, 2006. According to TMM, the roof of the Liberty Square property was severely damaged when a hailstorm passed through the area on or around June 6, 2005. TMM

notified OCIC of the damage around March 30, 2007. TMM conducted an assessment of the damage and estimated it to be between $654,796 and $955,910. OCIC's engineers, on the other hand, estimated the damage to be only around $17,949. OCIC made TMM a payment offer on the basis of that estimate. TMM filed a sworn proof of loss for $679,725.68 on April 9, 2008.

Because the disparity between the parties' estimates was so great, TMM refused the payment offer and invoked the Appraisal Property Loss Conditions section of the insurance policy, which reads, in pertinent part:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

The appraisal process initially encountered a number of delays, but ultimately TMM and OCIC appointed Clifford Crites and Mitchell Butler as their respective appraisers. Crites and Butler designated Gary Boyd to serve as umpire. In March 2009, Crites, Butler, and Boyd began their appraisals. On April 13, Butler sent Boyd and Crites an e-mail that read:

> Gentlemen,
>
> While I appreciate and do not question the [ ] directions, warnings and procedures quoted below from the various expert agencies, the insurance issue remains what was damage[d] by the storm/hail and what is the reason the moisture levels are what they are. It is my position that from the roofing stand point the old aluminum coating was scuffed and displaced by the storm. The membrane was not damaged. The water infiltration was not as a result of the storm and the subsequent interior water damage resulting from that

infiltration is not covered under the policy. It is my understanding that the policy would only cover interior damage if there was not a covere[d] peril related opening(s) in the roof. I feel confident in my position on this matter but ask my client for confirmation and advi[c]e. Once I have the confirmation I will issue an estimate that cover[s] all item[s] I attribute to the storm and my recommended quantification of expense.

On July 15, citing concerns over the way the appraisal was being conducted, Crites resigned.

On July 29, 2009, Boyd issued an appraisal award, which Butler also signed, listing the "Replacement Cost" of the damage to Liberty Square as $73,014.83, and the "Actual Cash Value" of the loss as $49,632.63. The award contained line items for "Clean and coat modified [illegible] roof 188 sqs," "Repair & coat EFIS," and "Replace and paint aluminum shingles," but apparently the final figure was not inclusive of any estimate for damage to the roof membrane or to the skylights. Boyd, in drawing up the award, also chose to exclude damage to Liberty Square's heating, ventilation, and air-conditioning (HVAC) system because he did not believe the damage affected the unit's operation, even though Crites and Butler had both stated in their own appraisal awards that the HVAC system had sustained $2,794.80 **\*470** worth of damage. At some point, OCIC tendered payment for the "Actual Cash Value" listed in the award Boyd issued, less the policy deductible. After TMM notified OCIC that the award had excluded the HVAC damage, OCIC sent TMM a check for $51,427.43, the amount of the appraisal award plus the agreed-upon $2,794.80 damage to the HVAC system. Because it took issue with the appraisal process and award, TMM refused the money.

TMM then sued OCIC in state court on August 21, 2009, seeking a declaratory judgment pursuant to the Texas Declaratory Judgments Act that the appraisal process was flawed and that the appraisal award should be set aside. TMM additionally alleged that OCIC had breached the terms of the insurance contract by failing "to pay any claim loss in a timely manner when liability and loss had become reasonably clear."[1] OCIC timely removed the case to federal court on diversity grounds.[2] See 28 U.S.C. § 1332(a) (2013). The parties took discovery, and Boyd, Butler, and Crites each gave sworn depositions. In his deposition, Butler testified that he believed some of the damage to Liberty Square's skylights had been caused by projectiles from inside the building such as bullets or rocks, rather than hail.

On January 31, 2011, OCIC moved for summary judgment. TMM in turn filed a cross-motion for partial summary judgment on February 1, 2011, arguing that the

appraisal award should be set aside because the appraisers had erred in a number of ways. First, TMM argued that Boyd, the umpire, had exceeded his authority when he improperly excluded damage to Liberty Square's HVAC system. *See Fisch v. Transcon. Ins. Co.,* 356 S.W.2d 186, 189 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.) ("[T]he umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him...."). Second, TMM argued that Butler and Boyd, in considering whether it had been hail, or instead wind, improper installation, and deterioration that had caused the damage to Liberty Square's roof, had "improperly considered causation and coverage issues" in arriving at the appraisal award.[3] Third, TMM claimed that Boyd and Butler had ignored pertinent evidence in arriving at their appraisal award.

On March 25, 2011, the district court granted partial summary judgment for TMM, finding that the appraisal award was invalid and should be set aside. The district court agreed with TMM that the appraisal panel had exceeded the scope of its authority, first, because Boyd was not authorized to exclude the HVAC damage from the appraisal award, and second, because Butler and Boyd improperly considered causation and coverage issues when evaluating the damage to certain parts of the property, namely the roof membrane and skylights, citing *Wells v. Am. States Preferred Ins. Co.,* 919 S.W.2d 679, 685 (Tex.App.—Dallas 1996, writ denied). The court determined that "[t]he case [would] proceed to trial on matters of causation, liability, and damages[,]" because "[i]t **\*471** would be inappropriate to remand this matter for a new appraisal determination."

The district court empaneled an advisory jury, which eventually found that it would cost $654,795.84 "to repair and replace Liberty Square Shopping Center property damaged by the hailstorms of June 6, 2005, November 27, 2005, and/or May 16, 2006." The district court then conducted a bench trial, and issued its findings of fact and conclusions of law on November 15, 2011. The court concluded that OCIC had breached the terms of the insurance policy and that TMM was entitled to "the actual cash value of the damage: $445,261.17," or sixty-eight percent of the replacement cost. The court also awarded TMM attorney's fees, court costs, expert fees, and prejudgment interest running from October 6, 2008. OCIC moved for a new trial, but the district court denied the motion. OCIC and TMM both timely appealed.

## II. DISCUSSION

Both parties have raised a number of issues on appeal, many of which are contingent on the outcome of the dispute over the validity of the appraisal award. We hold that the appraisal award was incorrect in that it excluded damage to the HVAC unit from the award, but that the rest of the award should remain unaffected by this determination. The appraisers did not exceed their authority when they considered causation issues, and therefore the appraisal award should not have been set aside. OCIC thus was only obligated to pay the amount articulated in the award, plus the cost of repair for the HVAC system. OCIC therefore fulfilled the terms of the insurance contract when it tendered the amount articulated in the award and the cost of the repair to the HVAC system to TMM, and the district court erred when it determined OCIC had breached the insurance contract. Accordingly, the district court's award of attorney's fees and prejudgment interest to TMM is also reversed. Because we hold that there was no breach of contract, the issues raised in TMM's cross-appeal are moot.

## A. Standard of Review and Applicable Law

"We review a grant of summary judgment *de novo,* viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Pierce v. Dep't of the U.S. Air Force,* 512 F.3d 184, 186 (5th Cir.2007). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

[1] Because this case was removed to federal court on diversity grounds, Texas substantive law applies. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide." *Westlake Petrochems., L.L.C. v. United Polychem, Inc.,* 688 F.3d 232, 238 n. 5 (5th Cir.2012) (citation omitted). "In making an [*Erie* ] guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance." *Howe ex rel. Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir.2000) (citation omitted).

## B. Analysis

[2] [3] [4] [5] "Because courts 'seek to implement the intention of the parties as expressed *472 in the language of a contract,' it has long been the rule in Texas that 'appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable.'" *Richardson v. Allstate Tex. Lloyd's,* No. 05–06–00100–CV, 2007 WL 1990387, at *3 (Tex.App.—Dallas July 11, 2007, no pet.) (mem.op.) (alteration omitted) (quoting *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875 (Tex.App.—San Antonio 1994, no writ)); *see also Lundstrom v. United Servs. Auto. Ass'n,* 192 S.W.3d 78, 87 (Tex.App.—Houston [14th Dist.] 2006, pet. denied). Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award. *Franco v. Slavonic Mut. Fire Ins. Ass'n,* 154 S.W.3d 777, 786 (Tex.App.—Houston [14th Dist.] 2004, no pet.); *Continental Ins. Co. v. Guerson,* 93 S.W.2d 591, 594 (Tex.Civ.App.—San Antonio 1936, writ dism'd). An appraisal award will be upheld unless at least one of three circumstances exists: (1) the award was made without authority; (2) the award was the result of fraud, accident, or mistake; or (3) the award was not made in substantial compliance with the terms of the contract. *Crystal City,* 877 S.W.2d at 875–76. "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Lundstrom,* 192 S.W.3d at 87.

### 1. Exclusion of the HVAC system damages

[6] The district court was correct in determining that the umpire had no authority to exclude the HVAC damages estimate from the appraisal award. Texas courts have clearly held that unless there is a discrepancy between the findings of the two appraisers appointed by the parties, there is no duty for the umpire to perform. *See Fisch,* 356 S.W.2d at 189–90 ("Since the umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him, we are of the opinion that the award, which was signed by only one appraiser and the umpire who had no authority to act, is invalid."); *Crystal City,* 877 S.W.2d at 876 ("[A]n umpire, appointed to decide on matters of difference only, has no authority to pass on matters concerning which there was no difference between the appraisers." (quoting *Fisch,* 356 S.W.2d at 190)). Here, no party disputes that Butler and Crites agreed as to how much damage the HVAC system sustained. Boyd was thus without authority to strike it from the appraisal award.

[7] However, Boyd's error does not justify, on its own, throwing out the entire appraisal award. The district court had no occasion to decide the issue of what should be done in the event the HVAC damages omission constituted the only error on the part of the appraisal panel, because it also found that the appraisal panel's consideration of causation rendered the appraisal invalid in its entirety. Because we find that the award is otherwise unobjectionable, *see infra* Part II.B. *2.,* we must determine if, given Boyd's error, the "valid" portion of the award should stand. While Texas courts have never addressed the issue, the related case law suggests that minor mistakes that do not taint the entire award should not frustrate the parties' intent to be bound by the appraisal provision of their contract.

In *Crystal City,* the trial court set aside an appraisal award because a section in the award listing damages agreed upon by the appraisers had been mislabeled. 877 S.W.2d at 876–77. The court of appeals, while acknowledging the error, nonetheless reinstated the award and noted that "[i]f the [umpire and the two other appraisers] *473 are of one mind, or if any two of them are in accord as to value and loss, the appraisal award is a finality." *Id.* at 877–78 (citation omitted). A federal district court case interpreting Texas law also suggests that the acceptable portions of the award should continue to bind the parties. In *MLCSV10 v. Stateside Enterprises, Inc.,* the court explained, "To the extent the appraisal award implicitly determined that the ductwork damage was not covered ..., the plaintiffs have provided a sufficient basis for setting aside that part of the appraisal award. There is, however, no basis for setting aside the entire award or any other part of it." 866 F.Supp.2d 691, 707–08 (S.D.Tex.2012). The court went on to say in a footnote, "[A] finding that appraisers were biased would require setting aside the entire award. But as all parties admitted ..., there is no precedent that compels setting aside an entire appraisal award based on a finding that one part of the award was incomplete or implicitly determined a coverage issue." *Id.* at 708 n. 6. Here, there is no contention that Boyd lacked authority to speak on the numerous damage items that Butler and Crites disagreed about. We do not believe the omission of the HVAC damage from the award justifies ignoring the intent of the parties to have damages issues submitted to and decided by an appraisal panel. *Cf. State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 895 (Tex.2009) ("Like any other contractual provision, appraisal clauses should be enforced."). We therefore uphold the remainder of the award.[4]

### 2. Whether the appraisal panel exceeded its authority in considering causation

[8] The district court, in its order setting aside the appraisal award, concluded that the appraisal panel had exceeded its authority in "attribut[ing] the roof membrane damage to improper installation and the skylight damage to rocks thrown from below." The district court relied primarily on a Texas Court of Appeals case, *Wells v. American States Preferred Insurance Co.,* 919 S.W.2d 679 (Tex.App.—Dallas 1996, writ denied), in coming to that conclusion. According to the district court, *Wells* "held that the appraisal panel's responsibility is simply to determine the value of property damage and that 'questions of what caused or did not cause the loss are questions to be decided by the court.' " (quoting *Wells,* 919 S.W.2d at 685). In *Wells,* the appraisal panel unanimously concluded that the claimant's house had suffered damage "due to foundation movement in the amount of $22,875.94[,]" but that the amount of damage attributable to a plumbing leak that had allegedly created the foundation movement—which the policy would have covered—was zero. 919 S.W.2d at 682. The trial court approved the appraisal award, but the appeals court reversed, concluding that "the appraisal section of [the policy] establishes an appraisal procedure to determine the dollar amount of the insured's loss only, and that it does not authorize or empower the appraisal panel created thereunder to determine what caused or did not cause that loss." *Id.* at 685. The appraisal award was therefore made without authority, and the court remanded the case to the trial court for a new trial. *Id.* at 686–87.

OCIC argues, however, that the district court did not take full account of a more recent Texas Supreme Court case that modifies the scheme established by *Wells.* That case, *State Farm Lloyds v. Johnson,* does indeed provide the controlling law on **\*474** the issue of the scope of the appraisal panel's authority. 290 S.W.3d 886 (Tex.2009). In *Johnson,* the claimant alleged that her roof had been damaged in a hailstorm and filed a claim with her insurance company. *Id.* at 887. When the insurance company provided a much lower damage estimate than her claim requested, the claimant invoked the policy's appraisal provision. *Id.* at 887–88. The insurance company, however, argued that appraisal should not be required because the panel would necessarily have to decide issues of causation, not "amount of loss." *Id.* at 888. The claimant then filed suit seeking a declaratory judgment compelling appraisal. *Id.*

The Texas Supreme Court began by repeating the rule, established in earlier case law, that "*damage* questions [are] for appraisers and *liability* questions [are] for the courts[.]" *Id.* at 889. It quickly acknowledged, though, that "[t]he line between liability and damage questions may not always be clear [,]" *id.* at 890, and that

"[c]ausation relates to both liability and damages because it is the connection between them[,]" *id.* at 891–92.

The court discussed both *Wells* and *Lundstrom v. United Services Automobile Ass'n,* a case somewhat at odds with *Wells,* in which the appeals court upheld an appraisal award that considered damages from an "initial wetting" but not damages from mold. *Id.* at 892; *see Lundstrom,* 192 S.W.3d at 89 ("The cases cited in *Wells* stand for the narrower proposition that appraisers exceed their authority when they engage in making the legal determination of what is or is not a covered loss based on their determination of what caused the loss or a portion of it."). The *Johnson* court reconciled these cases as follows:

> Appraisers can decide the cost of repairs in [the context of cases like *Wells* ], but if they can also decide causation there would be no liability questions left for the courts. By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability.... In [the context of cases like *Lundstrom* ], courts can decide whether water or mold damage is covered, but if they can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers. The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition.... If State Farm is correct that appraisers can never allocate damages between covered and excluded perils [such as wear and tear], then appraisals can never assess hail damage unless a roof is brand new.

*Johnson,* 290 S.W.3d at 892–93. The court concluded that appraisal should be compelled, noting that "[a]ny appraisal necessarily includes some causation element, because settling the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* at 893.

[9] At the very least, *Johnson* arguably establishes that appraisal panels are within their rights when they consider whether damage was caused by a particular event or was instead the result of non-covered pre-existing perils like

wear and tear. Indeed, this is the way many subsequent cases have interpreted *Johnson's* guidance. *See, e.g., MLCSV10,* 866 F.Supp.2d at 705 ("Lochridge's causation evaluation involved no more than 'separating loss due to a covered event from a property's pre-existing condition.' " (quoting *Johnson,* 290 S.W.3d at 892)); *Essex Ins. Co. v. Helton,* 4:10–cv–2229, at *2 (S.D.Tex. Jan. 24, 2012) (slip op.) ("However, where there are different types of damage to different items of property, or **\*475** where the property is not new and has suffered wear and tear, appraisers may have to decide causation in order to decide damages."). To the extent the appraisers merely distinguished damage caused by pre-existing conditions from damage caused by the storm, they were acting within their authority.

The district court appears to have concluded that *Johnson* required setting aside the appraisal award because "TMM contends the storm damaged the skylights, but [OCIC] contends rocks caused the damage.... TMM contends the storm damaged the roof membrane, but [OCIC] contends the roof membrane was damaged due to improper installation. The parties have alleged different causes for the same injuries." There are two principal problems with this conclusion. First, it is not entirely clear from the record what reasons Butler or Boyd had for excluding certain items from the award. TMM itself acknowledges that multiple causes of damage, including wear and tear, have been alleged. Its summary judgment motion stated, "Here, the moisture levels were allegedly caused by hail storm, wind storm and/or windstorm, improper installation and deterioration." If that is the case, *Johnson* appears to foreclose setting aside the appraisal award—it was entirely appropriate for the appraisers to consider whether damage was caused by these pre-existing conditions.

[10] Second, it appears the district court misapplied the law even if its statements about the reasons for Butler's and Boyd's exclusions are accurate. *Johnson* stated, "[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts.... By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Johnson,* 290 S.W.3d at 892. Putting aside the question of why this distinction should matter, even according to the facts as the district court found them, this

is a case of the second variety because damage is alleged to have occurred to the roof membrane *and* the skylights. Additionally, the closeness of the facts in *Johnson* to those at bar—both involved roofs damaged in part by hailstorms—militates in favor of arriving at a holding similar to the one arrived at by the *Johnson* court. Coupled with the requirement that we indulge "every reasonable presumption to sustain an appraisal award," *Johnson* appears to compel reversal of the district court's order setting aside the award in this case.

### 3. Claims related to breach of contract

[11] Because the appraisal award was not invalid, when OCIC tendered the amount articulated in the appraisal award plus an amount for the damage to the HVAC system, it fulfilled the terms of the insurance contract. *See Probus Props. v. Kirby,* 200 S.W.3d 258, 262 (Tex.App.—Dallas 2006, pet. ref'd) (explaining that tendering a check "suspends the obligation *until dishonor of the check or until it is paid or certified* " (emphasis added) (internal quotation marks omitted)). Because TMM thus did not bring a "valid claim" for breach of contract, it should not have been awarded attorney's fees, and we reverse the district court's determination to that effect. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (2013). Similarly, because TMM was not a "prevailing party" in its breach of contract claim, we reverse the district court's award of costs to TMM. *See* Fed.R.Civ.P. 54(d); *Carter v. Gen. Motors Corp.,* 983 F.2d 40, 43 (5th Cir.1993) (explaining that "federal procedural law ordinarily governs the award of costs in diversity cases"). Because the claims in TMM's cross-appeal are uniformly related to the breach of contract found by the district court, we dismiss these claims as moot.

### *476 III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision and REMAND the case so that the district court may reinstate the appraisal award, including the HVAC damage amount of $2794.80.

---

Footnotes

1    The complaint also contained claims for breach of fiduciary duty and violations of the Texas insurance code but TMM later
     agreed to reserve those issues for a separate trial, to be held once causation, damages, and coverage issues had been resolved.

2    The original complaint also included Boyd and Butler, who are Texas domiciliaries, as defendants, but TMM voluntarily

dismissed all claims against them pursuant to a settlement agreement, creating complete diversity between the parties.

3      As with similar insurance policies, TMM's policy did not cover wear and tear.

4      The appraisal award amount *and* the HVAC damage amount were tendered to TMM, but it appears TMM never cashed the check. If this is the case, OCIC is obviously required to furnish that amount to TMM again.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

919 S.W.2d 679
Court of Appeals of Texas,
Dallas.

Donald WELLS and Emma Wells, Appellants,
v.
AMERICAN STATES PREFERRED INSURANCE
COMPANY, Appellee.

No. 05–95–00200–CV. | Jan. 29, 1996.

Insurer sought declaration that it had properly invoked appraisal provisions of homeowners' policy, following insureds' claim for loss from foundation movement allegedly caused by plumbing leak. After appraisers determined that insureds' loss was not covered, the 199th Judicial District Court, Collin County, John R. Roach, J., granted summary judgment to insurer, and insureds appealed. The Court of Appeals, Whitham, Retired Justice, sitting by assignment, held that policy's appraisal clause authorized appraisers to determine amount of loss only, not what caused or did not cause loss.

Reversed and remanded.

**\*680** On Appeal from the 199th Judicial District Court Collin County; Trial Court Cause No. 199–1235–92.

**Attorneys and Law Firms**

Thomas M. Richards, Smith Merrifield & Richards, L.L.P., Dallas, Dixon Jace Reynolds, Bush, Fulton, Hurlbut & Morrison, P.C., Arlington, Gayle E. Oler, Dallas, for Appellants.

Wesley W. Chambers, Gollaher & Chambers, Dallas, for Appellee.

Before LAGARDE, BARBER and WHITHAM[1], JJ.

**OPINION**

WHITHAM (Retired), Justice.

Appellants, Donald Wells and wife, Emma Wells, appeal from a summary judgment in favor of appellee, American States Preferred Insurance Company. The principal issues involve the appraisal provision of the Texas Homeowner's Policy and the interpretation and consequences of the appraisal made pursuant to that insurance policy. The issues focus upon the question of whether the appraisers are authorized and empowered to determine what caused or did not cause the loss claimed. Here, the policy insured the dwelling against foundation and structural **\*681** damage due to foundation movement caused by leaks in the plumbing system. The Wellses assert the dwelling suffered foundation and structural damage caused by a plumbing leak. The Wellses made a claim on the policy. American States denied the claim, demanded an appraisal, and then sued to require an appraisal. The Wellses counterclaimed on the policy and on other causes of action. The trial court abated the counterclaim until an appraisal was done. The two appraisers and an umpire determined that the resulting damage to the dwelling due to foundation movement was $22,875.94. However, one appraiser and the umpire also determined that the plumbing leak caused no loss; *i.e.,* that the plumbing leak did not cause the damage. Based on this latter determination, the trial court entered a take-nothing summary judgment against the Wellses. Because we conclude that the appraisal section of the policy, as a matter of law, did not authorize the appraiser and umpire to determine that the plumbing leak did not cause the damage and loss to the Wellses' property, we conclude that the trial court erred in entering a take-nothing judgment against the Wellses. Accordingly, we reverse and remand.

**Factual Background**

Donald and Emma Wells own a home in Wylie, Texas. American States insured the home under a Texas Homeowner's Policy. The policy contained the following provision for determining the amount of loss by appraisal at request of either party:

> **7. Appraisal.** If you and we fail to agree on the actual cash value, amount of loss or the cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraiser will also set:

a. the full replacement cost of the dwelling.

b. the full replacement cost of any other building upon which loss is claimed.

c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their difference to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

When their home sustained damage due to foundation movement, the Wellses investigated. They discovered a leak in the plumbing system underneath the foundation. A structural engineer who examined the property reported that the plumbing leak caused the foundation movement. On April 20, 1992, the Wellses made a claim on the policy. An adjuster from American States inspected the property and stated that the sewer-line leak did not cause the damage. The adjuster included that statement on a written non-waiver agreement dated May 7, 1992, which Donald Wells signed only after noting on the writing his disagreement with the statement. American States then had its own engineer examine the property, who reported that the plumbing leak did not cause the foundation movement, conflicting with the report from the Wellses' engineer as to causation of the loss.

On July 20, 1992, American States again denied the Wellses' claim and at the same time demanded an appraisal under the "Appraisal" section quoted above, designating John O. Lochridge, Jr. as its appraiser. American States then sued for a declaratory judgment that it had properly invoked the appraisal provisions of the policy. American States also asked for an order requiring the Wellses to submit their claim to appraisal. The Wellses answered and filed a counterclaim on the policy and on other causes of **\*682** action. American States responded with a first supplemental petition containing a plea that the Wellses' counterclaims be abated until they participated in an appraisal and the appraisal was completed. The trial court sustained the plea in abatement. Thereafter, the Wellses designated Rob Brown as their appraiser, and the two appraisers designated Mitchell L. Butler as umpire.

Both appraisers and the umpire unanimously determined that the Wellses' home had resulting damage to the dwelling due to foundation movement in the amount of

$22,875.94. However, appraiser Lochridge and umpire Butler determined that damage to the dwelling related to the plumbing leak was zero.

American States then filed its motion for summary judgment based on the appraisal determination that the plumbing leak did not cause the loss claimed. The Wellses filed their own motion for partial summary judgment based on the unanimous determination of the appraisers and umpire that the amount of loss to the dwelling resulting from foundation movement was $22,875.94. American States responded to the Wellses' motion, and the Wellses responded to American States's motion. The trial court granted American States's motion, denied the Wellses' motion, and rendered a take-nothing summary judgment against the Wellses.

The trial court's summary judgment contains this language:

> The court further finds that [American States] is entitled to a Declaratory Judgment maturing the appraisal award rendered herein, into a final judgment as requested and prayed for in [American States's] Summary Judgment and thus, it is further ORDERED, ADJUDGED and DECREED that Declaratory Judgment be, and the same hereby is, rendered in favor of [American States] and against [the Wellses], that the appraisal award rendered on or about June 24, 1994 is binding on and enforceable against [the Wellses], that said appraisal award's finding that the amount of loss is zero be matured into final judgment, and judgment is hereby RENDERED that [American States] is not liable to [the Wellses] on [the Wellses'] insurance claim made the basis of this suit.

## Summary Judgment Principles

[1] [2] [3] [4] [5] We begin by repeating well-known rules governing the summary judgment practice. The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and

untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 415–16, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas, they are as follows:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

[6] Moreover, when the counterclaim defendant is the movant, as in the present case, we must be alert to additional rules controlling summary judgment practice. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a counterclaim plaintiff's cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the counterclaim plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Therefore, a counterclaim **\*683** defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of counterclaim plaintiff's cause of action does not exist. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975).

[7] Furthermore, summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. *Elam v. Yale Clinic,* 783 S.W.2d 638, 641 (Tex.App.—Houston [14th Dist.] 1989, no writ). Unlike an appeal following a trial on the merits, when reviewing a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. *Elam,* 783 S.W.2d at 641. With these principles in mind, we turn to consider the Wellses' first point of error in which the Wellses contend that the trial court erred in granting American States's motion for summary judgment.

## The Appraisal Award

[8] In the present case, the Wellses insist that the appraisal section of the policy, as a matter of law, did not authorize the appraisers and umpire to determine that the plumbing leak did not cause the loss to the Wellses' property. Thus, we reach the question whether the appraisal section of the policy, invoked by American States, authorized and empowered the appraisers to determine what caused or did not cause the loss claimed. It is obvious that two of the three designated persons named to make the appraisal determined that the Wellses' amount of loss *also* included authority to determine that the loss was not caused by the undisputed plumbing leak. We reach this conclusion because the "Appraisal Award" recites:

> Damage to dwelling related to plumbing leak.
>
> Loss Replacement Cost –0–
>
> Loss Actual Cash Value –0–

· · · · ·

> CLARIFICATIONS IF ANY: Resulting damage to dwelling due to foundation movement $22,875.94

We note the appraisal award's language "Damage to dwelling related to plumbing leak," and followed by two loss figures of "0." We interpret this language as a determination that the "plumbing leak" was not the cause of any damage, hence the two "Loss" findings of "–0–." We reach the interpretation because the appraisal award proceeds to determine the *cause* of damage to the dwelling to be due to "foundation movement." Taken in the context of this litigation, we treat "Damage to dwelling" and "Loss" to be one and the same. Therefore, for the reasons that follow, we conclude that the appraisal section of the policy invoked by American States does not authorize and empower the appraisers to determine what caused or did not cause the loss claimed.

## Helpful Texas Cases

[9] [10] [11] [12] In reaching this conclusion, we find language in certain Texas cases to be instructive. An appraisal award made pursuant to the provisions of an insurance

contract is binding and enforceable. *Barnes v. Western Alliance Ins. Co.,* 844 S.W.2d 264, 267 (Tex.App.—Fort Worth 1992, writ dism'd by agr.). Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.,* 877 S.W.2d 872, 875 (Tex.App.—San Antonio 1994, no writ). The effect of an appraisal award is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Scottish Union & Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630, 631 (1888); *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 797–98 (Tex.App.—Amarillo 1995, writ denied). Although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary judgment proceeding, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a nonmovant. *Hennessey,* 895 S.W.2d at 798.

The parties agree that no reported Texas case has decided the issue of whether the authority of appraisers under the appraisal **\*684** section of an insurance policy is limited to determination of only the *amount* of loss as distinguished from determining *cause* of loss, and *coverage* and *liability* for the loss. We conclude, however, that the weight of authority from other jurisdictions discussing the issue follows the rule that appraisers have no power or authority to determine questions of causation, coverage, or liability, which is consistent with the Texas courts' discussion of the effect of the appraisal award. *See Scottish Union,* 8 S.W. at 631; *Hennessey,* 895 S.W.2d at 798.

### Applicable Holdings of Other Jurisdictions

We have considered the holdings of other jurisdictions interpreting appraisal provisions containing substantially similar language to that contained in the policy at issue in this case in concluding that appraisers have no power to determine the cause of the damages. Their power is limited to the function of determining the money value of the property damage. *Munn v. National Fire Ins. Co. of Hartford,* 237 Miss. 641, 115 So.2d 54, 55, 58 (1959) ("The chancellor should have judicially determined what force caused the walls to lean and twist[;] [t]hat was not a question for the appraisers to decide. If that damage was the result of the storm, then the appraisers should have

been directed to estimate the value of the loss occasioned by the walls being damaged."); *see also Jefferson Ins. Co. of N.Y. v. Superior Court,* 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880, 883 (1970) (the function of the appraisers is to determine the amount of damage resulting to various items submitted for their consideration, and not to resolve questions of coverage and interpret provisions of the policy, which exceed the scope of their powers); *Appalachian Ins. Co. v. Rivcom Corp.,* 130 Cal.App.3d 818, 182 Cal.Rptr. 11, 16 (Ct.App. 2d Dist.1982) (the appraisal clause provides the device to be utilized to determine the amount of loss if the parties cannot agree on the amount; once the amount of the loss has been fixed, whether by agreement between insurer and insured or by appraisal procedure, if the insurer refuses to pay such amount, the insured is not without jury trial rights); *Lewis Food Co. v. Fireman's Fund Ins. Co.,* 207 Cal.App.2d 515, 24 Cal.Rptr. 557, 561 (Ct.App. 2d Dist.1962) (the appraisers' function under the policy is to determine the amount of damage resulting to various items submitted for their consideration; it is certainly not their function to resolve questions of coverage and interpret provisions of the policy); *Oakes v. Franklin Fire Ins. Co.,* 122 Me. 361, 120 A. 53, 54 (1923) (the right of the insured to recover the loss is not submitted to the referees, only the amount of the damages); *Wausau Ins. Co. v. Herbert Halperin Dist. Corp.,* 664 F.Supp. 987, 989 (D.Md.1987) (where insurer does not factually dispute the consequences of the occurrence, but contests the issue of legal "causation" on the basis that the policy exclusions apply so as to limit the scope of coverage, the issue is one of contract interpretation, and is within the competence of the court, not an appraiser, to resolve); *Hogadone v. Grange Mut. Fire Ins. Co.,* 133 Mich. 339, 94 N.W. 1045, 1047 (1903) (the policy provision relates only to cases of disagreement as to the amount of valuation, in whole or in part, and not whether the claim itself is valid); *Denton v. Farmers' Mut. Fire Ins. Co.,* 120 Mich. 690, 79 N.W. 929, 930 (1899) (the sections of the charter do not give board of auditors the power to pass upon questions of liability, but contemplate a valid loss, and confer upon the auditors only the power to fix the amount); *St. Paul Fire & Marine Ins. Co. v. Wright,* 97 Nev. 308, 629 P.2d 1202, 1203 (1981) (contrary to arbitration, where the arbitrator is frequently given broad powers, appraisers generally have more limited powers; an appraiser's power generally does not encompass the disposition of the entire controversy between the parties, but extends merely to the resolution of the specific issues of actual cash value and the amount of loss); *In re Delmar Box Co.,* 309 N.Y. 60, 127 N.E.2d 808, 811 (1955) (agreement for appraisal extends merely to the resolution of specific losses of actual cash value and the amount of loss, with all other issues being reserved for determination

in a plenary action); *United Boat Serv. Corp. v. Fulton Fire Ins. Co.,* 137 N.Y.S.2d 670, 671 (Sup.Ct.1955) (where appraisers made a determination of a question of liability, they exceeded the powers conferred **\*685** upon them, and summary judgment is improper); *Kentner v. Gulf Ins. Co.,* 66 Or.App. 15, 673 P.2d 1354, 1356 (1983) (statutory policy language establishes an appraisal procedure to determine the amount of the insured's loss; the procedure does not apply to the determination of the insurer's responsibility).

### Application of the Law

With the above cases in mind, we look to the first sentence of the appraisal clause at issue in the present case. We quote:

> If you and we fail to agree on the *actual cash value, amount of loss,* or the *cost of repair or replacement,* either can make a written demand for appraisal.

(Emphasis added.) Hence, we must conclude that the appraisal clause at issue pertains to a dispute over the amount of money involved in the controversy. Indeed, we read the phrases "actual cash value," "amount of loss," and "cost of repair or replacement" as triggering the demand for appraisal. It cannot be doubted that these are "dollar" controversies. Thus, nowhere do we read a "causation dispute" or a "liability dispute" as the means or manner by which the demand for appraisal can be made operative.

[13] [14] We conclude that the authority of the appraisal panel in the present case was limited to determining only the amount of loss. Therefore, we conclude further that the appraisal section of the policy, as a matter of law, did not authorize and empower the appraisal panel to determine that the plumbing leak did not cause the loss to the Wellses' property. It follows, and we so hold, that the appraisal section of the Texas Homeowner's Policy quoted above establishes an appraisal procedure to determine the dollar amount of the insured's loss only, and that it does not authorize or empower the appraisal panel created thereunder to determine what caused or did not cause that loss. Indeed, we hold that, absent an agreement to the contrary, questions of what caused or did not cause the loss are questions to be decided by the court. Moreover, we hold that participation by the insured in the appraisal process does not constitute agreement by the insured to authorize and empower the appraisal panel to determine questions of what caused or did not cause the loss.

[15] In the present case, we conclude that the one appraiser and the umpire exceeded their authority when they determined that the plumbing leak did not cause the Wellses' loss. It follows, and we so hold, that the trial court erred in finding that American States is entitled to a declaratory summary judgment maturing the appraisal award in the present case and entering a take-nothing summary judgment against the Wellses based upon that determination. Indeed, an appraiser's acts in excess of the authority conferred upon him by the appraisal agreement are not binding on the parties. *Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 190 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Instead, the effect of an appraisal award is to estop one party, here the plaintiff, from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Scottish Union,* 8 S.W. at 631; *Hennessey,* 895 S.W.2d at 797–98.

In the present case, we note that nowhere in the standard form for submission to appraisal is any power vested in or conferred upon the appraisers to determine the cause of the loss, the value of which they are to appraise. *See Munn,* 115 So.2d at 56. Therefore, we hold, as did the Supreme Court of Mississippi, that the appraisers are not arbitrators. They have no power to arbitrate disputes between the property owner and the insurance company, other than to value the property damage. *Munn,* 115 So.2d at 56. Indeed, the function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy. *St. Paul Fire & Marine Ins. Co.,* 629 P.2d at 1203. Consequently, we conclude that the trial court erred in granting American States's motion for summary judgment. We reach this conclusion because the appraisal section of the policy, as a matter of law, did not authorize the appraisers and umpire to determine that the plumbing leak did not **\*686** cause the loss to the Wellses' property. We sustain the Wellses' first point of error.

### The Wellses' Partial Motion for Summary Judgment

In their second point of error, the Wellses contend that the trial court erred in overruling their partial motion for summary judgment. The Wellses advance three principal arguments. First, the Wellses argue that the appraisal panel has no authority to determine the cause of the loss, only the amount of the loss. We have held in disposition

of the Wellses' first point of error that the appraisal panel has no authority to determine the cause of the loss, only the amount of the loss. Thus, we agree with the Wellses' first argument.

While we agree with the Wellses' first principal argument, we are unable to extend that agreement to the thrust of the Wellses' second principal argument. In that second argument, the Wellses reason that the $22,875.94 damage figure stated in the appraisal award under the language:

> CLARIFICATIONS IF ANY: Resulting damage to dwelling due to *foundation movement* $22,875.94

(Emphasis ours.) becomes the damage award for the previously mentioned "plumbing leak," instead of the figure "–0–" (zero). Hence, the Wellses argue that the appraisal panel ascertained the amount of damages of $22,875.94 as resulting from the plumbing leak. We disagree. We note that the damage amount of $22,875.94 results from "foundation movement."

"Foundation movement" appears to be excluded by the policy:

> We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of *foundation,* walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

(Emphasis ours). Consequently, we decline to read the appraisal award, as the Wellses would have us do, to say that a plumbing leak caused foundation damage to their dwelling in the amount of $22,875.94. We decline to do so because the appraisal panel, on the face of its award, separated the damage related to plumbing leak from damage due to foundation movement. For these reasons, we disagree with the Wellses' second principal argument under their second point of error.

Lastly, we dispose of the Wellses' third principal argument under their second point of error. Here, the Wellses insist that they are entitled to our determination that they recover their reasonable and necessary

attorney's fees incurred in this litigation, the amount thereof to be determined at trial. In light of our disposition of this appeal, all issues in dispute between the parties will be before the trial court on remand for new trial. Therefore, we conclude that we have no basis at this time to determine that the Wellses recover their reasonable and necessary attorney's fees incurred in this litigation. Hence, we decline to decide at this time the liability of American States for the Wellses' reasonable and necessary attorney's fees, if any, incurred in this litigation. For the reasons expressed above, we conclude that the trial court did not err in overruling the Wellses' partial motion for summary judgment. We overrule the Wellses' second point of error.

### Abatement and Trial On The Merits

[16] In their third point of error, the Wellses contend that the trial court erred in abating the Wellses' counterclaim until the Wellses participated in the appraisal demanded by American States, because the Wellses were not obligated to comply with the appraisal provisions of the policy as a condition precedent to filing their counterclaim against American States. We conclude that we need not address this point of error. We reach this conclusion because the issue is now moot. We hold that the Wellses have now complied with any obligations imposed by the appraisal provisions and that their counterclaim is now properly before the court on remand. Furthermore, the time has arrived to try this case on its merits in the trial court. The appraisal has been made. The fact that the resulting appraisal is defective is of no moment; the trial court is directed to try all issues in dispute both as to liability and as to damages. The Wellses **\*687** are not required to again participate involuntarily in yet another appraisal. The Wellses have done all that was required of them as an asserted condition precedent to filing their counterclaim. We decline to penalize the Wellses by further delay when they have suffered a defective appraisal process through no fault of their own. We overrule for mootness the third point of error.

We reverse the trial court's judgment and remand the case to the trial court for trial on the merits.

Footnotes

[1]     The Honorable Warren Whitham, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

529 S.W.2d 125
Court of Civil Appeals of Texas,
San Antonio.

Earl J. WENTWORTH, Appellant,
v.
Albert MEDELLIN et ux., Appellees.

No. 15446. | Oct. 29, 1975.

Purchaser of land under executory contract sought declaratory judgment that contract was in full force and effect and that vendor under such contract had to accept offered payment. The 45th District Court, Bexar County, Robert R. Murray, J., granted petition for declaratory judgment, and vendor appealed. The Court of Civil Appeals, Klingeman, J., held that statute, which set forth requirements for giving notice to purchaser in default prior to the forfeiture of interest and acceleration of indebtedness under an executory contract for conveyance of land used or to be used as purchaser's residence, did not apply to situation in which vendor, under terms of executory contract for the sale of unimproved land, elected to rescind such contract and take possession of land because of purchasers' default, and that even if such statute were applicable, there was substantial compliance with terms of statute.

Judgment reversed and rendered.

Cadena, J., filed a concurring opinion.

**Attorneys and Law Firms**

**\*126** Jeffrey Wentworth, San Antonio, for appellant.

Marvin Miller, San Antonio, for appellees.

**Opinion**

KLINGEMAN, Justice.

Defendant, Earl J. Wentworth, appeals from a declaratory judgment that an executory contract of sale between plaintiff, Albert Medellin and wife, Rosie S. Medellin, dated November 5, 1971,[1] is in full force and effect, ordering defendant to accept all payments of principal and interest due under said contract in accordance with its terms and provisions, and declaring that said contract is in force and effect because defendant did not follow the

provisions of Article 1301b, Tex.Rev.Civ.Stat.Ann. (Supp.1975), in attempting to cancel said contract.

Defendant contends that the trial court erred in granting plaintiffs' petition for declaratory judgment based on the applicability of Article 1301b, Supra, to the facts in this case.

The applicable part of Article 1301b, Supra, provides:
'Section 1. A forfeiture of the interest and the acceleration of the indebtedness of a purchaser in default under an executory contract for conveyance of real property used or to be used as the purchaser's residence may be enforced only after notice of seller's intentions to enforce the forfeiture and acceleration has been given to the purchaser and only after the expiration of the periods provided below: . . .

(b) When the purchaser has paid 10% But less than 20% Of the purchase price, 30 days from the date notice is given.

(d) Notice must be by mail or other writing. If by mail, it must be registered or certified and shall be considered given at the time mailed to his residence or place of business, and notification by other writing shall be considered given at the time delivered to the purchaser at his residence or place of business.

(e) Such notice shall be conspicuously set out; shall be printed in 10 point bold face type or upper case typewritten letter; and shall include the following:

**NOTICE**

YOU ARE LATE IN MARKING YOUR PAYMENT UNDER THE CONTRACT TO BUY YOUR HOME. UNLESS YOU MAKE THE PAYMENT BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR HOME AND TO KEEP ALL PAYMENTS YOU HAVE MADE TO DATE.
Sec. 2. A purchaser in default under an executory contract for the conveyance of real property used or to be used as the purchaser's residence, may at any time prior to expiration of the period provided **\*127** for in Section 1, avoid the forfeiture of his interest and the acceleration of his indebtedness by complying with the terms of the contract up to the date of compliance notwithstanding any agreement to the contrary.'

[1] The basic question before us is whether the trial court erred in its application of Article 1301b, Supra, to the contract in question. Defendant's appeal is founded upon three basic premises: (1) the property involved in the executory contract is not the home of the buyer but is unimproved real estate, and the statute is not applicable; (2) the statute, by its terms, is restricted to cases involving a forfeiture of interest and acceleration of indebtedness of a purchaser in default, and this case does not involve a forfeiture and acceleration of the indebtedness, but rather a rescission of the contract; and (3) if the statute is applicable, there has been substantial compliance with the terms and provisions of the statute.

The record discloses that, on November 5, 1971, plaintiffs and defendant entered into an executory contract for the sale and purchase of certain unimproved real estate in Bexar County with the agreed purchase price of $3,000.00 to be paid in monthly payments. Plaintiffs, at such time and continuously thereafter, have lived in a residence in San Antonio, Texas, rented from plaintiffs' parents. According to the contract, if the monthly payments are more than 30 days delinquent, defendant has the option to accelerate payments and declare the entire purchase price due, or to rescind the contract and take possession of the property. Plaintiffs, on a number of occasions, have been in arrears in payment of monthly payments, and, on several occasions, defendant has sent them notices of such delinquency. On September 18, 1973, defendant mailed plaintiffs a letter stating that they were several months delinquent in their payments and notified them of his intention to cancel the contract if plaintiffs were not current in 30 days. This letter was neither registered or certified but it is undisputed that plaintiffs received such letter. On October 29, 1973, more than 30 days after the letter above, defendant mailed a certified letter to plaintiffs, which was received by them, stating that, since the required delinquent payments had not been made, the contract was cancelled and revoked. At the time of such rescission, a little more than 10% But less than 20% Of the purchase price had been paid by plaintiffs to defendant. On January 15, 1974, plaintiffs attempted to pay $211.14 on the delinquent monthly payments, but defendant refused to accept such payment or any payments thereafter. On February 14, 1974, defendant, by check, mailed to plaintiffs' attorney, returned all payments made under such contract. Plaintiffs testified that they planned to build a home on the land when Mr. Medellin retired. There is nothing in the record to show when Mr. Medellin planned to retire. This suit was filed by plaintiffs on September 25, 1974.

In support of his contention that the statute does not apply to unimproved property, defendant argues that a reading of the entire statute, particularly the notice provision therein,[2] shows that it was the legislature's intent to cover only real estate on which there was a presently existing residence or one in the process of construction; that the legislature would not have used the word 'home' in the prescribed notice in the statute if it was their intention to cover unimproved property; that a logical and proper construction of the term 'real estate used or to be used as a purchaser's residence' can only refer to real estate on which there is a residence which the purchaser is either using or intends to use in the future as his residence. Plaintiffs, on the other hand, argue that it covers any property which the purchaser has an intention *128 to use as a residence, present or future, irrespective of whether there is any residence on it or not.

This is not a case where the seller sought an acceleration of indebtedness. The executory contract here involved gave the seller two options after default: (a) to declare the entire purchase price due and payable, or (b) rescind the contract and take possession of the property. Defendant here elected to rescind the contract and take possession of the property. In a recent case, Marshall v. Garcia, 514 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), the court said: 'Article 1301b by its express terms limits its application to forfeiture and acceleration of indebtedness. The statute neither expressly nor by implication purports to cover actions for cancellation and rescission of executory contracts for the sale of property.'

[2] [3] It is apparent that the trial court not only believed that Article 1301b, Supra, was applicable to the facts of this case, but that also there must be strict compliance with all the terms and provisions of such statute. It cannot be argued that there has been exact compliance with all its terms and provisions. The statute provides that all letters must be either registered or certified. It is undisputed that the defendant's letter of September 18, 1973, was neither registered or certified, but it is also undisputed that such letter was received by plaintiffs. The statute provides that all notices must be in a prescribed form, in certain designated print, or typewritten case. The letters here involved were ordinary typewritten letters, but it is clear from the record that plaintiffs were in no way misled by the letters and, in actuality, the record discloses that plaintiffs, after receipt of the September 18th letter, talked with defendant about bringing the delinquent payments up to date. The exact verbiage of the notice is not used in defendant's letter and nowhere in defendant's letter is the term 'home' used. However, in our opinion, there has been substantial compliance with the terms and provisions of the statute. Plaintiffs were given 30 days notice, as provided by the statute, to make up the delinquent payments; the letters involved were received by plaintiffs and the letter of notice of intention to cancel the contract contains all the provisions necessary to put plaintiffs on

notice that, if the delinquent payments were not made up within 30 days, defendant would cancel the contract. 'Substantial compliance' means compliance with the essential requirements, whether of a contract or of a statute. See Jennings v. Willer, 32 S.W. 24 (Tex.Civ.App.1895), Motion for rehearing overruled, 32 S.W. 375 (Tex.Civ.App.—1895); Fitzgibbons v. Galveston Electric Company, 136 S.W. 1186 (Tex.Civ.App.1911, no writ).

In our opinion, the trial court improperly applied Article 1301b, Supra, to the facts of this case. The trial court erred in granting plaintiffs the declaratory judgment here

involved. The judgment is reversed and judgment here rendered that plaintiffs take nothing by their suit.

CADENA, Justice (concurring).

I concur in the result solely on the ground that this case does not involve an 'acceleration,' and that, therefore, Article 1301b, Tex.Rev.Civ.Stat.Ann. (Supp.1975), is inapplicable. I am unwilling to accept the conclusion that, assuming the statute to be applicable, defendant's actions constitute compliance, 'substantial' or otherwise, with the statutory requirements.

Footnotes

[1]     The contract here involved covers a lot in the Von Ormy Heights Subdivision in Bexar County, Texas, and provides for a purchase price of $3,000.00, payable by plaintiffs to defendant in deferred monthly payments. Such contract provides that, if the payments are not made when due or are more than 30 days delinquent, seller may, at his option, declare the entire purchase price due and payable, or may rescind such contract and take possession of the property and, in the event of a rescission, all payments made by the buyer shall be considered as rent for the property. It provides that, when the purchase price is fully paid, seller is to deliver a general warranty deed to the buyer.

[2]     'YOU ARE LATE IN MAKING YOUR PAYMENT UNDER THE CONTRACT TO BUY YOUR HOME. UNLESS YOU MAKE THE PAYMENT BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR HOME AND TO KEEP ALL PAYMENTS YOU HAVE MADE TO DATE.' (emphasis ours)

**End of Document**                                                            © 2015 Thomson Reuters. No claim to original U.S. Government Works.